IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CHRISTOPHER DIER,<br><br>*Plaintiff*,<br><br>v.<br><br>JEFFREY MARTIN LANDRY in his official capacity as Governor of the State of Louisiana; ELIZABETH MURRILL in her official capacity as Attorney General of the State of Louisiana; CADE BRUMLEY, in his official capacity as the Louisiana State Superintendent of Education; CONRAD APPEL, in his official capacity as a member of the Louisiana State Board of Elementary and Secondary Education ("LSBESE"); JUDY ARMSTRONG, in her official capacity as a member of the LSBESE; KEVIN BERKEN, in his official capacity as a member of the LSBESE; PRESTON CASTILLE, in his official capacity as a member of the LSBESE; SIMONE CHAMPAGNE, in her official capacity as a member of the LSBESE; SHARON LATTEN-CLARK, in her official capacity as a member of the LSBESE; LANCE HARRIS, in his official capacity as a member of the LSBESE; PAUL HOLLIS, in his official capacity as a member of the LSBESE; SANDY HOLLOWAY, in her official capacity as a member of the LSBESE; STACEY MELERINE, in her official capacity as a member of the LSBESE; and RONNIE MORRIS, in his official capacity as a member of the LSBESE,<br><br>*Defendants*. | Civil Action No. _____<br><br>Judge _____<br><br>Mag. Judge _____<br><br>**VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

## **VERIFIED COMPLAINT**

1.  The separation of church and state enshrined in the U.S. Constitution's First Amendment stands as a bold and revolutionary promise of freedom—freedom not only from religious oppression but from the tyranny of imposing any single system of belief on a diverse people. Rooted in the principle that government must remain neutral in matters of faith, it protects a person's right to worship, or not worship, as he or she sees fit. This separation fuels innovation, pluralism, and dialogue, ensuring that ideas can flourish in a space untainted by coercion. It embodies the democratic spirit, where no institution or person holds sway over the conscience of another, safeguarding the integrity of both religion and government. In this separation lies the promise of a truly free society.

2.  This lawsuit challenges Louisiana House Bill No. 71, Act 676 ("H.B. 71" or the "Act"), a new law that represents a direct attack upon the religiously neutral foundation of our free society. H.B. 71 requires teachers in Louisiana's public schools to post a Protestant version of the Ten Commandments in every public school classroom in the State—regardless of grade level or subject matter. Under H.B. 71, every schoolchild from the day her journey in public education begins, until the day it ends, will not sit for a single minute of public instruction without H.B. 71's Protestant version of the Ten Commandments somewhere visible on the classroom wall.

3.  While H.B. 71 targets children, it conscripts teachers. Those teachers include educators who have devoted their lives to public education and to teaching young people the fundamental precepts of our Constitution—including freedom to worship—that make America a beacon to the world.

4.  Plaintiff Christopher Dier is one such teacher. Mr. Dier is a renowned public educator who currently teaches at Benjamin Franklin High School in New Orleans. He is the 2020

Louisiana Teacher of the Year, a 2020 finalist for the National Teacher of the Year, and the 2021 Gilder Lehrman Louisiana Teacher of the Year. Mr. Dier is the recipient of the 2021 National Education Association's (NEA) H. Councill Trenholm Memorial Civil Rights Award and the 2023 NEA California Casualty Award for Teaching Excellence. He holds a Master of Arts in Teaching and a Master of Education (M.Ed.) in Educational Administration and is a doctoral candidate. He is also the author of *The 1868 St. Bernard Parish Massacre: Blood in the Cane Fields*.

5. Mr. Dier teaches his students Advanced Placement ("A.P.") U.S. History. As part of that curriculum, he teaches his students about *Marbury v. Madison* and *McCulloch v. Maryland*, seminal U.S. Supreme Court cases that stand for a foundational principle of our democracy: when a state's law conflicts with the Constitution, that law is invalid. Now, more than 200 years after the Constitution's ratification, that principle has withstood every challenge.

6. By this action it will again. This is an action for declaratory and injunctive relief to enjoin the enforcement of H.B. 71 because it violates the Establishment Clause, Free Exercise Clause, and Free Speech Clause of the First Amendment to the United States Constitution. Plaintiff further seeks to enjoin Defendants from (i) implementing rules and regulations in accordance with the Act, (ii) otherwise seeking to enforce the Act, and (iii) requiring him to display the Ten Commandments in any public school classroom.

7. By requiring Louisiana teachers to post the Ten Commandments in their classrooms, H.B. 71 coerces them into state-mandated religious observance, veneration, teaching, proselytization, and adoption of the state's favored religious scripture. H.B. 71 requires teachers, including Mr. Dier, to send the harmful and religiously divisive message that students who do not subscribe to the specific version of the Ten Commandments that H.B. 71 requires do not belong in Louisiana classrooms, schools, and communities, and should refrain from expressing their own

3

beliefs or practicing their own faiths. H.B. 71 is unconstitutional. This Court should say so and provide all necessary and appropriate relief.

## JURISDICTION & VENUE

8. This action arises under the United States Constitution and the laws of the United States and presents a federal question within this Court's jurisdiction under Article III of the Constitution and 28 U.S.C. § 1331. In addition, this Court has jurisdiction pursuant to 28 U.S.C. § 1343(a)(3).

9. The Court is authorized to award the declaratory and injunctive relief Mr. Dier requests pursuant to 28 U.S.C. §§ 2201 and 2202.

10. Venue is proper in the Eastern District of Louisiana because a substantial part of the alleged events or omissions giving rise to Plaintiff's claims occurred in Orleans Parish. 28 U.S.C. § 1391(b)(2). Plaintiff resides and teaches in this district. Accordingly, the actions to administer, implement, and enforce the Act by the Defendants that give rise to the claims herein will necessarily occur in large part within this district.

## PARTIES

11. Plaintiff Christopher Dier is a citizen and resident of the State of Louisiana. At all times relevant to this Complaint, Mr. Dier was domiciled in Saint Bernard Parish and was a teacher at Benjamin Franklin High School in Orleans Parish.

12. Defendant Jeffrey Martin Landry is the Governor of the State of Louisiana. As Louisiana's Governor, Defendant Landry signed H.B. 71 into law. Defendant Landry continues to advocate for the law. As the Chief Executive of the State of Louisiana, Defendant Landry is responsible for enforcing the law. Defendant Landry is sued here in his official capacity.

13. Defendant Elizabeth Murrill is the Attorney General of the State of Louisiana. As the Attorney General, Defendant Murrill has plenary power under the Louisiana Constitution to

institute civil actions to enforce the law. La. Const. art. IV, § 8 ("As necessary for the assertion or protection of any right or interest of the state, the attorney general shall have authority to institute, prosecute, or intervene in any civil action or proceeding."). The Attorney General, through the Louisiana Department of Justice, is responsible for the enforcement of H.B. 71. La. Stat. Ann. § 36:704 (vesting Louisiana DOJ civil division with "the assertion or protection of any right or interest of the state of Louisiana"); La. Stat. Ann. § 36:702 (vesting Attorney General with power and duty to oversee Louisiana DOJ). Defendant Murrill is sued here in her official capacity.

14.    Defendant Cade Brumley is the Louisiana State Superintendent of Education. As the State Superintendent of Education, Defendant Brumley serves as the administrative head of the Louisiana State Department of Education and is statutorily responsible for administering and implementing all policies and programs adopted by the Louisiana State Board of Elementary and Secondary Education. La. R.S. § 17:21 *et seq.* All employees of the State Department of Education are under Defendant Brumley's direction and control. La. R.S. § 17:24. Defendant Brumley is responsible for the implementation of all state laws that fall under the jurisdiction of the State Board of Elementary and Secondary Education, including H.B. 71. La. R.S. § 17:22. Defendant Brumley is sued here in his official capacity.

15.    Defendants Conrad Appel, Judy Armstrong, Kevin Berken, Preston Castille, Simone Champagne, Sharon Latten-Clark, Lance Harris, Paul Hollis, Sandy Holloway, Stacey Melerine, and Ronnie Morris are members of the Louisiana State Board of Elementary and Secondary Education ("LSBESE"). LSBESE is responsible for the oversight and governance of all public elementary and secondary schools in Louisiana. La. Const. art. VIII, § 3; La. R.S. § 17:1 *et seq.* LSBESE members have the statutory duty to enact policies and adopt regulations that govern the operations of public elementary and secondary schools in Louisiana. La. R.S.

§ 17:6(A)(10). In their official roles, LSBESE members exercise policymaking, budgetary, and related functions granted to them by the Louisiana State Legislature, which provides LSBESE members with the authority to carry out their extensive responsibilities as detailed in Louisiana education law. *See generally* La. R.S. § 17:6. In H.B. 71, the Louisiana State Legislature has given LSBESE the authority to adopt rules and regulations to ensure the implementation of the Act. Defendants Appel, Armstrong, Berken, Castille, Champagne, Latten-Clark, Harris, Hollis, Holloway, Melerine, and Morris are each sued here in their official capacities as members of LSBESE.

## FACTUAL ALLEGATIONS

16. On June 19, 2024, Louisiana Governor Jeff Landry signed H.B. 71, which provides that, by January 1, 2025, each public school governing authority in the state must require teachers to display the Ten Commandments in every elementary, secondary, and post-secondary classroom under its jurisdiction. H.B. 71(B), (C). The Act, which became effective immediately, will be codified at La. R.S. § 17:2122. H.B. 71(3). H.B. 71 must be enforced by state charter schools. § 3996(B)(82).

17. Under Section (B)(2) of the Act, teachers must display only the State's officially approved version of the text of the Ten Commandments, as follows:

> The Ten Commandments
> I AM the LORD thy God.
> Thou shalt have no other gods before me.
> Thou shalt not make thyself any graven images.
> Thou shalt not take the Name of the Lord thy God in vain.
> Remember the Sabbath day, to keep it holy.
> Honor thy father and thy mother, that thy days may be long upon the land which the Lord thy God giveth thee.
> Thou shalt not kill.
> Thou shalt not commit adultery.
> Thou shalt not steal.
> Thou shalt not bear false witness against thy neighbor.
> Thou shalt not covet thy neighbor's house.

> Thou shalt not covet thy neighbor's wife, nor his manservant, nor his maidservant, nor his cattle, nor anything that is thy neighbor's.

2024 La. Sess. Law Serv. Act 676 (H.B. 71) (WEST) (to be codified at La. R.S. 17:2122(B)(2))

18.  Section (B)(1) of the Act requires public school teachers in Louisiana to display the Ten Commandments on a poster or framed document that is at least "eleven inches by fourteen inches." It mandates that "[t]he text of the Ten Commandments shall be the central focus of the poster or framed document and shall be printed in a large, easily readable font." 2024 La. Sess. Law Serv. Act 676 (H.B. 71) (WEST) (to be codified at R.S. 17:2122(B)(1)).

19.  H.B. 71 also requires that the Ten Commandments "be displayed with a context statement" that purports to outline the "[h]istory of the Ten Commandments in American Public Education." 2024 La. Sess. Law Serv. Act 676 (H.B. 71) (WEST) (to be codified at R.S. 17:2122(B)(3)). The Act does not specify a size requirement for the statement and does not require that the statement be printed in a large, easily readable font.

20.  Under H.B. 71, a school may—but is not required to—display three additional documents "along with the Ten Commandments": the Mayflower Compact, the Declaration of Independence, and the Northwest Ordinance. 2024 La. Sess. Law Serv. Act 676 (H.B. 71) (WEST) (to be codified at R.S. 17:2122(B)(4)(a)) ("A public school may also display the Mayflower Compact, the Declaration of Independence, and the Northwest Ordinance, as provided in R.S. 25:1282, along with the Ten Commandments."). The Act does not specify a size requirement for these documents and does not require that they be printed in a large, easily readable font.

21.  H.B. 71 requires public schools to acquire the Ten Commandments displays either by (1) "accept[ing] donated displays," or (2) "accept[ing] donated funds to purchase displays." 2024 La. Sess. Law Serv. Act 676 (H.B. 71) (WEST) (to be codified at R.S. 17:2122(B)(5)(a), (b)).

22. LSBESE is responsible for "adopt[ing] rules and regulations in accordance with the [Louisiana] Administrative Procedure Act to ensure the proper implementation" of the Act. 2024 La. Sess. Law Serv. Act 676 (H.B. 71) (WEST) (to be codified at R.S. 17:2122(B)(6)(a)).

23. H.B. 71 also requires the Louisiana Department of Education to "identify appropriate resources to comply with" the Act "that are free of charge." The Department of Education is required to list these resources on its webpage. 2024 La. Sess. Law Serv. Act 676 (H.B. 71) (WEST) (to be codified at R.S. 17:2122(B)(6)(b)) ("The state Department of Education shall identify appropriate resources to comply with the provisions of this Section that are free of charge. Once identified, the department shall list the free resources on the department's internet website.").

24. Under H.B. 71, every public school teacher must post the state-approved version of the Ten Commandments in every classroom no later than January 1, 2025. 2024 La. Sess. Law Serv. Act 676 (H.B. 71) (WEST) (to be codified at R.S. 17:2122(B)(1)).

25. The displays must be permanent and year-round. 2024 La. Sess. Law Serv. Act 676 (H.B. 71) (WEST) (to be codified at R.S. 17:2122(B)(1)) (providing that as of January 1, 2025 teachers "shall" "display the Ten Commandments in each classroom").

26. H.B. 71 requires the displays to be placed in "each classroom," regardless of the subject matter taught. For example, H.B. 71 requires the state-approved version of the Ten Commandments to be posted in math and science classrooms. 2024 La. Sess. Law Serv. Act 676 (H.B. 71) (WEST) (to be codified at R.S. 17:2122(B)(1)) (providing that as of January 1, 2025 teachers "shall" "display the Ten Commandments" in "each" classroom).

27. H.B. 71 requires teachers to post the Ten Commandments without regard to the grade level and reading comprehension of students. For example, the law requires the Ten

8

Commandments displays to be hung in kindergarten and university classrooms, and every grade level in between. 2024 La. Sess. Law Serv. Act 676 (H.B. 71) (WEST) (to be codified at R.S. 17:2122(B)(1)) (providing that as of January 1, 2025 teachers "shall" "display the Ten Commandments" in "each" classroom).

28. House Bill 71's preeminent purpose is religious.

29. H.B. 71's primary author and sponsor, Representative Dodie Horton, introduced the Bill to the House Education Committee on the following premise: "It is so important that our children learn what God says is right and what He says is wrong, and to allow [the Ten Commandments] to be displayed in our classrooms as a visual aid, I believe, especially in this day and time, is so important." La. House Educ. Comm., 5:08 (Apr. 4, 2024), bit.ly/4cqHnxj. Representative Horton emphasized that, "[w]hen [she] went to school, [she] learned . . . to know that there was a god by reciting the Ten Commandments." *Id.* at 16:00. She sponsored H.B. 71 so that Louisiana's children can "see[] what God's law is." *Id.* at 47:42.

30. The Bill's co-author and co-sponsor, Representative Sylvia Taylor, echoed these sentiments, explaining: "I believe that we are lacking in direction. A lot of people, their children, are not attending churches or whatever. . . . So, what I'm saying is, we need to do something in the schools to bring people back to where they need to be." *Id.* at 15:15.

31. On his official social media pages, Governor Landry has expressed his own view of H.B. 71, declaring: "Since when did the Ten Commandments become a bad way to live your life?!" In soliciting funds to defend H.B. 71 against a lawsuit by twelve Louisiana public school parents and their children, Governor Landry exhorted his supporters to help him "ADVANCE . . . the Judeo-Christian values that this nation was built upon." Patrick Wall, *Jeff Landry vows to defend 'Judeo-Christian values' after Ten Commandments lawsuit*, TIMES-PICAYUNE (June 25,

9

2024), https://perma.cc/R89N-3FKE.  Governor Landry later told reporters that public school parents who are unhappy with the law should "tell [their] child[ren] not to look." Lexi Lonas, *Louisiana governor says kids can just not 'look' at Ten Commandments, files to dismiss charges*, THE HILL (Aug. 6, 2024), bit.ly/4cuVNwk.

### The Act Officially Endorses and Prescribes a Protestant Version of the Ten Commandments

32. House Bill 71 embodies a denominational preference.  It expressly requires the display of religious scripture—the Ten Commandments—in every public-school classroom. Moreover, it requires a specific, state-approved version of that scripture to be posted, thus taking sides on theological questions regarding the correct translation and content of the Bible.  Since different denominations of Christians and Jews subscribe to different translations and interpretations of religious text, this amounts to state endorsement of a specific sect of Christianity. *See* Steven Lubet, *The Ten Commandments in Alabama*, 15 Const. Comment. 471, 474 (1998) (describing some of the differences in Commandments according to different faiths).  Even among religions in general agreement about the source and importance of the Ten Commandments, there is deep and divisive disagreement about their content.  *Id.* at 476-77 ("To the faithful, scripture matters."); *see also* E.J. Dionne Jr., *The Third Stage: New Frontiers of Religious Liberty*, *in* What's God Got to Do with the American Experiment 117 (E.J. Dionne Jr. & John J. Dilulio Jr. eds., 2000) (discussing shifting views on the separation between church and state and noting, "in 1844, . . . six people were killed in a riot in Philadelphia over what version of the Ten Commandments should be posted in public schools").

33. Different faiths dispute how the sixteen verses in Exodus 20:2–17 should be divided to reflect the later references to "Ten Commandments." Exodus 34:28; Deuteronomy 4:13, 10:4. Each tradition has struggled with how they should be numbered.  For example, many Jews and

some Christians consider the "First Commandment" to be "I am the Lord thy God," while others consider the First Commandment to be "Thou shalt [or You shall] have no other gods before me." The division of the commandments between two tablets is significant. According to some Christians, the first tablet represents the duties we owe to GOD while the second represents the duties we owe to each other. *Glassroth v. Moore*, 335 F.3d 1282, 1285 n.1 (11th Cir. 2003)

34. There are many faith traditions that do not teach, recognize, or reference the Ten Commandments at all. For example, followers of Hinduism, Buddhism, and Taoism generally do not consider the commandments to be part of their belief systems. Paul Finkelman, *The Ten Commandments on the Courthouse Lawn and Elsewhere*, 73 Fordham L. Rev. 1477, 1498 (2005) (explaining the Ten Commandments "have no relevance to the religious life of people who are not of [the Judeo-Christian] ... faiths"). To members of non-Judeo-Christian religions, the Ten Commandments do not merely recite non-controversial ethical maxims; several Commandments (e.g., the first, second and third) address the forms and objects of religious worship. Moreover, the Decalogue symbolizes a theology that is at odds with the theology of non-Judeo-Christian religions. The manner in which the Decalogue was provided to human beings, as described in the Bible, reflects a particular view of the relationship between the divine and human beings. Law, under this view, is not the result of rational deliberation by human beings in furtherance of the public good, but rather the product of direct, divine command. The substance of the Ten Commandments, far from being universal, is expressly predicated on the existence of one very specific god: "I AM the LORD thy God. Thou shalt have no other gods before me." The Ten Commandments thus symbolize a particular religious perspective—that of Judeo-Christians.

35. Many people in Louisiana are not religious and do not adhere to the religious tenets set forth in any version of the Ten Commandments, including the one mandated by H.B. 71.

36. Even some faith traditions that do consider the Ten Commandments to be part of their theology do not believe in elevating the commandments over other biblical commandments or teachings.

37. Even for faith traditions that view the Ten Commandments to be authoritative and important, there are many different versions, depending on religious denomination or biblical translation.

38. Among those who believe in some version of the Ten Commandments, the particular text that they follow often differs by religious denomination or tradition. For instance, Catholics, Jews, and many Protestants differ in the way that they number, organize, and translate the commandments from Hebrew to English. To take one example, the Hebrew translation of the Sixth Commandment prohibits only murder, not all killings, as the King James Version does (and in the Lutheran and Catholic versions it is the Fifth Commandment, not the Sixth). *Glassroth v. Moore*, 335 F.3d 1282, 1299 n.3 (11th Cir. 2003) (citing Gerald Blidstein, *Capital Punishment: The Classic Jewish Discussion,* in 14 Judaism 159 (1965)); *see also Harvey v. Cobb County,* 811 F. Supp. 669, 677 (N.D. Ga. 1993) ("As Rabbi Lewis testified, this ['Thou shalt not kill'] version of the Sixth Commandment is a mistranslation of the original Hebrew, which prohibits murder, and frequently appears in Christian versions of the Ten Commandments."), *aff'd*, 15 F.3d 1097 (11th Cir. 1994).

39. H.B. 71 decrees exactly how the "text [of the Ten Commandments] shall read," down to the word. H.B. 71(B)(2).

40. The version of the Ten Commandments mandated in H.B. 71 comes from the Protestant King James Version of the Bible and reflects a Protestant translation. *See* Finkelman,

*supra* at 1492; *Glassroth*, 335 F.3d at 1299 n.3 (noting that "the King James Version" of the Ten Commandments "is a Protestant version").

41. The version of the Ten Commandments mandated in H.B. 71 does not match versions or translations found in the Jewish tradition, and it omits key language and context that is included in the version set forth in the Torah. For example, it is missing the message in the Jewish story that God brought the Israelites out of Egyptian slavery to freedom. Finkelman, *supra* at 1498 (explaining that in the Torah Exodus 20 begins, "I am the Lord your God who brought you out of the land of Egypt, the house of bondage," and that for some people of the Jewish faith "[i]mplicit in this biblical view is that God is Israel's king, hence its legislator"). H.B. 71's version of the Ten Commandments also summarizes certain commandments instead of including the text as found in the Torah in its entirety.

42. The version of the Ten Commandments mandated in H.B. 71 does not match the version followed by most Catholics. Finkelman, *supra* at 1493-94 (noting that the Catholic version of the Ten Commandments is "substantively different" from the King James Bible version). While the King James Version of the Bible endorsed in H.B. 71 translates Exodus 20:4 to say, "Thou shalt not make unto thee any graven image," the Catholic New American Bible translates the phrase to say, "You shall not carve idols for yourselves." Finkelman, *supra* at 1493-94 (quoting the Catholic New American Bible); *see* Exodus, Chapter 20, *Books of the Bible*, U.S. Conf. of Catholic Bishops, https://bible.usccb.org/bible/exodus/20. Thus, "[t]he Catholic ordering of the Commandments is not the same as the Protestant" in that "[t]he Catholic Church does not have a separate prohibition on graven images." Finkelman, *supra* at 1490. "These differences are of course theological." *Id.* at 1494; *see* Diarmaid MacCulloch, CHRISTIANITY: THE FIRST THREE THOUSAND YEARS 442-45 (2011). Further, "this feature of the Catholic presentation has long been

a subject of anti-Catholic polemic." Richard W. Garnett, *American Conversations with(in) Catholicism*, 102 MICH. L. REV. 1191, 1198 n.34 (2004).

43. H.B. 71 requires Louisiana teachers to proselytize and instruct students on a Protestant translation of the Ten Commandments and to lead them in religious observance, veneration, and adoption of this religious scripture.

44. House Bill 71 also requires Louisiana teachers to work at all times in the presence of a religious text selected by the state. The message is not subtle. Teachers, when in a classroom dominated by a "large, easily readable" Protestant version of the Ten Commandments that is the "central focus" of a state mandated display, are expected to adhere to and be guided by that text.

45. As a result of the prominent displays, teachers will be coerced into observance of a specific Protestant version of Christianity. They will also be forced to be complicit in coercing students to similarly adhere to and be guided by the Protestant version of the Ten Commandments. Teachers and students alike, who do not subscribe to the state's official version of the Ten Commandments, will be unable to avoid fully expressing or practicing their own faiths and religious beliefs or non-religious beliefs in view of their peers, teachers, and other school staff.

### Mr. Dier Objects to, And Will Be Irreparably Harmed By, H.B. 71

46. Displaying the Ten Commandments in accordance with H.B. 71 would violate Mr. Dier's religious beliefs. Mr. Dier sincerely believes that the law also would coerce him into following, endorsing, and proselytizing a specific faith.

47. Mr. Dier sincerely believes that displaying the Ten Commandments in accordance with H.B. 71 would require him to engage in a religious act that is inconsistent with his faith.

48. Mr. Dier sincerely believes that displaying the Ten Commandments in accordance with H.B. 71 would require him to provide religious instruction contrary to his faith.

49. Mr. Dier sincerely believes that displaying the Ten Commandments in accordance with H.B. 71 would require him to coerce others to follow a particular religious faith.

50. Mr. Dier sincerely believes that displaying the Ten Commandments in his classroom in accordance with H.B. 71 would coerce him to adopt and/or endorse religious views that are inconsistent with his faith.

51. Mr. Dier sincerely believes that displaying the Ten Commandments in accordance with H.B. 71 would require him to engage in religious speech.

52. Absent an injunction, Mr. Dier's refusal to display the Ten Commandments in accordance with H.B. 71 would cause him immediate irreparable reputational harm.

53. Absent an injunction, Mr. Dier's refusal to display the Ten Commandments in accordance with H.B. 71 would lead to adverse professional consequences that would cause him immediate, concrete financial harm.

54. If he were required to display the Ten Commandments in accordance with H.B. 71, Mr. Dier would suffer mental and emotional harm.

### H.B. 71 Will Irreparably Harm Louisiana Students and their Families

55. Displaying the Ten Commandments in Louisiana classrooms in accordance with H.B. 71 will irreparably harm Louisiana students by coercing them to adopt or endorse religious views that are inconsistent with their faiths and individual consciences.

56. Displaying the Ten Commandments in Louisiana classrooms in accordance with H.B. 71 will irreparably harm Louisiana families by interfering with parents' ability to guide the spiritual and religious upbringing of their children.

## FIRST CAUSE OF ACTION

### Violation of the Establishment Clause of the First Amendment to the United States Constitution
### (U.S. CONST. amend. I, as enforced by 42 U.S.C. § 1983)

57. Plaintiff realleges and incorporates by reference all prior and subsequent paragraphs.

58. Under the Establishment Clause of the First Amendment, "Congress shall make no law respecting an establishment of religion." U.S. CONST. amend. I. This command is binding on the states through the due process guarantee of the Fourteenth Amendment. *See, e.g.*, *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940).

59. House Bill 71 violates the Establishment Clause.

## SECOND CAUSE OF ACTION

### Violation of the Free Exercise Clause of the First Amendment to the Unites States Constitution
### (U.S. CONST. amend. I, as enforced by 42 U.S.C. § 1983)

60. Plaintiff realleges and incorporates by reference all prior and subsequent paragraphs.

61. The Free Exercise Clause of the First Amendment to the United States Constitution guarantees that "Congress shall make no law . . . prohibiting the free exercise [of religion]." This command is binding on the states through the due process guarantee of the Fourteenth Amendment. *See, e.g.*, *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940).

62. House Bill 71 violates the Free Exercise Clause.

## THIRD CAUSE OF ACTION

### Violation of the Free Speech Clause of the First Amendment to the Unites States Constitution
(U.S. CONST. amend. I, as enforced by 42 U.S.C. § 1983)

63. Plaintiff realleges and incorporates by reference all prior and subsequent paragraphs.

64. The Free Speech Clause of the First Amendment to the United States Constitution guarantees that "Congress shall make no law . . . abridging the freedom of speech." This command is binding on the states through the due process guarantee of the Fourteenth Amendment. *See, e.g., Gitlow v. People of State of New York*, 268 U.S. 652, 666 (1925).

65. House Bill 71 violates the Free Speech Clause.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Christopher Dier respectfully requests that this Court grant the following relief:

A. An order declaring H.B. 71 to be in violation of the Establishment Clause, Free Exercise Clause, and Free Speech Clause of the First Amendment to the United States Constitution;

B. An order preliminarily and, thereafter, permanently enjoining the Defendants and their officers, agents, affiliates, subsidiaries, servants, employees, successors, and all other persons or entities in active concert or privity or participation with them, from adopting rules or regulations in accordance with, or otherwise enforcing, the Act, and from requiring that the Ten Commandments be displayed in every public school classroom in Louisiana;

C. An order directing Defendants to provide a copy of the written injunction to all Louisiana public elementary, secondary, and charter schools, and all public post-secondary education institutions;

D. An award requiring Defendants to pay Plaintiff reasonable attorneys' fees and costs incurred in connection with this action, pursuant to 42 U.S.C. § 1988;

E. An order retaining this Court's jurisdiction of this matter to enforce the terms of the Court's order; and

F. Such other relief as the Court deems just and proper.

Dated: September 23, 2024

Respectfully submitted,

/s/ Alex Rothenberg
Alex B. Rothenberg (La. Bar No. 34740), T.A.
GORDON, ARATA, MONTGOMERY,
BARNETT, MCCOLLAM, DUPLANTIS
& EAGAN, LLC
201 St. Charles Avenue, 40th Fl.
New Orleans, LA 70170
(504) 679-9826
arothenberg@gamb.com

Andrew T. Tutt*
ARNOLD & PORTER
 KAYE SCHOLER LLP
601 Massachusetts Avenue, NW
Washington, DC 20001
(202) 942-5000
andrew.tutt@arnoldporter.com

William T. Sharon*
Sarah Elnahal*
Rachel Carpman*
Alex Potcovaru*
ARNOLD & PORTER
 KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019-9710
(212) 836-8000
william.sharon@arnoldporter.com

Allyson C. Myers*
ARNOLD & PORTER
 KAYE SCHOLER LLP
777 South Figueroa Street | 44th Floor
Los Angeles, CA 90017-5844
(212) 836-8000
ally.myers@arnoldporter.com

*Counsel for Plaintiff Christopher Dier*

\* *Application for Pro Hac Vice admission forthcoming*

Page 19 of 19 header

## VERIFICATION

STATE OF LOUISIANA ) 
                                ) SS: 
ST. BERNARD PARISH )

Christopher Dier, being duly sworn, deposes and says:

I am Christopher Dier, the plaintiff in this action; I have read the foregoing Verified Complaint and know the contents thereof; except as to matters therein alleged on information and belief, I have learned of the facts alleged therein, either through my own personal knowledge or through information reported to me in the ordinary course of business; as to those matters as to which I do not have personal knowledge, I believe them to be true.

_Christopher Dier_ 
Christopher Dier

Sworn to and subscribed this 
19 day of September, 2024

_Notary Public_

