**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| CHRISTOPHER DIER, | |
| PLAINTIFF, | |
| v. | Civil Action No. 2:24-cv-2306 |
| JEFFREY MARTIN LANDRY, et al., | Judge: GGG - MBN |
| DEFENDANTS. | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANTS' MOTION TO DISMISS**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. ii

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................... 1

LEGAL STANDARDS ......................................................................................................... 3

ARGUMENT ........................................................................................................................ 4

    I. THE COURT SHOULD DISMISS PLAINTIFF'S CLAIMS UNDER RULE 12(B)(1)
       FOR LACK OF SUBJECT MATTER JURISDICTION. ................................................ 4

       A. Plaintiff's Claims Are Not Ripe.................................................................... 4

       B. Plaintiff Lacks Article III Standing.............................................................. 6

       C. Defendants Are Entitled to Sovereign Immunity.......................................... 9

    II. THE COURT SHOULD DISMISS PLAINTIFF'S CLAIMS UNDER RULE 12(B)(6)...................... 12

       A. Plaintiff's Establishment Clause Claim Fails (Count I)................................ 12

           1. Plaintiff's burden is to show there is no set of circumstances
              under which H.B. 71 may be constitutionally implemented...................... 12

           2. H.B. 71 is constitutional because it plainly may be implemented in
              countless ways that do not implicate *Kennedy*'s "hallmarks of
              religious establishments." ..................................................................... 13

           3. H.B. 71 is independently constitutional given the history of
              Ten Commandments in public education. ............................................... 17

           4. *Stone* is dead and inapposite. ................................................................ 19

       B. Plaintiff's Free Exercise Clause Claim Fails (Count II). ............................. 20

       C. Plaintiff's Free Speech Clause Claim Fails (Count III). .............................. 23

           1. H.B. 71 does not require Plaintiff to speak............................................. 23

           2. Even if H.B. 71 required Plaintiff speak,
              his Free Speech claim would still fail. .................................................... 24

CONCLUSION..................................................................................................................... 25

i

## TABLE OF AUTHORITIES

**Cases**

*Am. Legion v. Am. Humanist Ass'n,*
  588 U.S. 29 (2019) ........................................................................... 17, 18, 23

*Barber v. Bryant,*
  860 F.3d 345 (5th Cir. 2017) ........................................................................ 7, 8

*Bowen v. Roy,*
  476 U.S. 693 (1986) ........................................................................................ 21

*Braidwood Mgmt., Inc. v. EEOC,*
  70 F.4th 914 (5th Cir. 2023) ............................................................................ 4

*Briggs v. Mississippi,*
  331 F.3d 499 (5th Cir. 2003) .......................................................................... 22

*Carney v. Adams,*
  592 U.S. 53 (2020) ........................................................................................... 6

*Chamber of Com. v. SEC,*
  85 F.4th 760 (5th Cir. 2023) .......................................................................... 23

*Chiras v. Miller,*
  432 F.3d 606 (5th Cir. 2005) .................................................................... 24, 25

*Choice Inc. of Tex. v. Greenstein,*
  691 F.3d 710 (5th Cir. 2012) ........................................................................ 4, 6

*Church of Lukumi Babalu, Aye, Inc. v. City of Hialeah,*
  508 U.S. 520 (1993) ........................................................................................ 21

*City of Austin v. Paxton,*
  943 F.3d 993 (5th Cir. 2019) ....................................................................... 9, 11

*City of Ocala v. Rojas,*
  143 S. Ct. 764 (2023) ........................................................................................ 7

*Croft v. Perry,*
  624 F.3d 157 (5th Cir. 2010) .......................................................... 12, 13, 14, 17

*Dialysis Newco, Inc. v. Cmty. Health Sys. Grp. Health Plan,*
  938 F.3d 246 (5th Cir. 2019) .......................................................................... 19

*Doe v. Tangipahoa Par. Sch. Bd.*,
   494 F.3d 494 (5th Cir. 2007) ............................................................. 8

*Espinoza v. Mont. Dep't of Rev.*,
   591 U.S. 464 (2020) ......................................................................... 19

*Evans-Marshall v. Bd. of Educ.*,
   624 F.3d 332 (6th Cir. 2010) ............................................................. 25

*FDA v. All. for Hippocratic Med.*,
   602 U.S. 367 (2024) ........................................................................... 9

*Fulton v. City of Philadelphia*,
   593 U.S. 522 (2021) .................................................................... 21, 22

*Garcetti v. Ceballos*,
   547 U.S. 410 (2006) ............................................................... 23, 24, 25

*Groff v. DeJoy*,
   600 U.S. 447 (2023) ......................................................................... 19

*Hamilton v. Dallas County*,
   79 F.4th 494 (5th Cir. 2023) ............................................................... 3

*In re FEMA Trailer*,
   668 F.3d 281 (5th Cir. 2012) ............................................................... 3

*In re Great Lakes*,
   624 F.3d 201 (5th Cir. 2010). ............................................................. 3

*Kennedy v. Bremerton Sch. Dist.*,
   597 U.S. 507 (2022) ............................................... 13, 14, 17, 19, 22, 25

*Kirkland v. Northside Indep. Sch. Dist.*,
   890 F.2d 794 (5th Cir. 1989) ............................................................. 22

*Kling v. Hebert*,
   60 F.4th 281 (5th Cir. 2023) ............................................................... 3

*Kowalski v. Tesmer*,
   543 U.S. 125 (2004) ........................................................................... 7

*Lemon v. Kurtzman*,
   403 U.S. 602 (1971) ......................................................................... 19

*Little v. KPMG LLP*,
  575 F.3d 533 (5th Cir. 2009) ............................................................................. 3

*Lynch v. Donnelly*,
  465 U.S. 668 (1984) ......................................................................................... 18

*Mayer v. Monroe Cnty. Cmty. Sch. Corp.*,
  474 F.3d 477 (7th Cir. 2007) ........................................................................... 25

*McCreary County v. ACLU*,
  545 U.S. 844 (2005) ......................................................................................... 20

*McLin v. Twenty-First Jud. Dist.*,
  79 F.4th 411 (5th Cir. 2023) .............................................................................. 3

*Moody v. NetChoice, LLC*,
  144 S. Ct. 2383 (2024) ............................................................................... 12, 14

*Murray v. City of Austin*,
  947 F.2d 147 (5th Cir. 1991) ..................................................................... 21, 22

*Murthy v. Missouri*,
  144 S. Ct. 1972 (2024) ............................................................................... 6, 8, 9

*New Doe Child #1 v. United States*,
  901 F.3d 1015 (8th Cir. 2018) ......................................................................... 22

*NiGen Biotech, L.L.C. v. Paxton*,
  804 F.3d 389 (5th Cir. 2015) ....................................................................... 9, 10

*Palmer v. Bd. of Educ. of City of Chicago*,
  603 F.2d 1271 (7th Cir. 1979) ......................................................................... 22

*Pickering v. Bd. of Educ.*,
  391 U.S. 563 (1968) ......................................................................................... 25

*Pleasant Grove City v. Summum*,
  555 U.S. 460 (2009) ................................................................................... 23, 24

*Ramming v. United States*,
  281 F.3d 158 (5th Cir. 2001) ............................................................................. 3

*Rosenberger v. Rector & Visitors of the Univ. of Va.*,
  515 U.S. 819 (1995) ......................................................................................... 25

*Shurtleff v. Boston*,
    596 U.S. 243 (2022) ................................................................. 13, 14, 17

*Staley v. Harris County*,
    485 F.3d 305 (5th Cir. 2007) ............................................................. 4, 5

*Stone v. Graham*,
    449 U.S. 39 (1980) ................................................................. 17, 19, 20

*Texas All. for Retired Ams. v. Scott*,
    28 F.4th 669 (5th Cir. 2022) ............................................................ 9, 10, 11

*Town of Greece v. Galloway*,
    572 U.S. 565 (2014) ................................................................. 13, 19, 22

*Urb. Devs. LLC v. City of Jackson*,
    468 F.3d 281 (5th Cir. 2006) ................................................................ 3

*Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*,
    454 U.S. 464 (1982) ........................................................................ 7

*Van Orden v. Perry*,
    545 U.S. 677 (2005) ......................................... 1, 17, 18, 19, 20, 22

*Whole Woman's Health v. Jackson*,
    595 U.S. 30 (2021) ........................................................................ 11

*Williamson v. Tucker*,
    645 F.2d 404 (5th Cir. May 1981) ........................................................ 3

*Wooley v. Maynard*,
    430 U.S. 705 (1977) ...................................................................... 23

**Constitution & Statutes**

La. Const. art. VI, § 44 ........................................................................ 24

La. R.S. § 17:81 ................................................................................ 24

La. R.S. § . 17:262 ............................................................................ 11

La. R.S. § 17:2124 ............................................... 1, 2, 11, 14, 18, 21, 24

La. R.S. § 36:702 .............................................................................. 10

La. R.S. § 36:704 .............................................................................. 10

**Other Authorities**

Amicus Br. of Prof. Charles L. Glenn in Supp. of Pet'rs,
   *Carson v. Makin*, 2021 WL 4173250 (U.S. Sept. 10, 2021)................................................... 18

Daniel L. Chen, Kennedy v. Bremerton School District*:*
   *The Final Demise of* Lemon *and the Future of the Establishment Clause*,
   21 Harvard J. L. & Pub. Policy Per Curiam (Summer 2022) .................................................. 13

Fed. R. Civ. P. 12(b)(1)............................................................................................................ 3, 4

Fed. R. Civ. P. 12(b)(6).......................................................................................................... 3, 12

Encyclopedia Brittanica, *The New-England Primer*,
   https://tinyurl.com/5682tuhy ................................................................................................. 18

James W. Fraser, Between Church and State (2d ed.),
   https://tinyurl.com/3fmm48ev ............................................................................................... 18

La. Admin. Code § 28:337 ......................................................................................................... 11

## INTRODUCTION

The Louisiana Legislature recently passed, and Governor Landry signed, H.B. 71—a law requiring the display of the Ten Commandments, subject to minimum requirements and school boards' discretion, in public school classrooms. Plaintiff is a teacher who objects to the prospect of an H.B. 71 display on the wall of a classroom where he teaches. He sued the Governor and other State officials to enjoin the implementation of H.B. 71. But there is no jurisdiction in this case. Plaintiff does not allege—and no one knows—the particulars of any H.B. 71 display that may be posted in Plaintiff's classroom or any other Louisiana classroom. Plaintiff thus lacks standing, and his action is unripe. Moreover, by suing only statewide officials, Plaintiff runs into sovereign immunity which also bars this suit. The Court should thus dismiss for lack of jurisdiction.

Although the Court need not proceed to the merits, the State respectfully requests that the Court dismiss Plaintiff's Complaint on the merits as well. By addressing the merits, the Court would facilitate efficient review by the Fifth Circuit should Plaintiff appeal and the circuit find jurisdiction. In addition, the Court's adjudication of the merits would aid the development of the law, given the likelihood of more H.B. 71 lawsuits when displays actually appear in classrooms before H.B. 71's January 1, 2025 compliance deadline. Accordingly, the State respectfully requests that the Court dismiss both for lack of jurisdiction and for failure to state a claim for relief.

## BACKGROUND

**A.** During the 2024 legislative session, the Legislature and Governor Landry enacted H.B. 71. It requires schools to display the Ten Commandments in "large, easily readable font" on "a poster or framed document that is at least eleven inches by fourteen inches"—slightly larger than this page—where the Ten Commandments are "the central focus." La. R.S. § 17:2124(B)(1). The text of the Ten Commandments is "identical" to the text found on the monument upheld in *Van Orden v. Perry*, 545 U.S. 677 (2005). La. R.S. § 17:2124(A)(6). The display itself must

1

include a specific context statement explaining the history of the Ten Commandments in American public education. *Id.* § 17:2124(B)(3). Alongside the Ten Commandments, schools may also display other notable documents such as the Mayflower Compact, the Declaration of Independence, and the Northwest Ordinance. *Id.* § 17:2124(B)(4)(a). No school governing board is required to "spend its funds to purchase displays," which may be donated or funded exclusively by private donations. *Id.* § 17:2124(B)(5). Beyond these provisions, H.B. 71 leaves "[t]he nature of the display [to] be determined by each governing authority." *Id.* § 17:2124(B)(1).

The law requires schools to comply by January 1, 2025. *Id.* The law also requires the Louisiana State Board of Elementary and Secondary Education (BESE) to "adopt rules and regulations in accordance with the Administrative Procedure Act to ensure the proper implementation of this Section." *Id.* § 17:2124(B)(6)(a). Finally, it requires the Department of Education to "identify appropriate [compliance] resources" that "are free of charge" and "list [them] on the department's internet website." *Id.* § 17:2124(B)(6)(b). None of these steps have been taken as of this filing. *See* Ex. B (Townsend Decl.) ¶¶ 8–10; Ex. C (Morris Decl.) ¶¶ 8–9.

**B.** Plaintiff is a U.S. History teacher at Benjamin Franklin High School in New Orleans. Compl. ¶¶ 4–5, ECF No. 1. He has named as Defendants Governor Landry, Attorney General Liz Murrill, Louisiana State Superintendent of Education Cade Brumley, and the members of BESE in their official capacities. He did not sue the school's governing non-profit corporation or the Orleans Parish School Board.

Plaintiff asserts three claims: a violation of the First Amendment's Establishment Clause (Count I); a violation of the First Amendment's Free Exercise Clause (Count II); and a violation of the First Amendment's Free Speech Clause (Count III). *Id.* at 16–17. He complains that, "[b]y requiring Louisiana teachers to post the Ten Commandments in their classrooms, H.B. 71 coerces

them into state-mandated religious observance, veneration, teaching, proselytization, and adoption of the state's favored religious scripture." *Id.* ¶ 7. Plaintiff does not allege that his school has selected or posted any H.B. 71 displays, nor does he allege any details of potential H.B. 71 displays. Plaintiff demands a declaration that H.B. 71 violates the First Amendment and an order enjoining Defendants from implementing H.B. 71 anywhere in the State. *Id.* at 17.

## LEGAL STANDARDS

Rule 12(b)(1) permits a party to raise fatal jurisdictional defects early. *See* Fed. R. Civ. P. 12(b)(1); *In re FEMA Trailer*, 668 F.3d 281, 286 (5th Cir. 2012). And when "a Rule 12(b)(1) motion is filed," "the court first considers its jurisdiction." *McLin v. Twenty-First Jud. Dist.*, 79 F.4th 411, 415 (5th Cir. 2023). Ripeness, standing, and sovereign immunity are all jurisdictional questions to be considered first when raised in a Rule 12(b)(1) motion. *See Urb. Devs. LLC v. City of Jackson*, 468 F.3d 281, 292 (5th Cir. 2006) (ripeness); *Little v. KPMG LLP*, 575 F.3d 533, 535 (5th Cir. 2009) (standing); *Kling v. Hebert*, 60 F.4th 281, 284 (5th Cir. 2023) (sovereign immunity). Plaintiff, as "the party asserting jurisdiction," "constantly bears the burden of proof that jurisdiction does in fact exist." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). On a facial attack under Rule 12(b)(1), as here, "no presumptive truthfulness attaches to the [ ] allegations." *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. May 1981).

Dismissal also is proper where a plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Hamilton v. Dallas County*, 79 F.4th 494, 499 (5th Cir. 2023). Plaintiff's "conclusory allegations, unwarranted factual inferences, or legal conclusions" are "not accept[ed] as true"—only "well-pleaded facts" receive that presumption. *In re Great Lakes*, 624 F.3d 201, 210 (5th Cir. 2010).

**ARGUMENT**

I.     **The Court Should Dismiss Plaintiff's Claims under Rule 12(b)(1) for Lack of Subject Matter Jurisdiction.**

Fifth Circuit precedent requires the dismissal of Plaintiff's Complaint for lack of subject matter jurisdiction. *See, e.g.*, *Choice Inc. of Tex. v. Greenstein*, 691 F.3d 710, 714–15 (5th Cir. 2012). The most straightforward basis to do so is on ripeness grounds, although the same considerations equally demonstrate Plaintiff's lack of Article III standing. Separately, Defendants are entitled to sovereign immunity, which independently warrants dismissal.

     **A.  Plaintiff's Claims Are Not Ripe.**

The clearest dismissal ground is lack of ripeness. The ripeness doctrine's "basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Id.* at 715 (citation omitted). "[A] court must look at two factors to determine ripeness: (1) 'the fitness of the issues for judicial decision' and (2) 'the hardship to the parties of withholding court consideration.'" *Braidwood Mgmt., Inc. v. EEOC*, 70 F.4th 914, 930 (5th Cir. 2023). Both factors demonstrate a lack of ripeness here.

First, Plaintiff's claims are not fit for judicial decision. "[A] claim is 'fit for judicial decision' if it presents a pure question of law that needs no further factual development." *Id.* But, "if a claim is 'contingent [on] future events that may not occur as anticipated, or indeed may not occur at all,' the claim is not ripe." *Id.*

Plaintiff's claims do not satisfy this standard, for reasons the Fifth Circuit has explained on squarely analogous facts. In *Staley v. Harris County*, 485 F.3d 305 (5th Cir. 2007) (en banc), the en banc Fifth Circuit confronted the question whether Establishment Clause litigation over a religious display that was, in fact, "no longer displayed" was moot. *Id.* at 308. The Fifth Circuit said yes and dismissed the case. In doing so, the court emphasized that "the Supreme Court has

4

made clear that 'under the Establishment Clause detail is key.'" *Id.* The court underscored that point by recounting "[t]he importance of facts and context" in the Supreme Court's Ten Commandments cases. *Id.* The court thus concluded that the case was moot: "Out of sight," the display "no longer raises the potential Establishment Clause violations that offended [the plaintiff]." *Id.* at 309. Key here, the court emphasized that "any dispute over a probable *redisplay* ... is not ripe because there are no facts before us to determine whether such a redisplay might violate the Establishment Clause." *Id.* (emphasis added). The problem was that "no decision has been made regarding any aspect of the future display," and "[i]n the absence of this evidence, we are unable to conduct the fact-intensive and context-specific analysis required by [the Supreme Court]." *Id.* As a result, "any claim that the Establishment Clause may be violated" in the future "is not ripe for review." *Id.*

That is Plaintiff's problem here. He challenges only some unspecified future H.B. 71 display that he *presumes* may violate his rights at some unspecified future time. But he does not know—and Defendants do not know—how his (or any) school will select its H.B. 71 display(s), what size they will be, where they will be located, what context will be included, and so on. These are the "importan[t] ... facts and context" essential to the First Amendment analysis. *Id.* That means the facts here are even worse for Plaintiff. At least in *Staley*, the plaintiff had seen the display before (and yet the challenge to a redisplay was still deemed unripe); whereas, Plaintiff here does not allege that he has *ever* seen one. Accordingly, with "no facts before [this Court] to determine whether such a [future] []display might violate the Establishment Clause," this Court and the parties are "unable to conduct the fact-intensive and context-specific analysis required by" the Supreme Court. *Id.* The upshot here, as in *Staley*, is that "any dispute over a probable []display of the [Ten Commandments] is not ripe." *Id.*

Second, even if that were not so, dismissal would remain in order because Plaintiff faces no hardship from dismissal. *See Choice Inc.*, 691 F.3d at 715 ("even where an issue presents purely legal questions," there must be a "hardship to the parties of withholding court consideration" (citation omitted)). "The Supreme Court has found hardship to inhere in legal harms, such as the harmful creation of legal rights or obligations; practical harms on the interests advanced by the party seeking relief; and the harm of being forced to modify one's behavior in order to avoid future adverse consequences." *Id.* (cleaned up). Here, however, H.B. 71 does not create any legal rights or obligations as to Plaintiff. Nor is Plaintiff currently or imminently subject to any H.B. 71 display. Nor is there any practical impediment to Plaintiff filing suit if and when he actually sees an H.B. 71 display in the classroom where he teaches. Dismissal thus remains warranted.

### B. Plaintiff Lacks Article III Standing.

The same considerations apply to Plaintiff's lack of Article III standing. Plaintiff bears the burden of establishing standing "as of the time" he filed suit. *Carney v. Adams*, 592 U.S. 53, 59 (2020). Thus, as of September 23 (the date of the Complaint), Plaintiff must show that he "suffered, or will suffer, an injury that is 'concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.'" *Murthy v. Missouri*, 144 S. Ct. 1972, 1986 (2024). He has failed to do so.

**1.** Two preliminary housekeeping matters substantially narrow this analysis. First, as discussed on the merits, Plaintiff is profoundly wrong to say that H.B. 71 requires *him*—as opposed to public school governing authorities—to do anything, much less something in violation of his Free Exercise and Free Speech rights. *See infra* Section II.B, C. Moreover, any compulsion would come from his school, which he elected not to sue. That means he suffers no injury traceable to Defendants *at all*, let alone a redressable injury, that could sustain Counts II (Free Exercise) and III (Free Speech). *See Murthy*, 144 S. Ct. at 1988 ("'plaintiffs must demonstrate standing for each

claim that they press' against each defendant, 'and for each form of relief that they seek'"). Second, and relatedly, Plaintiff alleges harm to "Louisiana students" and parents. Compl. ¶¶ 55–56. But third-party standing is sharply "limited," and in any event Plaintiff cannot make even the minimum showing that H.B. 71 has been "enforce[d] … against" him or anyone else. *Kowalski v. Tesmer*, 543 U.S. 125, 130 (2004) (citations omitted). Accordingly, Plaintiff has no standing argument as to Count II and Count III.

**2.** That leaves Count I—the Establishment Clause claim, which is based on Plaintiff's offense at the enactment of H.B. 71. This, too, is easily disposed of on injury-in-fact grounds given Plaintiff's strategic decision to attack H.B. 71 itself. *See* Compl. ¶ 59 (Count I asserting "House Bill 71 violates the Establishment Clause"). The Fifth Circuit has held that "religious-display cases do not provide a basis for standing to challenge the endorsement of beliefs that exist only in the text of a statute." *Barber v. Bryant*, 860 F.3d 345, 354 (5th Cir. 2017). "Allowing standing on that basis would be indistinguishable from allowing standing based on a 'generalized interest of all citizens in' the government's complying with the Establishment Clause without an injury-in-fact," which is itself foreclosed by the Supreme Court. *Id.* (quoting *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 483 (1982)). Indeed, even the standing argument for those who (unlike Plaintiff) actually observe religious displays is now suspect, since the Supreme Court has recently abrogated the *Lemon* test on which that "offended-observer standing" theory was based. *See infra* at 19 (discussing *Lemon*'s abrogation); *see also City of Ocala v. Rojas*, 143 S. Ct. 764, 765 (2023) (statement of Gorsuch, J.) ("Moving forward, I expect lower courts will recognize that offended observer standing has no more foundation in the law than the *Lemon* test that inspired it."); *id.* at 767 (Thomas, J., dissenting) ("Offended observer

standing appears to warp the very essence of the judicial power vested by the Constitution."). Plaintiff thus has no standing to press his facial attack on H.B. 71 under *Barber*.

In all events, Count I cannot be saved even assuming that offended-observer standing is still valid and even construing Plaintiff's attack as against a hypothetical future H.B. 71 display. The prevailing en banc rule in the Fifth Circuit is that "[t]he question" for offended-observer standing is whether the plaintiffs "were exposed to, and may thus claim to have been injured by, [the challenged action]." *Doe v. Tangipahoa Par. Sch. Bd.*, 494 F.3d 494, 497 (5th Cir. 2007) (en banc). As the Fifth Circuit subsequently elaborated, "[i]n cases involving religious displays," the court "require[s] an encounter with the offending item or action to confer standing." *Barber*, 860 F.3d at 353. This makes sense: To be an offended *observer*, one must have *observed* something. And that requirement "represent[s] the outer limit[ ] of where we can find these otherwise elusive Establishment Clause injuries." *Id.* But Plaintiff does not allege that he has ever encountered an H.B. 71 display. That is fatal under *Doe* and *Barber*.

This defect points up two additional injury-in-fact problems. One, Plaintiff's inability to speak in specifics about a hypothetical future H.B. 71 display means he has failed to allege "concrete, particularized, and actual or imminent" injury. *Murthy*, 144 S. Ct. at 1986. Two, Plaintiff's claim boils down to a claim that he will be offended by any H.B. 71 display, in any form, in any location, at any time. But that is just a theory of alleged harm from H.B. 71's "alleged endorsement of specific beliefs"—and it is foreclosed by *Barber*'s distinction between (a) standing for attacks on a statute or policy and (b) standing for attacks on a religious display. *See* 860 F.3d at 354 ("The religious-display cases do not provide a basis for standing to challenge the endorsement of beliefs that exist only in the text of a statute."); *see also FDA v. All. for Hippocratic*

*Med.*, 602 U.S. 367, 381 (2024) ("[C]itizens [may not] sue merely because their legal objection is accompanied by a strong moral, ideological, or policy objection to a government action.").

**3.** Plaintiff likewise fails to show traceability and redressability, for a simple reason explained further below: If and when an H.B. 71 display goes on his classroom wall, it will be the decision of his school, not Defendants'. But Plaintiff elected not to sue his school, and an injunction against Defendants' implementation of H.B. 71 would not bear on the school. Plaintiff thus runs directly into the "bedrock principle that a federal court cannot redress 'injury that results from the independent action of some third party not before the court.'" *Murthy*, 144 S. Ct. at 1986. On all three standing factors, therefore, Count I fails.

**C. Defendants Are Entitled to Sovereign Immunity.**

Finally, and independently, the claims against Defendants must be dismissed on sovereign-immunity grounds. "In most cases, Eleventh Amendment sovereign immunity bars private suits against nonconsenting states in federal court." *City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019) (noting also that sovereign immunity presents a jurisdictional determination). That bar extends to "suits against state officials or agencies that are effectively suits against a state," including official-capacity claims—such as the claims in this case. *Id.* Thus, "unless the state has waived sovereign immunity or Congress has expressly abrogated it, the Eleventh Amendment bars the suit." *Id.* In this case, Plaintiff could avoid that bar only by invoking the *Ex parte Young* equitable exception, which "permits plaintiffs to sue a state officer in his official capacity for an injunction to stop ongoing violations of federal law." *Texas All. for Retired Ams. v. Scott*, 28 F.4th 669, 671 (5th Cir. 2022). But he cannot satisfy that exception for two independent reasons.

First, for the reasons above, Plaintiff does not allege an "ongoing violation[] of federal law," *id.*—and that is fatal, *see NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389, 394 (5th Cir. 2015) ("It is true that a complaint must allege that the defendant *is violating* federal law …."). Indeed,

Plaintiff's repeated claim that Defendants "will" violate his rights, *e.g.*, Compl. ¶ 45, effectively admits that there is no ongoing violation of federal law. That independently forecloses any invocation of *Ex parte Young* here. *See NiGen Biotech*, 804 F.3d at 394 n.5 (distinguishing the "similar but not identical" standing requirement of "ongoing harm or a threat of imminent harm").

Second, Plaintiff does not allege that Defendants have the requisite authority to enforce H.B. 71. To invoke *Ex parte Young*, a plaintiff must allege that "[t]he officer sued [has] '*some* connection with the enforcement of the [challenged] act.'" *Scott*, 28 F.4th at 672. Although the Fifth Circuit's conception of "[h]ow much of a 'connection' has been hard to pin down," "some guideposts have emerged": (1) "an official must have more than 'the general duty to see that the laws of the state are implemented'"; (2) "the official must have 'the particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty'"; and (3) "enforcement means compulsion or constraint." *Id.* As to the last requirement, "[i]f the official does not compel or constrain anyone to obey the challenged law, enjoining that official could not stop any ongoing constitutional violation." *Id.* The Complaint fails under each of these guideposts.

This is immediately clear as to Governor Landry and Attorney General Murrill. The Complaint simply alleges that they are generally responsible for enforcing Louisiana law. Compl. ¶¶ 12 (the Governor "is responsible for enforcing the law"), 13 (the Attorney General "has plenary power under the Louisiana Constitution to institute civil actions to enforce the law").[1] That is insufficient under Fifth Circuit precedent. *See Scott*, 28 F.4th at 672.

So, too, for Superintendent Brumley. Plaintiff understandably does not latch onto H.B. 71's statement that the Department of Education's only obligation is to identify and list free resources

---

[1] The Complaint claims that "[t]he Attorney General, through the Louisiana Department of Justice, is responsible for the enforcement of H.B. 71." Compl. ¶ 13 (citing La. R.S. §§ 36:704, 36:702). But the statutes Plaintiff cites have nothing to do with H.B. 71; they simply show the Attorney General's authority to enforce Louisiana law.

on its website. *See* La. R.S. § 17:2124(B)(6)(b). That is nothing like a "particular duty to enforce [H.B. 71]" through "compulsion or constraint," which is required to abridge Superintendent Brumley's sovereign immunity. *Scott*, 28 F.4th at 672. Instead, all Plaintiff offers is that Superintendent Brumley "is responsible for the implementation of all state laws that fall under the jurisdiction of [BESE], including H.B. 71." Compl. ¶ 14. But again, that is just an allegation that he possesses a "general duty to see that the laws of the state are implemented," which is insufficient. *Scott*, 28 F.4th at 672.

That leaves only the members of BESE. As to them, Plaintiff's best allegation is that H.B. 71 gives them "the authority to adopt rules and regulations to ensure the implementation of the Act." Compl. ¶ 15. But Plaintiff does not (and cannot) challenge any such BESE rule or regulation (none exists), and that BESE "might in the future promulgate" a rule is insufficient for *Ex parte Young* purposes. *Whole Woman's Health v. Jackson*, 595 U.S. 30, 44 (2021). Plaintiff also does not allege that any BESE regulation would require implementation of H.B. 71 through "compulsion or constraint." *Scott*, 28 F.4th at 672. In fact, when the Legislature previously directed BESE to promulgate rules implementing the posting of the "In God We Trust" motto on classroom walls, BESE's regulation simply told schools to develop "policies and procedures that address … display of the national motto in each classroom in each school under its jurisdiction in accordance with R.S. 17:262." La. Admin. Code § 28:337(B)(41). That is a far cry from ordinary examples of compulsion and constraint such as "prohibiting payment of claims under [an] abortion statute," "rate-setting," "sending letters threatening formal enforcement," or a "threat of criminal prosecution." *City of Austin*, 943 F.3d at 1001–02 (collecting cases). And that only underscores that *Ex parte Young* does not save Plaintiff's claims against the BESE members.

II.    **The Court Should Dismiss Plaintiff's Claims under Rule 12(b)(6).**

Although the jurisdictional defects are independently fatal, the State respectfully requests that the Court dismiss Plaintiff's Complaint on the merits as well to facilitate efficient appellate review and aid the development of the law.

### A.  Plaintiff's Establishment Clause Claim Fails (Count I).

#### 1.  Plaintiff's burden is to show there is no set of circumstances under which H.B. 71 may be constitutionally implemented.

Plaintiff's Establishment Clause claim is, and can only be, a facial claim—that is, a challenge to H.B. 71 itself, not any particular application of the statute. The Complaint does not include allegations related to any particular display. And the scope of Plaintiff's requested relief—a declaration that H.B. 71 itself is unconstitutional and an injunction against its implementation—confirms as much. *Compare* Compl. at 17, *with Croft v. Perry*, 624 F.3d 157, 164 (5th Cir. 2010) ("Our conclusion that the challenges are facial attacks is confirmed by the relief sought by the plaintiffs: that the pledge be invalidated in its entirety ....").

The facial nature of his Establishment Clause claim matters because "facial challenges are disfavored." *Moody v. NetChoice, LLC*, 144 S. Ct. 2383, 2409 (2024). All nine Justices recently emphasized this point. *See id.* (Barrett, J., concurring) (emphasizing "the dangers of bringing a facial challenge"); *id.* at 2411 (Jackson, J., concurring in part and concurring in the judgment) ("a high bar"); *id.* at 2428 (Alito, J., concurring in the judgment) ("strongly disfavored"). A plaintiff's choice "to litigate [his] case[] as [a] facial 'challenge'" thus "comes at a cost" because the Supreme Court "has … made facial challenges hard to win." *Id.* at 2397 (maj. op.). That is especially so under the Fifth Circuit's Establishment Clause standard for facial claims: Plaintiff must plausibly allege "that there is no set of circumstances under which [the implementation of H.B. 71] is

constitutional." *Croft*, 624 F.3d at 164. That standard is impossible for Plaintiff to meet because of the countless ways a school governing authority may constitutionally implement H.B. 71.

**2.  H.B. 71 is constitutional because it plainly may be implemented in countless ways that do not implicate *Kennedy*'s "hallmarks of religious establishments."**

In a recent opinion Plaintiff's Complaint ignores, the Supreme Court established the proper framework for an Establishment Clause analysis. Specifically, courts must interpret "the Establishment Clause … by 'reference to historical practices and understandings.'" *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 535 (2022) (quoting *Town of Greece v. Galloway*, 572 U.S. 565, 576 (2014)). And the Court went further by directing courts to look at the "hallmarks of religious establishments the framers sought to prohibit when they adopted the First Amendment." *Id.* at 537 & n.5 (citing *Shurtleff v. Boston*, 596 U.S. 243, 285–86 (2022) (Gorsuch, J., concurring)); *see also* Daniel L. Chen, Kennedy v. Bremerton School District*: The Final Demise of* Lemon *and the Future of the Establishment Clause*, 21 Harvard J. L. & Pub. Policy Per Curiam (Summer 2022) (describing hallmarks analysis under *Kennedy* and *Shurtleff*).

There are six hallmarks:

(1) "[T]he government exerted control over the doctrine and personnel of the established church."

(2) "[T]he government mandated attendance in the established church and punished people for failing to participate."

(3) "[T]he government punished dissenting churches and individuals for their religious exercise."

(4) "[T]he government restricted political participation by dissenters."

(5) "[T]he government provided financial support for the established church, often in a way that preferred the established denomination over other churches."

(6) "the government used the established church to carry out certain civil functions, often by giving the established church a monopoly over a specific function."

*Shurtleff*, 596 U.S. at 286 (Gorsuch, J., concurring). Among those hallmarks, most "reflect forms of 'coerc[ion]' regarding 'religion or its exercise.'" *Id.* at 286. As the Supreme Court noted, "[g]overnment 'may not coerce anyone to attend church,' nor may it force citizens to engage in 'a formal religious exercise.'" *Kennedy*, 597 U.S. at 537 (citations omitted); *see also id.* ("[n]o doubt … coercion along these lines was among the foremost hallmarks"). Yet, the Establishment Clause does not "compel the government to purge from the public sphere anything an objective observer could reasonably infer endorses or partakes of the religious." *Id.* at 535 (cleaned up)

Plaintiff's burden, therefore, is to plausibly allege that every potential display implementing H.B. 71 evinces a historical hallmark of religious establishments. *See Croft*, 624 F.3d at 164. Plaintiff has not done so and cannot do so.

Plaintiff's problem begins with the scope of H.B. 71. *See Moody*, 144 S. Ct. at 2398 ("The first step in the proper facial analysis is to assess the state laws' scope."). By its own terms, H.B. 71 sets only a floor—"a minimum requirement"—for an H.B. 71 display, otherwise leaving "[t]he nature of the display [to] be determined by each governing authority." La. R.S. § 17:2124(B)(1), (C)(1). That means the universe of potential H.B. 71 displays is infinite.

Take, for example, U.S. history. In Plaintiff's AP U.S. History classroom, the school may wish to highlight historic civil rights leaders—for example, Rev. Martin Luther King Jr., who famously required Birmingham campaign volunteers to sign "ten commandments of non-violence," or Thurgood Marshall, whom the New York Times memorably described as "brandishing" the Constitution as Moses brandished the Ten Commandments:



*Illustration 1*



*Illustration 2*

A school also might draw inspiration from the incredible architecture and artwork in the U.S. House of Representatives' chamber, adding that one of Louisiana's own congressmen serves as Speaker and looks directly at Moses when presiding from the dais:



*Illustration 3*

A school likewise might choose to teach students about the U.S. Supreme Court:



*Illustration 4*



*Illustration 5*

15



Illustration 6                    Illustration 7

Or, a school might explain the historical role that the Ten Commandments have played in American history, both in education and in law:




Illustration 8                    Illustration 9

As these examples show, there are innumerable ways to comply with H.B. 71. From different topics, to different content, to different fonts, to different colors. *See* Townsend Decl. ¶¶ 11–13 (in addition to considering these illustrations, the Department of Education "will likely also consider other illustratives with different themes, content, formats, layouts, graphics, typography, color schemes, sizes, styles, interactive elements, spacing, borders, and headings"). And that sets aside a host of other questions about where schools actually place the posters, what size the posters are, whether each classroom may have a different poster, and so on.

16

Against this infinite universe of potential H.B. 71 displays, Plaintiff must show that every single display will reflect one of the six "historical hallmarks of an established religion." *Kennedy*, 597 U.S. at 537 & n.5 (citing *Shurtleff*, 596 U.S. at 286 (Gorsuch, J., concurring)); *Croft*, 624 F.3d at 164. Plaintiff has not done so and cannot do so. To the contrary, "[n]o one at the time of the founding is recorded as arguing that the use of religious symbols in public contexts was a form of religious establishment." *Shurtleff*, 596 U.S. at 287 (Gorsuch, J., concurring). That principle alone resolves this case. And Plaintiff's gestures at "coercion" (*e.g.*, Compl. ¶ 7) do not change that fact. A small poster explaining architectural features of the Supreme Court's courtroom or the House of Representatives' chamber, for example, comes nowhere close to "coerc[ing] anyone to attend church" or "forc[ing] citizens to engage in 'a formal religious exercise.'" *Kennedy*, 597 U.S. at 537 (citations omitted).

> ### 3.   H.B. 71 is independently constitutional given the history of Ten Commandments in public education.

Although the Court need not proceed past Plaintiff's inability to identify even one of the *Kennedy* hallmarks for every potential H.B. 71 display, it bears noting that H.B. 71 is especially constitutional given the historical role of the Ten Commandments not only in America, but also in American public education. The *Van Orden* plurality emphasized that the Ten Commandments are part of "the rich American tradition of religious acknowledgments." 545 U.S. at 689–92. And more recently, the Supreme Court emphasized that the Ten Commandments "have historical significance as one of the foundations of our legal system." *See Am. Legion v. Am. Humanist Ass'n*, 588 U.S. 29, 53 (2019). As to public education, the Supreme Court has expressly acknowledged that the Ten Commandments constitutionally may be integrated into school curriculum. *See Stone v. Graham*, 449 U.S. 39, 42 (1980); *see also Van Orden*, 545 U.S. at 742 (Souter, J., dissenting).

This historical backdrop matters because, where "categories of monuments, symbols, and practices with a longstanding history follow in" our Nation's "tradition, they are likewise constitutional." *Am. Legion*, 588 U.S. at 63 (plurality op.); *accord id.* at 86–87 (Gorsuch, J., concurring) ("[W]hat matters" "isn't" a display's "age but its compliance with ageless principles."). Ten Commandments displays, as a category, therefore should be presumptively constitutional because of their long historical pedigree. *See Van Orden*, 545 U.S. at 686, 688 (plurality) ("There is an unbroken history of official acknowledgment by all three branches of government of the role of religion in American life from at least 1789," including "acknowledgments of the role played by the Ten Commandments in our Nation's heritage." (quoting *Lynch v. Donnelly*, 465 U.S. 668, 674 (1984))).

That historical backdrop is even more precise with regard to the facts in this case. As H.B. 71 explains, the Ten Commandments were featured in textbooks widely used before and after the advent of public schools. La. R.S. § 17:2124(B)(3) (citing, *inter alia*, *The New England Primer* and the *McGuffey Readers*); *see* Encyclopedia Brittanica, *The New-England Primer*, https://tinyurl.com/5682tuhy ("the principal textbook for millions of colonists and early Americans"); James W. Fraser, Between Church and State (2d ed.), https://tinyurl.com/3fmm48ev, at 35 ("omnipresent McGuffey's Readers" were "[p]erhaps the most consistent element in the nineteenth-century common school classroom"); *see* Ex. A (Faircloth Decl.) (collecting excerpts). Indeed, in the "public common schools" that arose *after* disestablishment, not only these textbooks but "religious instruction" more generally was "pervasive," "permeat[ing]" "every subject." Amicus Br. of Prof. Charles L. Glenn in Supp. of Pet'rs, *Carson v. Makin*, 2021 WL 4173250, at *7–9 (U.S. Sept. 10, 2021).

To be sure, some 19th-century curricula were (lamentably) non-ecumenical. *See generally Espinoza v. Mont. Dep't of Rev.*, 591 U.S. 464, 502–06 (2020) (Alito, J., concurring). But the 19th-century debates were about whether more or different religious instruction should be supported by the state, *id.*—not whether religious materials in schools could "coexis[t] with the principles of disestablishment," *Town of Greece*, 572 U.S. at 578. So schools today act comfortably within historical norms when they take one aspect of the religious material long presented in schools— one with "an undeniable historical meaning," *Van Orden*, 545 U.S. at 690 (plurality op.)—and display it passively and with context that elucidates an aspect of legal, civic, and educational history.

### 4. *Stone* is dead and inapposite.

Although the modern Supreme Court has been clear that courts must resolve Establishment Clause claims by assessing the hallmarks of religious establishments, Plaintiff will likely rely on the Supreme Court's 1980 decision in *Stone v. Graham* to argue he states a valid claim. The Court should not extend *Stone* to salvage Plaintiff's claim for two reasons.

First, *Stone* is not good law. From top to bottom, that *per curiam* decision applied, and rested on, the three-part *Lemon* test, *see Stone*, 449 U.S. at 41–43—which the Supreme Court in *Kennedy* criticized as an "ambitious, abstract, and ahistorical approach to the Establishment Clause" and expressly "abandoned." 597 U.S. at 534 (abrogating *Lemon v. Kurtzman*, 403 U.S. 602 (1971)); *accord id.* at 546 (Sotomayor, J., dissenting) ("The Court overrules *Lemon* …."); *Groff v. DeJoy*, 600 U.S. 447, 460 (2023) (describing *Lemon* as "now abrogated"). Because *Stone* was "built upon" a test the Supreme Court has "walked back from," Fifth Circuit precedent prohibits any "exten[sion]" of *Stone* "to the facts of this case." *Dialysis Newco, Inc. v. Cmty. Health Sys. Grp. Health Plan*, 938 F.3d 246, 257–59 & n.11 (5th Cir. 2019).

Second, *Stone* is distinguishable. *Stone* emphasized that, unlike "a case in which the Ten Commandments are integrated into the school curriculum, where the Bible may constitutionally be used in an appropriate study of history, civilization, ethics, comparative religion, or the like," the display in that case was posted for a "plainly religious" purpose. 449 U.S. at 42. By *Stone*'s telling, it involved only the "[p]osting of religious texts on the wall [that] serves no [] educational function." *Id.* The Court's later decisions reinforce *Stone*'s narrowness—confirming that "*Stone* did not purport to decide the constitutionality of every possible way the Commandments might be set out by the government," *McCreary County v. ACLU*, 545 U.S. 844, 867 (2005); that the *Stone* displays "stood alone," as an "isolated exhibition" "not part of an arguably secular display," *id.* at 867–68; and that nothing "suggest[s] that *Stone* would extend to displays of the Ten Commandments that lack a 'plainly religious,' 'pre-eminent purpose,'" *Van Orden*, 545 U.S. at 691 n.11 (plurality op.); *see* Faircloth Decl. ¶ 4 (picture of *Stone* displays). Even the principal dissent in *Van Orden* agreed "the Decalogue could, as *Stone* suggested, be integrated constitutionally into a course of study in public schools." 545 U.S. at 742 (Souter, J., dissenting).

That is exactly what Louisiana did by enacting H.B. 71, which does nothing more than "constitutionally" integrate the Ten Commandments "into a course of study in public schools." *Id.* Unlike the standalone displays addressed in *Stone*, every illustration above lacks a religious purpose (much less a pre-eminently religious one) and has a context—including a lengthy required context statement that was lacking in *Stone*—that indicates an educational objective. Because the Supreme Court itself would distinguish the potential H.B. 71 displays even if *Stone* remained good law, this Court should do the same.

### B.  Plaintiff's Free Exercise Clause Claim Fails (Count II).

Plaintiff's throwaway effort to repackage his Establishment Clause challenge as a Free Exercise one likewise fails on the pleadings. The Free Exercise Clause protects religious

*exercise*—believing, professing, and engaging in "conduct motivated by religious belief." *Church of Lukumi Babalu, Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 543 (1993). So the Clause kicks in when the government "places [some] restriction on what [a citizen] may believe or what he may do," but it does not "require the Government *itself* to behave in ways that the individual believes will further his or her spiritual development" or "comport[ ] with [his] religious beliefs." *Bowen v. Roy*, 476 U.S. 693, 699–700 (1986).

The requirement that a plaintiff show a "burden" on his sincere religious exercise dooms Plaintiff's claim. *See Fulton v. City of Philadelphia*, 593 U.S. 522, 532 (2021). Plaintiff says H.B. 71 "requires public school teachers" to display the Ten Commandments and "lead [students] in religious observance, veneration, and adoption of" them. Compl. ¶¶ 18, 43. That is not true. H.B. 71 requires "each public school governing authority"—*i.e.*, *school boards*—to display the Ten Commandments "in each classroom in each school under its jurisdiction"—*i.e.*, on *school property*, La. R.S. § 17:2124(B)(1), (C)(1). It does not require *teachers* to do anything. This "distinction between individual and governmental conduct" is dispositive, whether Plaintiff's "religious views … accept" it or not. *Bowen*, 476 U.S. at 701 n.6; *cf.* Compl. ¶¶ 46–51 (Plaintiff claiming to "sincerely believe[ ]" that the law requires him to do various things).

In other words, all H.B. 71 does is require passive displays—which hinder no one from exercising religion and therefore do not implicate the Free Exercise Clause. Indeed, the Fifth Circuit has squarely held as much. In *Murray v. City of Austin*, the plaintiff alleged that a cross on a city seal imposed "subtle coercion" on him to "adhere to the majoritarian faith" and "forced [him] to support" the cross, thus violating the Free Exercise Clause. 947 F.2d 147, 152 (5th Cir. 1991). But the Fifth Circuit "quickly dispose[d] of" this claim, concluding the plaintiff "fail[ed] to articulate a sufficient burden or restriction imposed on the free exercise of his religion." Indeed,

the court explained his claim was "a 'far cry from cases dealing with actual interference … or actual compulsion' which have presented viable Free Exercise claims." *Id.*; *see, e.g.*, *Briggs v. Mississippi*, 331 F.3d 499, 505 (5th Cir. 2003) ("the mere display on public property of the state flag [allegedly with a religious symbol] is in no meaningful sense either a religious activity or coercive"); *New Doe Child #1 v. United States*, 901 F.3d 1015, 1019, 1023, 1026 (8th Cir. 2018) (statutes requiring "In God We Trust" on currency "do not direct the Plaintiffs to *do* anything," and even if they carry money, the laws do not "compel citizens to engage in a religious observance"). As the Supreme Court has put the relevant principle: "Offense … does not equate to coercion." *Town of Greece*, 572 U.S. at 589.

*Murray* is fully binding here. In fact, this case is even easier. For one thing, "public school teachers" like Plaintiff "are not free, under the first amendment, to arrogate control of curricula," *Kirkland v. Northside Indep. Sch. Dist.*, 890 F.2d 794, 802 (5th Cir. 1989)—so of course *Plaintiff*'s alleged religious objections cannot stop H.B. 71 displays from going up *anywhere in the State*. *Cf.* Compl. at 17; *see also Palmer v. Bd. of Educ. of City of Chicago*, 603 F.2d 1271, 1274 (7th Cir. 1979) (teacher has "no constitutional right to require others to submit to her [religious] views and to forego a portion of the education they would otherwise be entitled to enjoy"). Second, the notion that the whole universe of potential H.B. 71 displays would harm Plaintiff is implausible on its face—no one feels compelled to "venerate" or "adopt" the Ten Commandments because of, for example, a small poster explaining the Supreme Court's decision in *Van Orden*. *See supra* p. 16.

Even if Plaintiff could plausibly allege a burden, his Free Exercise claim would still fail because he cannot show that H.B. 71 is "not neutral or generally applicable." *Kennedy*, 597 U.S. at 525. H.B. 71 does not "proceed[ ] in a manner intolerant of religious beliefs or restrict[ ] practices because of their religious nature," *Fulton*, 593 U.S. at 533 (describing neutrality); again, it does

not restrict anything at all, *see Am. Legion*, 588 U.S. at 38, 64 (even a "preeminent Christian symbol" on government property does not "deliberately disrespect[]" other faiths). And Plaintiff's own allegations underscore the law's general applicability—as Plaintiff explains, the law applies in "each classroom" "regardless of the subject matter taught." Compl. ¶¶ 26–27. Plaintiff's cursory Free Exercise allegations do not come close to plausibly alleging that he has suffered a Free Exercise burden or that H.B. 71 is not neutral or generally applicable.

### C.  Plaintiff's Free Speech Clause Claim Fails (Count III).

Plaintiff's Free Speech claim similarly fails. That is principally because H.B. 71 does not compel Plaintiff to speak or prohibit him from speaking. To the extent H.B. 71 implicates speech, it provides for *government* speech—school displays placed on school walls. In any event, even if H.B. 71 required Plaintiff to speak, Plaintiff's speech claim still would fail, because his hypothetical speech would be made pursuant to his official duties as a public employee, which the Free Speech Clause does not protect under *Garcetti v. Ceballos*, 547 U.S. 410 (2006).

### 1.  H.B. 71 does not require Plaintiff to speak.

The First Amendment "includes both the right to speak freely and the right to refrain from speaking at all." *Wooley v. Maynard*, 430 U.S. 705, 714 (1977); *Chamber of Com. v. SEC*, 85 F.4th 760, 768 (5th Cir. 2023). But when governments "engag[e] in their own expressive conduct, then the Free Speech Clause has no application." *Pleasant Grove City v. Summum*, 555 U.S. 460, 467 (2009). That is because "[t]he Free Speech Clause restricts government regulation of private speech; it does not regulate government speech." *Id.* That is the case here.

Plaintiff's Complaint repeats the mantra that H.B. 71 "requires teachers to post the Ten Commandments." Compl. ¶ 27; *see id.* ¶¶ 18, 27, 46, 52, 54. Plaintiff even misquotes the text of H.B. 71. *See id.* at ¶ 27 (stating that H.B. 71 provides "that as of January 1, 2025 *teachers* 'shall' 'display the Ten Commandments'" (emphasis added)). But H.B. 71 in fact requires "each *public*

*school governing authority*" to "display the Ten Commandments in each classroom in each school under its jurisdiction." La. R.S. § 17:2124(B)(1) (emphasis added). And that same "governing authority" "shall … determine[ ]" "[t]he nature of the display." *Id. Plaintiff* is not the public school governing authority; the *school board* is the public school governing authority. *See* LA. CONST. art. VI, § 44(2), (4); La. R.S. § 17:81. Thus, H.B. 71 does not require Plaintiff to do anything at all. H.B. 71 just requires that the displays are posted in classrooms—it does not require Plaintiff to speak about those displays, and under no circumstances does it require Plaintiff to "proselytize and instruct students on a Protestant version of the Ten Commandments" or lead students "in religious observance, veneration, and adoption of" the Ten Commandments. Compl. ¶ 44.

The displays required by H.B. 71 are the government's own speech. "States enjoy broad discretionary powers in the field of public education," and "[c]entral among these discretionary powers is the authority to establish public school curricula which accomplishes the states' educational objectives." *Chiras v. Miller*, 432 F.3d 606, 611 (5th Cir. 2005). Just as the "selection of textbooks is government speech," *id.* at 618, H.B. 71 displays are government speech. The Free Speech Clause thus "has no application." *Summum*, 555 U.S. at 467.

**2.  Even if H.B. 71 required Plaintiff speak, his Free Speech claim would still fail.**

Plaintiff alleges that H.B. 71 violates the Free Speech Clause by forcing him to "engage in religious speech." Compl. ¶ 51. But, even if that were so, this hypothetical speech would be in-class curricular speech made pursuant to Plaintiff's official duties as a public employee. "When public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes." *Garcetti*, 547 U.S. at 421–22. Accordingly, "the right to free speech protected by the First Amendment does not extend to the in-class curricular speech

of teachers … made 'pursuant to' their official duties." *Evans-Marshall v. Bd. of Educ.*, 624 F.3d 332, 334 (6th Cir. 2010).

Statements made by Plaintiff about (or through) an H.B. 71 display in the classroom to students are undoubtedly subject to the control of the school that employs Plaintiff. That is because "[w]hen a teacher teaches, 'the school system does not regulate that speech as much as it *hires* that speech. Expression is a teacher's stock in trade, the commodity [he] sells to [his] employer in exchange for a salary.'" *Id.* at 340. And, "if it is the school board that hires that speech, it can surely 'regulate the content of what is or is not expressed.'" *Id.* (quoting *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 833 (1995)).

To be sure, "public employees do not surrender all their First Amendment rights by reason of their employment." *Garcetti*, 547 U.S. at 417. Nothing prevents Plaintiff from complaining in the teacher's lounge, *Kennedy*, 597 U.S. at 529–31, or from publicly expressing his opposition, *see Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968). But, "when public employees make statements pursuant to their official duties," their speech is not protected by the First Amendment. *Garcetti*, 547 U.S. at 421. In *Evans-Marshall*, the Sixth Circuit rejected a high school teacher's speech claim and noted that "when it comes to in-class curricular speech at the primary or secondary school level, no other court of appeals has held that such speech is protected by the First Amendment." 624 F.3d at 343; *see Mayer v. Monroe Cnty. Cmty. Sch. Corp.*, 474 F.3d 477, 480 (7th Cir. 2007) (same). That is because "states enjoy broad discretionary powers in the field of public education," which includes "the authority to control its own message" "even where"—unlike here—"it chooses to employ private speakers to transmit its message." *Chiras*, 432 F.3d at 611–13.

## CONCLUSION

Defendants respectfully request that this Court grant Defendants' motion to dismiss and dismiss Counts I, II, and III of Plaintiff's Complaint.

Dated: October 7, 2024

Respectfully submitted,

 /s/ Zachary Faircloth
J. BENJAMIN AGUIÑAGA*
  *Solicitor General*
ZACHARY FAIRCLOTH (La #39875)
  *Principal Deputy Solicitor General*
CAITLIN A. HUETTEMANN (La #40402)**
  *Assistant Solicitor General*
OFFICE OF THE LOUISIANA ATTORNEY
GENERAL
1885 North Third Street
Baton Rouge, LA 70804
(225) 326-6766
aguinagab@ag.louisiana.gov
fairclothz@ag.louisiana.gov
huettemannc@ag.louisiana.gov

*Counsel for Defendants Jeffrey Martin Landry,
Elizabeth Murrill, Cade Brumley, Conrad
Appel, Judy Armstrong, Kevin Berken, Preston
Castille, Simone Champagne, Sharon Latten-
Clark, Lance Harris, Paul Hollis, Sandy
Holloway, Stacey Melerine, and Ronnie
Morris*

*\*pro hac vice forthcoming*
*\*\*E.D. La. admission pending*

26