**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

CHRISTOPHER DIER,

       *Plaintiff*,

  v.

JEFFREY MARTIN LANDRY et al,

      *Defendants*.

Civil Action No. 24-2306

Judge Greg Guidry

Mag. Judge Michael North

**PLAINTIFF'S RESPONSE IN OPPOSITION**
**TO DEFENDANTS' MOTION TO DISMISS**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ............................................................................................................... 1

LEGAL STANDARDS ........................................................................................................ 2

ARGUMENT ..................................................................................................................... 2

I.     This Court Has Jurisdiction ................................................................................... 2

     A.     Mr. Dier's Claims Are Ripe ..................................................................... 2

     B.     Mr. Dier Has Article III Standing ........................................................... 4

     C.     Defendants Are Not Entitled To Sovereign Immunity ............................ 8

II.    Mr. Dier Has Plausibly Alleged an Establishment Clause Claim...................... 11

     A.     Mr. Dier Meets His Burden Under the Facial Challenge Standard ...... 11

     B.     H.B. 71 Is Unconstitutional Under *Stone v. Graham* ......................... 14

     C.     H.B. 71 Is Unconstitutional Under Any Establishment Clause Test ................... 18

III.   Mr. Dier Has Plausibly Alleged a Free Exercise Clause Claim ....................... 22

IV.   Mr. Dier Has Plausibly Alleged a Free Speech Clause Claim.......................... 23

CONCLUSION................................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aguillard v. Treen*,
  634 F. Supp. 426 (E.D. La. 1985) .................................................................................1, 6, 7, 9

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .................................................................................................................2

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .................................................................................................................2

*Bennett v. Spear*,
  520 U.S. 154 (1997) ..............................................................................................................5, 8

*Book People, Inc. v. Wong*,
  91 F.4th 318 (5th Cir. 2024) .....................................................................................................9

*Bosse v. Oklahoma*,
  580 U.S. 1 (2016) ...............................................................................................................15, 16

*Bowen v. Kendrick*,
  487 U.S. 589 (1988) ...............................................................................................................14

*Braidwood Mgmt., Inc. v. Equal Emp. Opportunity Comm'n*,
  70 F.4th 914 (5th Cir. 2023) ...................................................................................................2, 3

*Braunfeld v. Brown*,
  366 U.S. 599 (1961) ...............................................................................................................23

*Buchanan v. Alexander*,
  919 F.3d 847 (5th Cir. 2019) ...................................................................................................25

*Carson v. Makin*,
  596 U.S. 767 (2022) ...............................................................................................................22

*Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*,
  467 U.S. 837 (1984) ...............................................................................................................16

*Church of Lukumi Babalu Aye, Inc. v. City of Hialeah.*,
  508 U.S. 520 (1993) ...............................................................................................................23

*City of Austin v. Paxton*,
  943 F.3d 993 (5th Cir. 2019) .....................................................................................................8

*Clemens v. ExecuPharm Inc.*,
  48 F.4th 146 (3d Cir. 2022) ...................................................................................6

*Cornerstone Christian Sch. v. Univ. Interscholastic League*,
  563 F.3d 127 (5th Cir. 2009) ................................................................................22

*Croft v. Perry*,
  624 F.3d 157 (5th Cir. 2010) ................................................................................13

*St. Tammany Parish, ex rel. Davis v. Fed. Emergency Mgmt. Agency*,
  556 F.3d 307 (5th Cir. 2009) ..................................................................................2

*Dep't of Com. v. New York*,
  588 U.S. 752 (2019) ................................................................................................4

*Doe v. City of Albuquerque*,
  667 F.3d 1111 (10th Cir. 2012) ............................................................................12

*Duke Power Co. v. Carolina Env't Study Grp., Inc.*,
  438 U.S. 59 (1978) ..................................................................................................4

*E.T. v. Paxton*,
  41 F.4th 709 (5th Cir. 2022) .............................................................................5, 10

*Edwards v. Aguillard*,
  482 U.S. 578 (1987) ....................................................................................... *passim*

*Engel v. Vitale*,
  370 U.S. 421 (1962). 545 U.S. 677 (2005) .......................................16, 17, 18, 19

*Everson v. Bd. of Educ. of Ewing*,
  330 U.S. 1 (1947) ..................................................................................................19

*Freedom From Religion Foundation, Inc. v. Mack*,
  49 F.4th 941 (5th Cir. 2022) ...................................................................................5

*Fulton v. City of Phila., Pa.*,
  593 U.S. 522 (2021) ..............................................................................................22

*Garcetti v. Ceballos*,
  547 U.S. 410 (2006) .........................................................................................24, 25

*Hardy v. Jefferson Cmty. Coll.*,
  260 F.3d 671 (6th Cir. 2001) ................................................................................24

*Hohn v. United States*,
  524 U.S. 236 (1998) ..............................................................................................15

*Honeywell Int'l, Inc. v. E.P.A.*,
    705 F.3d 470 (D.C. Cir. 2013) ...................................................................................4

*Ingebretsen v. Jackson Pub. Sch. Dist.*,
    864 F. Supp. 1473 (S.D. Miss. 1994) .......................................................................13

*Ingebretsen v. Jackson Pub. Sch. Dist.*,
    No. 94-60631, 1995 WL 17077701 (5th Cir. Jan. 11, 1995) ..................................13

*Ingebretsen v. Jackson Public School District*,
    88 F.3d 274 (5th Cir. 1996) .....................................................................................13

*Jusino v. Fed'n of Cath. Tchrs., Inc.*,
    54 F.4th 95 (2d Cir. 2022) .......................................................................................15

*K.P. v. LeBlanc*,
    627 F.3d 115 (5th Cir. 2010) .....................................................................................6

*Kennedy v. Bremerton Sch. Dist.*,
    597 U.S. 507 (2022) ...........................................................................................12, 21

*Larson v. Valente*,
    456 U.S. 228 (1982) ...........................................................................................19, 23

*Lee v. Weisman*,
    505 U.S. 577 (1992) ...........................................................................................19, 22

*Loper Bright Enters. v. Raimondo*,
    144 S. Ct. 2244 (2024) .............................................................................................15

*MacPhee v. MiMedx Grp., Inc.*,
    73 F.4th 1220 (11th Cir. 2023) ..................................................................................8

*Maddox v. Bank of N.Y. Mellon Tr. Co.*,
    19 F.4th 58 (2d Cir. 2021) .........................................................................................6

*Mallory v. Norfolk S. Ry. Co.*,
    600 U.S. 122 (2023) .................................................................................................15

*Massachusetts v. EPA*,
    549 U.S. 497 (2007) ...............................................................................................5, 7

*McCreary Cnty., Ky. v. A.C.L.U. of Ky.*,
    545 U.S. 844 (2005) .......................................................................................19, 21, 23

*Meriwether v. Hartop*,
    992 F.3d 492 (6th Cir. 2021) ...............................................................................24, 25

*Moody v. NetChoice, LLC*,
    144 S. Ct. 2383 (2024) ..........................................................................................13

*Murray v. City of Austin, Tex.*,
    947 F.2d 147 (5th Cir. 1991) ................................................................................5

*Murthy v. Missouri*,
    144 S. Ct. 1972 (2024) ......................................................................................4, 8

*N.L.R.B. v. Catholic Bishop of Chicago*,
    440 U.S. 490 (1979) ............................................................................................16

*In re Navy Chaplaincy*,
    534 F.3d 756 (D.C. Cir. 2008) ............................................................................5

*NiGen Biotech, L.L.C. v. Paxton*,
    804 F.3d 389 (5th Cir. 2015) ................................................................................9

*Pickering v. Bd of Educ. of Twp. High Sch. Dist. 205, Will Cnty. Ill.*,
    391 U.S. 563 (1968) ............................................................................................25

*Raj v. Louisiana State Univ.*,
    714 F.3d 322 (5th Cir. 2013) ................................................................................8

*Ramming v. U.S.*,
    281 F.3d 158 (5th Cir. 2001) ................................................................................2

*Ramos v. Louisiana*,
    590 U.S. 83 (2020) ........................................................................................15, 19

*Rios v. City of Del Rio*,
    444 F.3d 417 (5th Cir. 2006) ..............................................................................13

*Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*,
    490 U.S. 477 (1989) ............................................................................................15

*Russell v. Lundergan-Grimes*,
    784 F.3d 1037 (6th Cir. 2015) ............................................................................10

*Sanchez v. R.G.L.*,
    761 F.3d 495 (5th Cir. 2014) ................................................................................5

*Santa Fe Indep. Sch. Dist. v. Doe*,
    530 U.S. 290 (2000) ......................................................................12, 13, 14, 19

*School District of Abington Township v. Schempp*,
    374 U.S. 203 (1963) ....................................................................................16, 22

*Sherbert v. Verner*,
   374 U.S. 398 (1963)..............................................................................................22

*Sierra Club v. Morton*,
   405 U.S. 727 (1972)................................................................................................6

*Sonnier v. Crain*,
   613 F.3d 436 (5th Cir. 2010) ...............................................................................14

*Staley v. Harris County, Tex.*,
   485 F.3d 305 (5th Cir. 2007) (en banc) .............................................................3, 4

*State Oil Co. v. Khan*,
   522 U.S. 3 (1997)..................................................................................................15

*Stone v. Graham*,
   449 U.S. 39 (1980)......................................................................................... *passim*

*Summit Med. Assocs., P.C. v. Pryor*,
   180 F.3d 1326 (11th Cir. 1999) ..............................................................................9

*Susan B. Anthony List v. Driehaus*,
   573 U.S. 149 (2014)................................................................................................3

*Tenet v. Doe*,
   544 U.S. 1 (2005)..................................................................................................15

*Texas Democratic Party v. Abbott*,
   961 F.3d 389 (5th Cir. 2020) .....................................................................7, 10, 11

*Thomas v. Rev. Bd. of Ind. Emp. Sec. Div.*,
   450 U.S. 707 (1981)..............................................................................................22

*Thomas v. Union Carbide Agr. Prods. Co.*,
   473 U.S. 568 (1985)................................................................................................5

*Thurston Motor Lines, Inc. v. Jordan K. Rand, Ltd.*,
   460 U.S. 533 (1983)..............................................................................................15

*TransUnion LLC v. Ramirez*,
   594 U.S. 413 (2021)................................................................................................6

*United States v. Maloid*,
   71 F.4th 795 (10th Cir. 2023) ...............................................................................15

*United States v. Salerno*,
   481 U.S. 739 (1987)..............................................................................................13

*USP Holdings, Inc. v. United States*,
    143 S. Ct. 1056 (2023) ................................................................................15

*Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Md..*,
    535 U.S. 635 (2002) ....................................................................................9

*Virginia Off. for Prot. & Advoc. v. Stewart*,
    563 U.S. 247 (2011) ....................................................................................8

*W. Virginia State Bd. of Educ. v. Barnette*,
    319 U.S. 624 (1943) ..................................................................................24

*Wallace v. Jaffree*,
    472 U.S. 38 (1985) ....................................................................................19

*Walsh v. La. High Sch. Athletic Ass'n*,
    616 F.2d 152 (5th Cir. 1980) ....................................................................22

*Waste Mgmt. Holdings, Inc. v. Gilmore*,
    252 F.3d 316 (4th Cir. 2001) ......................................................................9

*Whole Woman's Health v. Jackson*,
    595 U.S. 30 (2021) ..................................................................................7, 9

*Wooley v. Maynard*,
    430 U.S. 705 (1977) ..................................................................................24

*Ex parte Young*,
    209 U.S. 123 (1908) ..........................................................................7, 8, 9, 10

*Zorach v. Clauson*,
    343 U.S. 306 (1952) ..................................................................................19

**Statutes**

La. Rev. Stat.
    § 14:134 ....................................................................................................11
    § 17:22 ......................................................................................................11
    § 17:24 ......................................................................................................11
    § 17.2122 ............................................................................................ *passim*
    § 17:286.1 ..................................................................................................1
    § 17:286.7 ..................................................................................................1

2024 La. Sess. Law Serv. Act 676 ......................................................................4

**Rules**

Fed. R. Civ. P. 12(b)(1) ......................................................................................2

**Legislative Materials**

H.B. 71 § 1, 2024 Reg. Sess. (La. 2024) .................................................................17, 20

H.B. 71 § 3, 2024 Reg. Sess. (La. 2024) ...........................................................................9

Hearing on H.B. 71 Before the H. Comm. on Educ., 2024 Reg. Sess. (La. Apr. 4, 2024) ..............................................................................................................14, 20, 21

**Other Authorities**

Bryan A. Garner et al., *The Law of Judicial Precedent* 30 (2016) ................................15

Nathan Chapman & Michael W. McConnell, *Agreeing to Disagree: How the Establishment Clause Protects Religious Diversity and Freedom of Conscience* (2023) ...........................................................................................16, 18

Patrick Wall, Jeff Landry Vows to Defend "Judeo-Christian values" After Ten Commandments Lawsuit (June 25, 2024) ...........................................................20

Paul Finkelman, *The Ten Commandments on the Courthouse Lawn and Elsewhere*, 73 Fordham L. Rev. 1477 (2005) ........................................................19

## INTRODUCTION

Defendants' motion to dismiss should be denied. Mr. Dier's claims are ripe, he has Article III standing, and Defendants cannot claim sovereign immunity. On the merits, Mr. Dier has pled plausible claims that House Bill 71 ("H.B. 71") violates the Establishment Clause (Count I), the Free Exercise Clause (Count II), and the Free Speech Clause (Count III).

On the question of subject matter jurisdiction, this case is on all fours with *Edwards v. Aguillard*, 482 U.S. 578 (1987), where the Supreme Court invalidated a Louisiana law in the same posture as this case. *See Aguillard v. Treen*, 634 F. Supp. 426, 429-30 (E.D. La. 1985) (reproducing statute). That law—Louisiana's "Creationism Act," La. Rev. Stat. §§ 17:286.1-17:286.7— contained no enforcement scheme and mandated that "public schools within th[e] state give balanced treatment to creation-science and to evolution-science." 634 F. Supp. at 429-30. The statute made no mention of enforcement by higher-level state officials. The defendants were the Governor, the Attorney General, the Louisiana Department of Education, and the Superintendent of Education. *See* Br. of Appellants (State Defendants), *Edwards v. Aguillard*, 482 U.S. 578 (1987), No. 85-1513, 1986 WL 727653  (June 19, 1986) (listing parties). Yet no jurisdictional obstacles prevented the district court, the Fifth Circuit, or the Supreme Court from resolving a facial Establishment Clause challenge by—among other plaintiffs—Louisiana teachers. All three courts held that the law violated the Establishment Clause. *Aguillard v. Treen*, 634 F. Supp. at 428.

On the merits, this case is on all fours with *Stone v. Graham*, 449 U.S. 39 (1980) (per curiam), where the Supreme Court struck down a Kentucky law that "require[d] the posting of a copy of the Ten Commandments . . . on the wall of each public classroom." *Stone* is binding, and H.B. 71 is as unconstitutional today as Kentucky's version was in 1980. Finally, H.B. 71 infringes on Mr. Dier's free exercise of religion and freedom of speech.

## LEGAL STANDARDS

A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure may be granted only when the court lacks the statutory or constitutional power to adjudicate the case and "only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Ramming v. U.S.*, 281 F.3d 158, 161 (5th Cir. 2001). A Rule 12(b)(1) motion to dismiss may be decided "on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of the disputed facts." *St. Tammany Parish, ex rel. Davis v. Fed. Emergency Mgmt. Agency*, 556 F.3d 307, 315 (5th Cir. 2009) (citation omitted).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). "A claim has facial plausibility when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## ARGUMENT

### I.    This Court Has Jurisdiction

#### A.    Mr. Dier's Claims Are Ripe

Mr. Dier's claims are ripe for review. *See Braidwood Mgmt., Inc. v. Equal Emp. Opportunity Comm'n*, 70 F.4th 914, 930-32 (5th Cir. 2023) (finding plaintiffs' claims ripe). "[T]here is a fair amount of overlap between Article III standing requirements and the ripeness analysis," and "[i]t remains unclear whether [courts] can reject a claim as unripe once plaintiffs

have established Article III standing." *Id.* at 930 n.28. The Supreme Court has questioned the "continuing vitality of the prudential ripeness doctrine." *Id.* (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 167 (2014)). As explained below, Mr. Dier has Article III standing. *See infra* at 4-8. And Mr. Dier's claims are ripe in any event.

A claim is ripe if it is fit for judicial decision and withholding consideration would inflict hardship on the parties. *Braidwood Mgmt.*, 70 F.4th at 930. "[A] claim is 'fit for judicial decision' if it presents a pure question of law that needs no further factual development." *Id.* A claim is unripe if it is "contingent [on] future events that may not occur as anticipated, or indeed may not occur at all." *Id.* The hardship prong "principally tracks the Article III injury analysis." *Id.* at 931.

This case meets both prongs of the ripeness analysis. Taking the facts in the Complaint as true, no further factual development is necessary to establish that H.B. 71 violates the Establishment Clause, Free Exercise Clause, and Free Speech Clause. And because Mr. Dier has plausibly alleged that H.B. 71 will cause him concrete injury, he readily meets the hardship prong as well. Compl. ¶¶ 46-54.

Citing *Staley v. Harris County, Tex.*, 485 F.3d 305 (5th Cir. 2007) (en banc), Defendants argue (MTD at 4-5) that this case is unripe because there is too much uncertainty over how the State will implement H.B. 71. That argument fails for two independent reasons.

**1.** *Staley* is inapposite.[1] In *Staley* the Fifth Circuit held that any Establishment Clause challenge to a potential future redisplay of a monument on courthouse grounds was unripe because "no decision ha[d] been made regarding *any* aspect of the future display of the monument." 485 F.3d at 309 (emphasis added). "[I]t [was] not known when, where, or under what circumstance the

---

[1] *Staley* also involved only the Establishment Clause. Defendants make no argument that Mr. Dier's Free Exercise and Free Speech claims are unripe. Nor could it. A claim that H.B. 71's requirement to display the Ten Commandments compels teachers to engage in specific religious speech at odds with their own moral, ethical, and religious beliefs is plainly ripe.

monument and Bible [would] be restored on the Courthouse grounds." *Id.* at 307. The claim was unripe because it "rest[ed] upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Id.* at 309.

Here, the "when," "where," and "circumstances" are all plain: "No later than January 1, 2025," each public school "shall display the Ten Commandments in each classroom" "with a minimum requirement that the Ten Commandments shall be displayed on a poster or framed document that is at least eleven inches by fourteen inches"; "[t]he text of the Ten Commandments shall be the central focus of the poster or framed document and shall be printed in a large, easily readable font"; and the "[t]he text shall read" as the Protestant version of the Ten Commandments. 2024 La. Sess. Law Serv. Act 676 (RB. 71) (to be codified at La. Rev. Stat. §§ l7:2l 22(B)(1), (2)). No further facts are needed to decide Mr. Dier's claims.

**2.** This is a facial challenge to H.B. 71. This case thus necessarily presents the question whether the requirements of H.B. 71 are consistent with the Establishment Clause, regardless of how it is implemented. No additional information about the where, when, or how of H.B. 71 is required.

### B.    Mr. Dier Has Article III Standing

Mr. Dier also has Article III standing. To allege Article III standing, a plaintiff must have a concrete and particularized injury fairly traceable to the defendant's actions that is likely to be redressed at least in part by a favorable decision. *Murthy v. Missouri*, 144 S. Ct. 1972, 1986 (2024). An injury qualifies as concrete and particularized if it is "actual" and "imminent," and a plaintiff can sue to redress an anticipated harm that is "certainly impending." *Dep't of Com. v. New York*, 588 U.S. 752, 766-67 (2019). An injury is fairly traceable when the defendant is the but-for cause of the injury. *See Duke Power Co. v. Carolina Env't Study Grp., Inc.*, 438 U.S. 59, 74-78 (1978); *accord Honeywell Int'l, Inc. v. E.P.A.*, 705 F.3d 470, 472 (D.C. Cir. 2013). The defendant need not be "the very last step in the chain of causation." *Bennett v. Spear*, 520 U.S. 154, 168-69 (1997).

An "injury produced by determinative or coercive effect upon the action of someone else" is fairly traceable. *Id.* at 169. An injury is redressable so long as relief on the merits is likely to lessen the plaintiff's injury. *See Massachusetts v. EPA*, 549 U.S. 497, 521, 525-26 (2007) (finding redressability where the requested relief would potentially "reduce th[e] risk" of harm to the state); *E.T. v. Paxton*, 41 F.4th 709, 721 (5th Cir. 2022) ("[A] partial remedy is constitutionally sufficient."); *see also Sanchez v. R.G.L.*, 761 F.3d 495, 506 (5th Cir. 2014).

*Injury.* Mr. Dier alleges three cognizable injuries arising from H.B. 71: (1) conscience injury; (2) reputational injury; and (3) financial injury. All are independently sufficient to confer standing.

As an initial matter, "[i]n cases involving religious displays and exercises" a plaintiff has standing if he must "encounter" the offending item or action." *Freedom From Religion Foundation, Inc. v. Mack*, 49 F.4th 941, 949 (5th Cir. 2022); *Murray v. City of Austin, Tex.*, 947 F.2d 147, 150 (5th Cir. 1991) ("personal[] confront[ation]" with the display confers standing); *see In re Navy Chaplaincy*, 534 F.3d 756, 763 (D.C. Cir. 2008) (Kavanaugh, J.) (collecting religious display cases finding standing on this basis). Mr. Dier will encounter the displays mandated by H.B. 71 on a daily basis, in the classroom where he teaches, and thus has standing under the Fifth Circuit's religious-display precedent. Declaration of Christopher Dier ("Dier Decl."), ECF No. 47-2 (Dier Decl.) ¶¶ 16, 19. Defendants are incorrect that observing a particular display is necessary to an Article III injury. So long as a threatened harm is "certainly impending"—as here—and not merely "possible," injury is established for purposes of standing. *Thomas v. Union Carbide Agr. Prods. Co.*, 473 U.S. 568, 581 (1985). In *Edwards v. Aguillard*, for example, no court at any level suggested that teachers lacked standing to bring their pre-enforcement challenge to Louisiana's "Creationism Act," even though the "Louisiana officials charged with the duty of implementation of the statute . . . agreed to take no action toward implementation pending the final outcome of [the] litigation." *Aguillard v.*

*Treen*, 634 F. Supp. at 427.

Mr. Dier will also suffer a conscience injury. Article III recognizes injuries that "significantly affect[]" a plaintiff's "quality of life." *Sierra Club v. Morton*, 405 U.S. 727, 734-35 (1972). The threat of being forced to violate a sincerely held belief is cognizable at least in part because it involves acute emotional and psychological harm. *Maddox v. Bank of N.Y. Mellon Tr. Co.*, 19 F.4th 58, 65 (2d Cir. 2021); *Clemens v. ExecuPharm Inc.*, 48 F.4th 146, 155 (3d Cir. 2022). Here, Mr. Dier alleges that displaying the Ten Commandments in accordance with H.B. 71 would coerce him into following, endorsing, and proselytizing a specific faith, require him to engage in a religious act contrary to his faith, require him to provide religious instruction contrary to his faith, require him to coerce others to follow a particular religious faith, and coerce him to adopt or endorse religious views that are inconsistent with his faith. Compl. ¶¶ 46–50; Dier Decl. ¶¶ 18-19, 24.

Mr. Dier will also suffer reputational injury if H.B. 71 takes effect. "[R]eputational harms" are paradigmatic "harms traditionally recognized as providing a basis for lawsuits in American courts." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021). Here, Mr. Dier alleges that absent an injunction, his refusal to display the Ten Commandments in accordance with H.B. 71 would cause him immediate irreparable reputational harm. Compl. ¶ 52; Dier Decl. ¶ 23.

Finally, H.B. 71 will inflict economic harm on Mr. Dier, which is a quintessential Article III injury. *TransUnion*, 594 U.S. at 424. Mr. Dier alleges that absent an injunction, his refusal to display the Ten Commandments would lead to adverse professional consequences that would cause him immediate, concrete financial harm. Compl. ¶ 53; Dier Decl. ¶¶ 22-23.

***Traceability and Redressability.*** Traceability and redressability are also established. Defendants "significantly contribute[] to" Mr. Dier's prospective injuries, *K.P. v. LeBlanc*, 627 F.3d 115, 123 (5th Cir. 2010), and an injunction against them would "reduce th[e] risk" that Mr.

Dier suffers harm as a result of H.B. 71, *Massachusetts*, 549 U.S. at 521.

As Mr. Dier alleges—and as discussed in further detail *infra* at 10-11—the Governor is the Chief Executive of the State, responsible for enforcing the State's laws. Compl. ¶ 12. The Attorney General is the chief law enforcement officer and in that role has plenary power and responsibility to use the courts to enforce Louisiana's laws. *Id.* ¶ 13. The Louisiana State Superintendent is statutorily responsible for administering and implementing all policies and programs adopted by the Louisiana State Board of Elementary and Secondary Education ("BESE"). *Id.* ¶ 14. And members of BESE are required by law to assist in implementing H.B. 71. *Id.* ¶ 15. Each Defendant has the power—indeed, the responsibility—to ensure that H.B. 71 is implemented statewide. The Fifth Circuit has found standing in lawsuits against state officials with far more attenuated implementation responsibilities than these. *See Texas Democratic Party v. Abbott*, 961 F.3d 389, 399 (5th Cir. 2020) (rejecting argument that lawsuit should have been brought against "local, rather than state, officials"). The Supreme Court has as well. *See Ex parte Young*, 209 U.S. 123, 146, 161 (1908) (suit against State attorney general where only connect connection was the "general duty imposed upon him, which includes the right and the power to enforce the statutes of the state"); *Whole Woman's Health v. Jackson*, 595 U.S. 30, 60 (2021) (Roberts, C.J., concurring in part and dissenting in part) (stating "court clerks" can be appropriate defendants in pre-enforcement suits). Again, in *Aguillard*, the same officials who are Defendants here admitted they were the "Louisiana officials charged with the duty of implementation" of a materially similar statute. *Aguillard v. Treen*, 634 F. Supp. at 427.

Defendants are wrong that "when an H.B. 71 display goes on [Mr. Dier's] classroom wall, it will be the decision of his school." MTD at 9. Many schools have no desire to force their teachers to display the Ten Commandments. The only reason they will do so is the threat of adverse actions

by state officials including the Governor, Attorney General, State Superintendent, and the BESE. This is not a case where harm stems from "the independent action of some third party not before the court.'" *Murthy*, 144 S. Ct. at 1986. Mr. Dier's injury is directly traceable to H.B. 71 and Defendants' law-enforcement responsibilities. "[S]tanding is not defeated merely because the alleged injury can be fairly traced to the actions of both parties and non-parties." *MacPhee v. MiMedx Grp., Inc.*, 73 F.4th 1220, 1240 (11th Cir. 2023); *Bennett*, 520 U.S. at 168-69. If this Court enjoins Defendants from enforcing H.B. 71 through any exercise of coercive state power associated with their offices, that will reduce the risk that Mr. Dier will be required to display the Ten Commandments in his classroom. That is all that is required to establish traceability and redressability.

Defendants' position would undermine Article III's requirement of concrete adverseness. It cannot be correct that Article III requires a teacher to sue to enjoin a school from enforcing a law the school agrees is unconstitutional—defeating any actual adverseness—when he could instead seek relief against state officials who support the law and have the authority to ensure its implementation.

### C.    Defendants Are Not Entitled To Sovereign Immunity

Defendants are not entitled to sovereign immunity, because the *Ex parte Young* exception applies. 209 U.S. at 155-56. That exception allows "suits for injunctive or declaratory relief against individual state officials acting in violation of federal law." *Raj v. Louisiana State Univ.*, 714 F.3d 322, 328 (5th Cir. 2013). The complaint must allege "an ongoing violation of federal law and seek[] relief properly characterized as prospective." *Virginia Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 255 (2011). The state official need only have "some connection with the enforcement of the [challenged] act." *Young*, 209 U.S. at 157; *see Paxton*¸ 943 F.3d at 997. The Complaint meets both criteria.

**1.** The Complaint seeks prospective relief for an "ongoing violation" of federal law. Mr. Dier alleges that H.B. 71—which became "effective" on June 19, 2024, H.B. 71 § 3, 2024 Reg.

Sess. (La. 2024)—violates the First Amendment. This type of pre-enforcement constitutional challenge to a state law satisfies the "straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law." *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Md..*, 535 U.S. 635, 645 (2002); *see, e.g.*, *Book People, Inc. v. Wong*, 91 F.4th 318, 328, 334 (5th Cir. 2024) ("pre-enforcement" First Amendment challenge to state statute satisfied "ongoing violation" requirement); *Whole Woman's Health*, 595 U.S. at 45-46 (pre-enforcement challenge to state law); *Aguillard v. Treen*, 634 F. Supp. 426 (pre-enforcement suit against Louisiana officials related to teaching creationism in public schools). Indeed, *Ex parte Young itself* was a pre-enforcement facial challenge to a state law. 209 U.S. at 144.

Contrary to Defendants' argument (MTD at 9-10), the "ongoing violation" "requirement does not mean that the enforcement of the allegedly unconstitutional state statute actually must be *in progress* against the particular plaintiffs initiating suit." *Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1338 (11th Cir. 1999) (emphasis added). It "merely distinguishes between cases where the relief sought is prospective in nature, *i.e.*, designed to prevent injury that will occur in the future, and cases where relief is retrospective." *Id.*; *accord Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 330 (4th Cir. 2001) ("The requirement that the violation of federal law be ongoing is satisfied when a state officer's enforcement of an allegedly unconstitutional state law is threatened, even if the threat is not yet imminent."). The lone case Defendants cite, *NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389 (5th Cir. 2015), does not suggest otherwise. *NiGen* said only that *past* violations of federal law are not "ongoing violations." *Id.* at 395.

**2.** The Complaint alleges that each Defendant is sufficiently connected with the enforcement of H.B. 71. A sufficient connection to enforcement exists where the defendant has authority to enforce the statute and has "a demonstrated willingness to exercise" that authority.

*Texas Democratic Party*, 961 F.3d at 401. An official's "connection with enforcement" is generally satisfied when standing has been established. *Paxton*, 943 F.3d at 1002 (citing *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1047 (6th Cir. 2015) ("[A]t the point that a threatened injury becomes sufficiently imminent and particularized to confer Article III standing, that threat of enforcement also becomes sufficient to satisfy [the connection to the enforcement] element of *Ex parte Young*.")). As discussed above, standing as to each of the defendants has been established here. *See supra* at 4-8.

In any event, an *Ex parte Young* suit may be maintained so long as the defendant has "*some* connection with the enforcement of the act." *Texas Democratic Party*, 978 F.3d at 179 (emphasis added). Even "[a] scintilla of enforcement by the relevant state official with respect to the challenged law" meets the standard. *Id.* (quotation marks omitted). In *Ex parte Young* itself, the Supreme Court concluded that the plaintiffs could obtain pre-enforcement relief by suing the Minnesota attorney general based on his "connection with the enforcement" of the challenged act. 209 U.S. at 146, 157. The Court so held despite that the attorney general's only such connection was the "general duty imposed upon him, which includes the right and the power to enforce the statutes of the state, including, of course, the act in question." *Id.* at 161. And in *Aguillard*—a suit against the same Defendants as in this case, in this same judicial district, challenging a similar statute—no party questioned that *Ex parte Young* applied. 482 U.S. 578.

Defendants' argument (MTD at 10-11) that they lack "the requisite authority to enforce H.B. 71" fails. H.B. 71 itself requires the BESE Defendants[2] to "adopt rules and regulations . . . to ensure the proper implementation of this Section." La. Rev. Stat. 17:2122 (B)(3) (as amended by

---

[2] Defendants Appel, Armstrong, Berken, Castille, Champagne, Latten-Clark, Harris, Hollis, Holloway, Melerine, and Morris.

H.B. 71). Because the BESE Defendants are specifically charged with implementing the statute, they have a "connection with the enforcement" of H.B. 71. Defendant Brumley, as the Louisiana State Superintendent of Education, is charged with implementing all "policies and programs" of the BESE and all "laws affecting schools under the jurisdiction of the board." La. Rev. Stat. § 17:22. He is specifically required to "[a]dminister the process prescribed by the [BESE Defendants] for the review, adoption, procurement, and distribution of . . . instructional materials," such as the purportedly instructional Ten Commandments displays H.B. 71 requires the BESE to procure and adopt. La. Rev. Stat. § 17:22. Moreover, all employees of the State Department of Education, including Mr. Dier, are under Defendant Brumley's direction and control. La. Rev. Stat. § 17:24. Defendant Brumley thus has authority to terminate Mr. Dier if he fails to comply with the law.

Defendant Murrill, as the Attorney General of the State of Louisiana, has authority to prosecute Mr. Dier for "intentionally refus[ing] or fail[ing] to perform any duty required of him" as an employee of BESE. La. Rev. Stat. § 14:134. Defendants do not dispute that the Attorney General has expressed an intention to enforce H.B. 71. Defendant Landry, beyond being "generally responsible for enforcing Louisiana law," MTD at 10, "continues to advocate for the law" in public statements, Compl. ¶¶ 12, 31. He has solicited funds so that H.B. 71 can be enforced, exhorting his supporters to help him "ADVANCE . . . the Judeo-Christian values." *Id.* ¶ 31. These public statements show a willingness to enforce H.B. 71. *See Texas Democratic Party*, 961 F.3d at 401.

## II.    **Mr. Dier Has Plausibly Alleged an Establishment Clause Claim**

### A.    **Mr. Dier Meets His Burden Under the Facial Challenge Standard**

H.B. 71 is facially unconstitutional because the statutory scheme violates *Stone v. Graham* and fails the governing Establishment Clause test. *See Santa Fe Indep. Sch. Dist. v. Doe*, 530 U.S. 290, 313-14 (2000); *accord Doe v. City of Albuquerque*, 667 F.3d 1111, 1127 (10th Cir. 2012)

(explaining that "where a statute fails the relevant constitutional test . . . it can no longer be constitutionally applied to anyone"). By requiring "each classroom," no matter the subject, to prominently "display" Protestant scripture, H.B. 71 embodies the hallmarks of a religious establishment and thus is facially unconstitutional. *See Stone*, 449 U.S. at 42; *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 536-37 (2022).

The facial challenge in this case resembles the facial challenges that prevailed in *Stone*, *Aguillard*, and *Santa Fe*. The law in *Stone* was facially unconstitutional because it required the "[p]osting of religious texts on the wall," regardless whether any *particular display* could be "integrated into the school curriculum," or whether specific teachers could surround particular displays with secular texts and images. 449 U.S. at 42. The Court in *Aguillard* held that Louisiana's Creationism Act was "facially invalid," notwithstanding that teaching about creationism "might be validly done" in specific instances. 482 U.S. at 594. And in *Santa Fe*, the Court invalidated a policy permitting prayer at school football games, rejecting the school district's argument that "there [could] be no certainty that any of the statements or invocations [would] be religious." 530 U.S. at 313. These laws—like H.B. 71—were facially unconstitutional because their "mere passage" and "implementation" violated the governing Establishment Clause standard. *Id.* at 313-14; *accord City of Albuquerque*, 667 F.3d at 1127 ("[A] facial challenge is just that—a challenge to the terms of the statute, not hypothetical applications.").

Nor is H.B. 71 immune from facial challenge simply because "[t]he nature of the display[s] [will] be determined by each governing authority." MTD at 14 (citation omitted). The "nature" of *every* display is that, no matter the class, a Protestant version of the Ten Commandments in "large, easily readable font" must be the "central focus." In *Sante Fe*, the Supreme Court rejected Defendants' exact argument, invalidating a policy that allowed students to determine the content

of a prayer at school football games through "a majoritarian election." 530 U.S. at 316. The policy on its face violated the Establishment Clause, "even if no . . . student were ever to offer a religious message." *Id.* H.B. 71 reflects an unconstitutional denominational preference and religious coercion, regardless whether particular displays end up including other images or attempting to downplay the religious significance of the Ten Commandments.

Defendants are incorrect that Mr. Dier must "plausibly allege that there is no set of circumstances under which [the implementation of H.B. 71] is constitutional." MTD at 12 (citing *Croft v. Perry,* 624 F.3d 157, 164 (5th Cir. 2010)).[3] The Supreme Court has rejected the "no set of circumstances" test in First Amendment cases. *See, e.g.*, *Moody v. NetChoice, LLC*, 144 S. Ct. 2383, 2397 (2024); *Bowen v. Kendrick*, 487 U.S. 589, 593, 602 (1988); *id.* at 627 n.1 (Blackmun, J., dissenting) (agreeing with the majority that the Court has rejected this "rigid analysis" in Establishment Clause cases); *see also Sonnier v. Crain*, 613 F.3d 436, 466 (5th Cir. 2010) (Dennis, J., concurring) ("[T]he Supreme Court and this court have repeatedly disregarded the 'no set of circumstances' test in deciding facial challenges in Establishment Clause cases, because it is

---

[3] *Croft* recited—though ultimately did not apply—the "no set of circumstances" test articulated in *United States v. Salerno*, 481 U.S. 739 (1987). But *Salerno* was not a First Amendment case, and, as discussed, that test does not apply to facial challenges under the Establishment Clause. In fact, before *Croft*, the Fifth Circuit granted a facial Establishment Clause challenge in *Ingebretsen v. Jackson Public School District*, 88 F.3d 274 (5th Cir. 1996), rejecting the Attorney General's request to apply the "no set of circumstances" test, *see* Br. of Appellant Attorney General, *Ingebretsen v. Jackson Pub. Sch. Dist.*, No. 94-60631, 1995 WL 17077701, at *6 (5th Cir. Jan. 11, 1995) (rejected at *Ingebretsen*, 88 F.3d at 279 & n.2), and affirming the district court's decision that "the rigid dictates of *Salerno* do not apply in Establishment Clause cases," *Ingebretsen v. Jackson Pub. Sch. Dist.*, 864 F. Supp. 1473, 1483 (S.D. Miss. 1994). Indeed, the *dissent* from denial of rehearing en banc in *Ingebretsen* criticized the panel for *rejecting* the "no set of circumstances" test. *See Ingebretsen*, 88 F.3d at 286 (Jones, J., dissental) ("It would [have been] ludicrous to assert, and the panel did not attempt to do so, that there '[was] no set of circumstances' under which the Mississippi prayer statute [could] be upheld."). So even if *Croft* had actually applied *Salerno*, and even absent the Supreme Court decisions rejecting that approach in Establishment Clause cases, *see infra*, *Croft* still would not be precedential on that point. *See Rios v. City of Del Rio*, 444 F.3d 417, 425 n.8 (5th Cir. 2006) ("The rule in this circuit is that where two previous holdings or lines of precedent conflict the earlier opinion controls and is the binding precedent in this circuit (absent an intervening holding to the contrary by the Supreme Court or this court en banc.").

inconsistent with the substantive constitutional tests that apply in that area of constitutional law."). At minimum, the Supreme Court has never *applied* that standard to a facial challenge under the Establishment Clause, focusing instead on whether the challenged law itself establishes religion. *E.g.*, *Santa Fe*, 530 U.S. at 313-16; *Aguillard*, 482 U.S. at 580-83; *Bowen*, 487 U.S. at 593.

In any event, Defendants' hypothetical "illustrations"—many of which do not appear to satisfy H.B. 71, and which the Louisiana Department of Education would merely "consider," *see* MTD, Ex. B ¶ 11—could not save the statute, even if they were relevant to the analysis. The "illustrations" only underscore that H.B. 71 is, at its core, a religious mandate. Informing students that an image of Moses is among the friezes in the Supreme Court does not call for the full text of a specific translation of the Ten Commandments. *See* MTD at 15. Educating students in every single lesson about "how . . . the Supreme Court view[s] the Ten Commandments" does not require the full text of the Protestant version. *Id.* at 16. No, H.B. 71 requires the word-for-word text of a Protestant translation of the Ten Commandments so that Louisiana's students learn from their government "what God says is right and what He says is wrong." Hearing on H.B. 71 Before the H. Comm. on Educ., 2024 Reg. Sess. at 5:08 (La. Apr. 4, 2024) ("*Hearing*"), bit.ly/4cqHnxj.

### B.    H.B. 71 Is Unconstitutional Under *Stone v. Graham*

The Supreme Court held in *Stone v. Graham* that a statute "requir[ing] the posting of a copy of the Ten Commandments, purchased with private contributions, on the wall of each public classroom in the State," is unconstitutional. 449 U.S. at 39. That decision is controlling. Defendants contend that "*Stone* is no longer good law" and is "distinguishable." MTD at 19. But their arguments only underscore that *Stone* controls this case.

**1.** *Stone* is a Supreme Court decision that has never been overruled; it is "good law." It is the "[Supreme] Court's prerogative alone to overrule one of its precedents." *Bosse v. Oklahoma*, 580 U.S. 1, 3 (2016). Its "decisions remain binding precedent until [it] see[s] fit to reconsider them,

regardless of whether subsequent cases have raised doubts about their continuing vitality." *Hohn v. United States*, 524 U.S. 236, 252-53 (1998). "This is true even if the lower court thinks the precedent is in tension with some other line of decisions" or has been "implicitly overruled." *Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 136 (2023) (citations omitted). District and circuit courts "must apply Supreme Court precedent." *United States v. Maloid*, 71 F.4th 795, 808 (10th Cir. 2023). Even when "the Supreme Court appears poised to overturn its own precedent," "as long as the precedent is still 'good law,' federal courts must follow it." Bryan A. Garner et al., *The Law of Judicial Precedent* 30 (2016). But that is exactly what Defendants ask this Court to do, despite the Supreme Court and Fifth Circuit repeatedly explaining that this would violate vertical *stare decisis*. The Supreme Court has repeated this rule time and again.[4] And the Court has never reconsidered its decision in *Stone*.

Citing *Kennedy v. Bremerton*, Defendants note that the Supreme Court overruled *Lemon v. Kurtzman*. MTD at 19. But the Court in *Kennedy* did not mention—let alone overrule—*Stone*. Despite recognizing that *Lemon v. Kurtzman* has been overruled, therefore, lower courts continue to follow Supreme Court decisions that applied the *Lemon* test. *See Jusino v. Fed'n of Cath. Tchrs., Inc.*, 54 F.4th 95, 102 (2d Cir. 2022), *cert. denied*, 143 S. Ct. 1056 (2023); *cf. Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2273 (2024) (noting that overruling *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984), "do[es] not call into question prior cases that relied on the *Chevron* framework"). In *Jusino*, for example, the Second Circuit held that *N.L.R.B. v. Catholic Bishop of Chicago*, 440 U.S. 490 (1979), "remains good law notwithstanding its reliance . . . on *Lemon*." *Id.* Writing for the court, Judge Sullivan explained that "regardless of whether

---

[4] *See, e.g.*, *Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*, 490 U.S. 477, 484 (1989); *Thurston Motor Lines, Inc. v. Jordan K. Rand, Ltd.*, 460 U.S. 533, 535 (1983); *Tenet v. Doe*, 544 U.S. 1, 10-11 (2005) (same); *State Oil Co. v. Khan*, 522 U.S. 3, 20-22 (1997); *Ramos v. Louisiana*, 590 U.S. 83, 124 n.5 (2020) (Kavanaugh, J., concurring).

*Kennedy* actively overruled *Lemon* or simply recognized that *Lemon* was already a dead letter, one thing it indisputably did not do was overrule—or even mention— *Catholic Bishop*." *Id.* "Thus," the Second Circuit concluded, "unless and until the Supreme Court sees fit to overrule *Catholic Bishop* directly, it remains binding on this Court." *Id.* (citing *Bosse*, 580 U.S. at 2).

In any event, *Stone* rests on a foundation much deeper than *Lemon*. As the Supreme Court explained in *Van Orden v. Perry*—which reaffirmed *Stone* despite describing the *Lemon* test as "no more than helpful signposts"—*Stone* reflects "almost exclusive reliance upon two of [the Court's] school prayer cases," *School District of Abington Township v. Schempp*, 374 U.S. 203 (1963), and *Engel v. Vitale*, 370 U.S. 421 (1962). 545 U.S. 677, 686, 690-91 (2005). *Stone* thus "stands as an example of the fact that [the Court] ha[s] been particularly vigilant in monitoring compliance with the Establishment Clause in elementary and secondary schools." *Id.* at 691. *Schempp* and *Engel*, in turn, are "firmly grounded in the history and rationale of disestablishment" and represent "the Court's finest hour with the Establishment Clause." Nathan Chapman & Michael W. McConnell, *Agreeing to Disagree: How the Establishment Clause Protects Religious Diversity and Freedom of Conscience* 144-47 (2023).

**2.** Defendants cannot distinguish *Stone*. The Kentucky statute in *Stone* "require[d] the posting of a copy of the Ten Commandments, purchased with private contributions, on the wall of each public classroom in the State." 449 U.S. at 39. H.B. 71 requires that "each public school governing authority shall display the Ten Commandments in each classroom in each school under its jurisdiction." H.B. 71 § 1 (enacting La. Rev. Stat. § 17.2122(B)(1)). The Kentucky statute specified that "[t]he copy shall be sixteen (16) inches wide by twenty (20) inches high." *Stone*, 449 U.S. at 39 n.1. H.B. 71 "require[s] that the Ten Commandments shall be displayed on a poster or framed document that is at least eleven inches by fourteen inches," that "[t]he text of the Ten

Commandments shall be the central focus," and that the Commandments shall "be printed in a large, easily readable font." H.B. 71 § 1 (enacting La. Rev. Stat. § 17.2122(B)(1)). The Kentucky statute required "a notation concerning the purpose of the display," purporting to acknowledge "[t]he secular application of the Ten Commandments is clearly seen in its adoption as the fundamental legal code of Western Civilization and the Common Law of the United States." *Stone*, 449 U.S. at 41. H.B. 71 requires that the Ten Commandments "be displayed with a context statement" that purports to outline the "[h]istory of the Ten Commandments in American Public Education." H.B. 71 § 1 (enacting La. Rev. Stat. § 17.2122(B)(3)). The statutes are identical. *See* ECF No. 47-1 ("Mot. for Prelim. Inj.") at 8-9.

Defendants attempt to distinguish *Stone* on the theory that H.B. 71 purportedly "integrate[s] the Ten Commandments into a course of study in public schools" and does not require "standalone displays." MTD at 20 (quotation marks omitted). But the Court in *Stone* held that the "[p]osting of religious texts *on the wall* serves no [permissible] educational function." *Stone*, 449 U.S. at 42 (emphasis added). Rather, "the text confronted elementary school students every day." *Van Orden*, 545 U.S. at 691. While the Court in *Stone* left open the possibility that the Ten Commandments could be "integrated into the school curriculum," it meant *lessons* "where the Bible may constitutionally be used in an appropriate *study* of history, civilization, ethics, comparative religion, or the like." 449 U.S. at 42 (emphasis added). It did not suggest that a State can force teachers to permanently "display" the Ten Commandments in "each classroom," no matter the subject of the class (math, art, chemistry, *etc.*).

And in any event, the Kentucky statute in *Stone*—like H.B. 71—did not limit the materials that could be displayed *around* the Ten Commandments. Kentucky teachers in *Stone* could have created every single one of the "illustrations" in Defendants' brief, so long as the Ten

Commandments themselves complied with the size minimum. So that does not distinguish *Stone*.

Finally, the State attempts to distinguish the "context statement" in H.B. 71 from the one in the Kentucky statute on the ground that H.B. 71's "context statement" is "lengthy." MTD at 20. But there is no minimum font-size for H.B. 71's "context statement," resulting in—as the State's "illustrations" show—blocks of essentially illegible small print. That pill-bottle disclaimer cannot possibly be the difference between an Establishment Clause violation and a permissible display.

### C.    H.B. 71 Is Unconstitutional Under Any Establishment Clause Test

Even if *Stone* were not controlling, H.B. 71 violates the Establishment Clause. *Stone* is rooted in the history and tradition of the Establishment Clause: the holding in *Stone* stems from "almost exclusive reliance upon" *Schempp* and *Engel*, *Van Orden*, 545 U.S. at 686, which are "firmly grounded in the history and rationale of disestablishment," Chapman & McConnell, *supra* at 144-47. Like the Kentucky statute in *Stone*, H.B. 71 violates the Establishment Clause because it compels teachers to display a religious text in their classrooms, pressures students and teachers to venerate a religious text, reflects denominational favoritism, and endorses religion.

**1.** H.B. 71 compels Louisiana's teachers to instruct students in a state-selected religious liturgy, endorse the officially approved orthodoxy, and conform to the State's chosen religion. *See* Mot. for Prelim. Inj. at 10. The Supreme Court has held that the government cannot, under the Establishment Clause, compel teachers to teach religious doctrine. *See Aguillard*, 482 U.S. at 580-81. That is part and parcel of the Establishment Clause's prohibition on compelling individuals to engage in religious observance. *E.g.*, *Zorach v. Clauson*, 343 U.S. 306, 314 (1952); *Wallace v. Jaffree*, 472 U.S. 38, 51 (1985); *Lee v. Weisman*, 505 U.S. 577, 587 (1992).

**2.** H.B. 71 also coerces students and teachers to respect, admire, and venerate a religious symbol. *See* Mot. for Prelim. Inj. at 11. The Establishment Clause prohibits the government from imposing "coercive pressures" "to support or participate in religion or its exercise." *Lee*, 505 U.S.

at 587-88 (citation omitted); *Engel v. Vitale*, 370 U.S. 421, 431 (1962). Not only does H.B. 71 directly compel Mr. Dier, it coerces the students he teaches, who are particularly susceptible to religious indoctrination at school. They are a captive audience and their young age makes them more likely to adopt state-endorsed religious teaching. *See Lee*, 505 U.S. at 593; *see also Santa Fe*, 590 U.S. at 311-12.

**3.** H.B. 71 also evinces a denominational preference. *See* Mot. for Prelim. Inj. at 11-15. "The clearest command of the Establishment Clause is that one religious denomination cannot be officially preferred over another." *Larson v. Valente*, 456 U.S. 228, 244 (1982); *see, e.g.*, *Everson v. Bd. of Educ. of Ewing*, 330 U.S. 1, 15 (1947); *McCreary Cnty., Ky. v. A.C.L.U. of Ky.*, 545 U.S. 844, 876 (2005). By requiring Louisiana's classrooms to display the Ten Commandments, H.B. 71 favors religious groups for whom the Commandments are "a central text of the[] faith" and erases those for whom the Commandments are not religiously significant, or who translate the Commandments differently from H.B. 71's mandatory Protestant wording. Paul Finkelman, *The Ten Commandments on the Courthouse Lawn and Elsewhere*, 73 Fordham L. Rev. 1477, 1498 (2005). There is no clearer instance of "one religious denomination" being "officially preferred over another" than a State requiring every public school classroom to display one denomination's scripture on the wall. *Larson*, 456 U.S. at 244.

**4.** Finally, the preeminent purpose of H.B. 71 is religious. *See* Mot. for Prelim. Inj. at 15-17. H.B. 71 was introduced for the overt religious purpose of ensuring that Louisiana's "children learn what God says is right and what He says is wrong." *Hearing* at 5:08. Louisiana's Legislature wanted to teach "that there [i]s a god," to show "what God's law is," and to provide the "direction" one would receive by "attending churches." *Id.* at 15:15, 16:00, 19:47. The central purpose of the Bill is to "ADVANCE . . . Judeo-Christian values." Patrick Wall, Jeff Landry Vows to Defend

"Judeo-Christian values" After Ten Commandments Lawsuit (June 25, 2024), bit.ly/3N2X97A. As the lead sponsor of H.B. 71 explained in support of the Bill, placing the Ten Commandments in Louisiana's schools is intended to instruct students in "God's law." *Hearing* at 19:55.

H.B. 71's operation confirms its religious nature. As discussed, H.B. 71 requires the Ten Commandments in "*each classroom*," whether the class is math, science, physical education, history, English, music, or art. H.B. 71 § 1 (enacting La. Rev. Stat. § 17.2122(B)(1)) (emphasis added). It specifies that "[t]he text of the Ten Commandments shall be the central focus," and that the Commandments shall "be printed in a large, easily readable font." *Id.* And it decrees the exact wording of the Ten Commandments. H.B. 71 § 1 (enacting La. Rev. Stat. § 17:2122(B)(2)). These hallmarks of a state-selected religious liturgy demonstrate that "the preeminent purpose of the Louisiana legislature was clearly to advance [a] religious viewpoint." *Aguillard*, 482 U.S. at 591.

**5.** Defendants cannot hide H.B. 71's religious significance behind allusions to "historical context." H.B. 71 § 1 (enacting La. Rev. Stat. § 17.2122). "The Ten Commandments are undeniably a sacred text in the Jewish and Christian faiths, and no legislative recitation of a supposed secular purpose can [hide] that fact." *Stone*, 449 U.S. at 41. The Commandments "do not confine themselves to arguably secular matters," but rather "concern[] the religious duties of believers: worshipping the Lord God alone, avoiding idolatry, not using the Lord's name in vain, and observing the Sabbath Day." *Id.* at 41-42. Because the Commandments "deal[] with religious obligations and with morality subject to religious sanction," they are "an unmistakably religious statement." *McCreary Cnty.*, 545 U.S. at 869.

The State's attempt to recast H.B. 71 as a law meant "to educate and inform the public as to the history and background of American and Louisiana law" is irreconcilable with the words of the Bill's own authors and sponsors. *Id.* (enacting La. Rev. Stat. § 17.2122(A)(2)). If H.B. 71

merely adds to the secular curriculum, then why did its sponsors *care* that "children[] are not attending churches"? *Hearing* at 15:15. Why did they say the law would ensure "that our children learn what God says"? *Id.* at 5:08. What could they have meant when they said the Bill would "bring people back to where they need to be"? *Id.* at 15:15. Why *must* the Ten Commandments be "the central focus" of the display? Why does the Bill mandate that teachers post the Ten Commandments in chemistry class? In art class? In gym? *See Edwards*, 482 U.S. at 589-94.

The answer is clear: "This is not a case in which the Ten Commandments are integrated into the school curriculum, where the Bible may constitutionally be used in an appropriate study of history, civilization, ethics, comparative religion, or the like." *Stone*, 449 U.S. at 42. This is a case where a State law requires every single public classroom to permanently display "religious texts on the wall." *Id.* According to the Bill's primary sponsor, "This is God's law." *Hearing* at 19:55. It "is plainly religious in nature." *Stone*, 449 U.S. at 41.

Defendants argue (MTD at 13-14, 17-18) that H.B. 71 is constitutional "given the history of Ten Commandments in public education," citing textbooks that were used in colonial schools and in public schools during the nineteenth century. But Defendants do not argue that denominational preferences and religious coercion are *permitted* under the "historically sensitive understanding" the Court articulated in *Kennedy*. 597 U.S. at 536-37. The text of the Ten Commandments may be "integrated into the school curriculum" in an educationally "appropriate" context, such as in a "*study* of history, civilization, ethics, comparative religion, or the like," but H.B. 71 requires the permanent display of the entire text of the Ten Commandments "on the wall" in all classrooms, at all times, regardless of the age of the students or the relevance to the subject matter of the class. *Stone*, 449 U.S. at 42 (emphasis added). That is not "integrated into the school curriculum."

### III.    Mr. Dier Has Plausibly Alleged a Free Exercise Clause Claim

H.B. 71 violates Mr. Dier's rights under the Free Exercise Clause. Free exercise "embraces a freedom of conscience and worship." *Lee*, 505 U.S. at 591. It protects the "right of every person to freely choose his own course" in matters of faith, "free of any compulsion from the state." *Schempp*, 374 U.S. at 222. And it prohibits "indirect coercion or penalties on the free exercise of religion, not just outright prohibitions." *Carson v. Makin*, 596 U.S. 767, 778 (2022).

**1.** "A regulation that is neutral on its face and is motivated by legitimate secular concerns may, in its application, offend the first amendment requirement of governmental neutrality if it *unduly burdens* the free exercise of religion." *Cornerstone Christian Sch. v. Univ. Interscholastic League*, 563 F.3d 127, 136 n.8 (5th Cir. 2009) (quoting *Walsh v. La. High Sch. Athletic Ass'n,* 616 F.2d 152, 157 (5th Cir. 1980) (emphasis added)). "Such undue burden may occur where the plaintiff alleges a viable free exercise claim in conjunction with another colorable constitutional claim, giving rise to heightened scrutiny." *Id.* "A great many claims for religious exemptions can easily be understood as hybrid free-exercise/free-speech claims." *Fulton v. City of Phila., Pa.*, 593 U.S. 522, 599 (2021) (Alito, J., concurring in the judgment). The most straightforward scenario is where a government action "directly compel[s]" a religious adherent to violate his beliefs by compelling him to speak. *Sherbert v. Verner*, 374 U.S. 398, 403-04 (1963); *Thomas v. Rev. Bd. of Ind. Emp. Sec. Div.*, 450 U.S. 707, 717 (1981).

This is a straightforward hybrid-rights case under the Free Exercise Clause. Displaying the Ten Commandments is speech—the posters take the form of written words. And for Mr. Dier, "[t]here is no way of displaying the Ten Commandments in [his] classroom in accordance with the requirements of H.B. 71 that would not violate [his] religious and personal beliefs." Dier Decl. ¶ 24. Mr. Dier views posting the Ten Commandments as a "religious act" that contravenes his religious views. *Id.* ¶ 18. H.B. 71 also "violates [Mr. Dier's] religious beliefs" because he possesses

a sincere conviction that the law would make him a "messenger of a state-sponsored program of religious proselytization." *Id.* ¶ 18. While "[a] requirement to post *any* version of the Ten Commandments on the walls of [his] classroom would violate [his] religious beliefs," H.B. 71 is an "especially pernicious" violation "because it forces [Mr. Dier] to proselytize a specific Protestant Christian translation of the Ten Commandments." *Id.* ¶ 19.

**2.** H.B. 71 also violates the Free Exercise Clause because it is not a neutral law of general applicability. A law violates the Free Exercise Clause "[i]f the purpose or effect of [the] law . . . is to discriminate invidiously between religions." *Braunfeld v. Brown*, 366 U.S. 599, 607 (1961). "At a minimum, the protections of the Free Exercise Clause pertain if the law at issue discriminates against some or all religious beliefs." *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah.*, 508 U.S. 520, 532 (1993). Thus, the "constitutional prohibition of denominational preferences is inextricably connected with the continuing vitality of the Free Exercise Clause." *Larson*, 456 U.S. at 245. "The government may not favor one religion over another" without infringing on the rights "of individuals under the Free Exercise Clause." *McCreary Cnty.*, 545 U.S. at 875-76. By mandating that Mr. Dier's classroom display a Protestant version of the Ten Commandments, H.B. 71 discriminates against other faiths.

## IV.    Mr. Dier Has Plausibly Alleged a Free Speech Clause Claim

H.B. 71 violates Mr. Dier's rights under the Free Speech Clause. H.B. 71 unconstitutionally compels speech. "[N]o official, high or petty, can prescribe what shall be orthodox in . . . religion, or other matters of opinion or force citizens to confess by word or act their faith therein." *W. Virginia State Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943). Thus "a state measure which forces an individual, as part of his daily life indeed constantly . . . to be an instrument for fostering public adherence to an ideological point of view he finds unacceptable . . . invades the sphere of intellect

and spirit which it is the purpose of the First Amendment to our Constitution to reserve from all official control." *Wooley v. Maynard*, 430 U.S. 705, 715 (1977). The First Amendment protects individuals from being required to endorse the Ten Commandments.

The analysis does not change simply because Mr. Dier works as a teacher at a public school. "To be sure, free-speech rules apply differently when the government is doing the speaking. And that remains true even when a government employee is doing the talking." *Meriwether v. Hartop*, 992 F.3d 492, 503-04 (6th Cir. 2021). "[I]n *Garcetti v. Ceballos*, the Supreme Court held that normally 'when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline.'" *Id.* (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006)). But *Garcetti* "expressly declined to address whether its analysis would apply 'to a case involving speech related to scholarship or teaching.'" *Id.* at 504 (quoting *Garcetti*, 547 U.S. at 425).

As the Sixth Circuit has explained, "the argument that teachers have no First Amendment rights when teaching, or that the government can censor teacher speech without restriction," is "totally unpersuasive." *Id.* at 505 (quoting *Hardy v. Jefferson Cmty. Coll.*, 260 F.3d 671, 680 (6th Cir. 2001)). Teachers, like professors, "retain First Amendment protections at least when engaged in core academic functions, such as teaching and scholarship." *Id.* The alternative would permit a school to "require a pacifist to declare that war is just, a civil rights icon to condemn the Freedom Riders, a believer to deny the existence of God, or a Soviet émigré to address his students as 'comrades.' That cannot be." *Id.* at 506. Thus, "the academic-freedom exception to *Garcetti* covers all classroom speech related to matters of public concern, whether that speech is germane to the contents of the lecture or not." *Id.* at 507; *see also Buchanan v. Alexander*, 919 F.3d 847, 852-53 (5th Cir. 2019) (similarly applying *Pickering v. Bd of Educ. of Twp. High Sch. Dist. 205, Will Cnty.*

*Ill.*, 391 U.S. 563 (1968) to academic speech).

The Sixth Circuit's analysis is persuasive and dictates the outcome of the compelled speech claim here. Requiring Mr. Dier to display the Ten Commandments in his classroom—like requiring a university professor to use certain pronouns, as in *Meriwether v. Hartop*, 992 F.3d 492 (6th Cir. 2021)—infringes on his core First Amendment right to speak in accordance with the dictates of his conscience on a matter of public concern. Where, as here, Mr. Dier's interest is rooted in conscience and involves a matter of utmost public concern, and Defendants assert an interest in vaguely promoting additional awareness of the role of the Ten Commandments in American history, there can be no doubt that *Pickering* balancing weighs in Mr. Dier's favor. *See Meriwether*, 992 F.3d at 509-10 (similar conclusion as to *Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968) balance).[5]

## CONCLUSION

The motion to dismiss should be denied.

---

[5] Defendants' separate argument (MTD at 23-24) that the Ten Commandments display constitutes "government speech" and is therefore not protected by the First Amendment contradicts the Supreme Court and Fifth Circuit cases protecting public school teachers' right of academic freedom. None of the cases Defendants cite apply the government speech doctrine to speech by a public school teacher in the classroom.

Dated: October 29, 2024

Respectfully submitted,

/s/ Alex Rothenberg

Andrew T. Tutt***
ARNOLD & PORTER
 KAYE SCHOLER LLP
601 Massachusetts Avenue, NW
Washington, DC 20001
(202) 942-5000
andrew.tutt@arnoldporter.com

William T. Sharon*
Sarah Elnahal**
Rachel Carpman***
Alexander J. Potcovaru***
ARNOLD & PORTER
 KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019-9710
(212) 836-8000
william.sharon@arnoldporter.com

Alex B. Rothenberg (La. Bar No. 34740), T.A.
GORDON, ARATA, MONTGOMERY,
 BARNETT, MCCOLLAM, DUPLANTIS
 & EAGAN, LLC
201 St. Charles Avenue, 40th Fl.
New Orleans, LA 70170
(504) 679-9826
arothenberg@gamb.com

Allyson C. Myers***
ARNOLD & PORTER
 KAYE SCHOLER LLP
777 South Figueroa Street | 44th Floor
Los Angeles, CA 90017-5844
(212) 836-8000
ally.myers@arnoldporter.com

*Counsel for Plaintiff Christopher Dier*

*** *Pro Hac Vice*

** *Application for Pro Hac Vice admission pending*

* *Application for Pro Hac Vice admission forthcoming*

26