IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CHRISTOPHER DIER,<br><br>*Plaintiff*,<br><br>v.<br><br>JEFFREY MARTIN LANDRY et al,<br><br>*Defendants*. | Civil Action No. 24-2306<br><br>Judge Greg Guidry<br><br>Mag. Judge Michael North |

**REPLY IN SUPPORT OF
PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
OR, IN THE ALTERNATIVE, SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1
I.      H.B. 71 Requires Teachers to Display and Teach the Ten Commandments ...................... 2
II.     The Court Has Jurisdiction .................................................................................................. 5
III.    Mr. Dier's Establishment Clause Claim Is Likely to Succeed............................................ 6
        A.    H.B. 71 is Unconstitutional Under *Stone v. Graham*.............................................. 6
        B.    Even Without *Stone*, H.B. 71 Contravenes the Establishment Clause................................................................................................................... 7
IV.    The Remaining Preliminary Injunction Factors Favor Mr. Dier ..................................... 10
CONCLUSION..................................................................................................................... 10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Bosse v. Oklahoma*,
  580 U.S. 1 (2016)......................................................................................................................6

*Bowen v. Kendrick*,
  487 U.S. 589 (1988)..................................................................................................................7

*Cnty. of Allegheny v. Am. C.L. Union Greater Pittsburgh Chapter*,
  492 U.S. 573 (1989)................................................................................................................10

*Croft v. Perry*,
  624 F.3d 157 (5th Cir. 2010) ....................................................................................................8

*Dep't of Com. v. New York*,
  588 U.S. 752 (2019)..................................................................................................................3

*Doe v. City of Albuquerque*,
  667 F.3d 1111 (10th Cir. 2012) ................................................................................................8

*Doe v. Duncanville Indep. Sch. Dist.*,
  994 F.2d 160 (5th Cir. 1993) ..................................................................................................10

*Edwards v. Aguillard*,
  482 U.S. 578 (1987).........................................................................................................3, 7, 8

*Engel v. Vitale*,
  370 U.S. 421 (1962)...............................................................................................................3, 8

*Epperson v. State of Ark.*,
  393 U.S. 97 (1968)................................................................................................................3, 9

*Ingebretsen v. Jackson Pub. Sch. Dist.*,
  88 F.3d 274 (5th Cir. 1996) ....................................................................................................10

*Jusino v. Fed'n of Cath. Tchrs., Inc.*,
  143 S. Ct. 1056 (2023)..............................................................................................................7

*Jusino v. Fed'n of Cath. Tchrs., Inc.*,
  54 F.4th 95 (2d Cir. 2022) ........................................................................................................7

*Kennedy v. Bremerton*,
  597 U.S. 507 (2022)..................................................................................................................8

*Lynch v. Donnelly*,
 465 U.S. 668 (1984) ............................................................................................................9

*McCreary Cnty., Ky. v. Am. C.L. Union of Ky.*,
 545 U.S. 844 (2005) ..........................................................................................................10

*Moody v. NetChoice, LLC*,
 144 S. Ct. 2383 (2024) ........................................................................................................8

*Ramos v. Louisiana*,
 590 U.S. 83 (2020) ..............................................................................................................7

*Roake v. Brumley*,
 2024 WL 4746342 (M.D. La. Nov. 12, 2024) ............................................................ passim

*Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*,
 490 U.S. 477 (1989) ............................................................................................................7

*Santa Fe Indep. Sch. Dist. v. Doe*,
 530 U.S. 290 (2000) .........................................................................................................7, 8

*Sch. Dist. of Abington Twp., Pa. v. Schempp*,
 374 U.S. 203 (1963) ............................................................................................................3

*Sonnier v. Crain*,
 613 F.3d 436 (5th Cir. 2010) ...............................................................................................7

*State Oil Co. v. Khan*,
 522 U.S. 3 (1997) ................................................................................................................7

*Stone v. Graham*,
 449 U.S. 39 (1980) ..................................................................................................... passim

*Tenet v. Doe*,
 544 U.S. 1 (2005) ................................................................................................................7

*Thurston Motor Lines, Inc. v. Jordan K. Rand, Ltd.*,
 460 U.S. 533 (1983) ............................................................................................................7

*Wilson v. State ex rel. Off. of Disability Affs.*,
 2015-1163 (La. App. 1 Cir. 2/26/16) ...................................................................................6

**Statutes**

La. Rev. Stat.
　§ 14:134 ......................................................................................................................6
　§ 17:1(B) .....................................................................................................................6
　§ 17:262(A)(2) ............................................................................................................4
　§ l7:2l 22(B).............................................................................................................2, 9

**Legislative Materials**

Hearing on H.B. 71 Before the H. Comm. on Educ., 2024 Reg. Sess. at 5:08 (La.
　Apr. 4, 2024), bit.ly/4cqHnxj..................................................................................3, 9

**INTRODUCTION**

H.B. 71 violates the Establishment Clause by requiring Plaintiff Christopher Dier to display the Ten Commandments in his classroom. A preliminary injunction against Defendants is the only way to prevent Mr. Dier from suffering irreparable harm. Indeed, the record fully supports a permanent injunction preventing Defendants from requiring Mr. Dier's school to implement H.B. 71. The Court should grant summary judgment to Mr. Dier on his Establishment Clause claim, enter a permanent injunction, and uphold the First Amendment's promise of religious tolerance.

While H.B. 71 is unconstitutional for the reasons stated in *Roake v. Brumley*, 2024 WL 4746342 (M.D. La. Nov. 12, 2024), Mr. Dier has an even stronger claim: As a Louisiana public school teacher, H.B. 71 unconstitutionally coerces his complicity in *implementing* a course of religious instruction. Unable to challenge that conclusion as a matter of constitutional law, the State quibbles with the premise, insisting that "H.B. 71 does not require Plaintiff to do anything." Dkt. 65 ("Opp.") at 20-21. But H.B. 71 involves teachers at every stage. First, Defendants themselves argue that H.B. 71 integrates the Ten Commandments into the curriculum, which necessarily involves teachers. Second, by requiring "each classroom" to permanently and prominently "display" the Ten Commandments on the wall, H.B. 71 imposes on teachers, who are responsible for dealing with the questions and disruptions that inevitably will arise. Finally, H.B. 71—like similar Louisiana laws—clearly envisions implementation by teachers. The obligations H.B. 71 imposes on Mr. Dier pertain to standing, the merits, and irreparable harm. Mr. Dier is not just an "offended observer," but a coerced participant in State-mandated religious instruction.

Even if Louisiana's mistaken premise were correct, however, that would not save H.B. 71. It would simply put teachers in the same position as their students: forced to encounter the Ten Commandments prominently displayed on the classroom wall every single day. Teachers suffer a

particularly grievous harm from being forced to implement H.B. 71, but at a minimum they are harmed at least as seriously as the students who are daily coerced to venerate a religious text.

I.  **H.B. 71 Requires Teachers to Display and Teach the Ten Commandments**

H.B. 71 requires teachers to display and teach the Ten Commandments in their classrooms for three reasons: (1) H.B. 71 attempts to incorporate the Ten Commandments into the curriculum; (2) H.B. 71 requires the Ten Commandments to be prominently and permanently displayed on the walls of each public school classroom where teachers provide instruction; and (3) the only reasonable reading of H.B. 71 is that schools will implement its requirement to display the Ten Commandments through teachers, who are the agents of the school in the classroom.

**A.** H.B. 71 necessarily involves teachers because it incorporates a specific translation of the full text of the Ten Commandments into the public school curriculum where it must be "easily readable" for teachers and their students. La. Rev. Stat. §§ 17:2122(B)(1), (2). In fact, the State attempts to distinguish *Stone v. Graham*, 449 U.S. 39 (1980), on the theory that H.B. 71 "integrate[s] the Ten Commandments into a course of study," furthering "an educational objective." Opp. at 20 (quotation marks omitted). According to the State, H.B. 71 "does nothing more than" add the Ten Commandments to the curriculum. *Id.*; *see also* ECF No. 41-1 at 24 (arguing H.B. 71 "establish[es] public school curricul[um]" (internal citation omitted)).

But the State cannot have it both ways: It cannot claim the displays serve educational purposes while simultaneously arguing teachers have no role in their implementation. If the displays truly incorporate the Ten Commandments into the curriculum, then teachers necessarily must engage with and implement them as part of their instructional duties. And contrary to Defendants' implausible position that H.B. 71 integrates the Ten Commandments into "an *appropriate* study of history, civilization, ethics, comparative religion, or the like," *Stone*, 449 U.S. at 42 (emphasis added), and thus "lacks a religious purpose," Opp. at 20, H.B. 71 requires the

2

displays to permanently and prominently hang in "each classroom," no matter the subject (math, art, chemistry, etc.). As H.B. 71's lead sponsor put it, the goal is for "children to learn what God says is right and what He says is wrong." Hearing on H.B. 71 Before the H. Comm. on Educ., 2024 Reg. Sess. at 5:08 (La. Apr. 4, 2024) ("Hearing"), bit.ly/4cqHnxj. H.B. 71 thus imposes a clear obligation on teachers, which violates the Establishment Clause. *See, e.g.*, *Edwards v. Aguillard*, 482 U.S. 578 (1987); *Epperson v. State of Ark.*, 393 U.S. 97, 107 (1968); *Sch. Dist. of Abington Twp., Pa. v. Schempp*, 374 U.S. 203 (1963); *Engel v. Vitale*, 370 U.S. 421 (1962).

**B.** In addition to H.B. 71's express goal of framing a religious text as a pedagogical tool, the law necessarily involves teachers because it requires the Ten Commandments to be prominently displayed on each classroom's wall, where the message will be imputed to teachers and—at the very least—require teachers to discuss the meaning of scripture. The inescapable reality of classroom dynamics means teachers must either actively incorporate or consciously avoid prominent religious displays that their students see and react to every day. Students will inevitably ask questions about the displays, requiring teachers to either address or deflect inquiries about religious doctrine. *See, e.g.*, *Dep't of Com. v. New York*, 588 U.S. 752, 768 (2019) (finding Article III standing based on "showing that third parties will likely react in predictable ways").

The unavoidable role of teachers in implementing H.B. 71 becomes especially clear when considering the specific religious text that must be prominently displayed. When students encounter explicit religious commandments about coveting thy neighbor's wife, taking the Lord's name in vain, or making graven images, they will naturally turn to their teachers with questions about these unfamiliar concepts and archaic language. A teacher must either engage with these inherently religious concepts—explaining what it means to "covet," what constitutes a "graven image," or why "tak[ing] the Name of the Lord thy God in vain" violates divine law—or

3

conspicuously deflect such questions. Teachers cannot—as the State suggests—simply ignore such questions, any more than they can ignore a prominent religious text displayed "in large, easily readable font" in their classrooms. MTD at 1. Either teachers must explain the religious doctrine prominently and newly on "display" in their classrooms, or visibly refuse. This practical reality belies the State's claim that "H.B. 71 requires *nothing* of Plaintiff," Opp. at 9 n.4; H.B. 71 inevitably forces teachers to navigate religious content with their students.

**C.** H.B. 71 also involves teachers because teachers are the obvious subjects of the law. Indeed, Defendants have already admitted that it is "schools *and teachers*" who must "actually place the posters." *Roake v. Brumley*, No. 24-CV-517, Dkt. 39-1 at 32 (M.D. La., Aug. 5, 2024) (emphasis added). The State's attempt to separate schools from their teachers disregards the basic reality of how educational institutions function. While H.B. 71 nominally assigns display responsibilities to "each public school governing authority," schools act through their employees—and teachers are the employees who actually manage and control classroom spaces. This mirrors how all classroom requirements operate; from safety notices to educational materials, teachers are invariably the ones who handle the practical aspects of classroom displays and content.

For example, Louisiana's recent "In God We Trust" law explicitly recognizes the reality that teachers play a role in implementing displays in their classrooms. While the mandate to display the motto—like the mandate in H.B. 71—nominally applies to school governing authorities, the law specifies that "the program of instruction on patriotic customs . . . shall include instruction on the national motto." La. Rev. Stat. § 17:262(A)(2). This legislative template—authored by Representative Horton in the 2023 session, just before she sponsored H.B. 71—demonstrates the State's understanding that classroom displays are part of the educational environment that teachers

4

manage. While formally assigning display duties to schools, H.B. 71 inevitably involves teachers—especially given the State's attempt to portray H.B. 71 as part of the curriculum.

Ultimately, the State asks the Court to create a loophole in the Establishment Clause. Under Defendants' theory, the government could compel employees to engage in religious instruction simply by directing requirements at "schools" rather than individual employees, knowing full well that teachers will ultimately provide the instruction. This formalistic distinction would allow the state to mandate clearly unconstitutional practices—like requiring "schools" to ensure students recite Bible passages or participate in prayer—while claiming teachers are not implicated. Yet the State attempts exactly that by claiming H.B. 71 binds only "school governing authorities," even while defending the law as a part of the curriculum. The Constitution cannot be so easily circumvented; when state action involving the public school institution inevitably requires teachers to integrate religious content into the classroom, it triggers Establishment Clause scrutiny regardless whether the government directs the statute at the institution itself.

**D.** Mr. Dier's compelled participation in H.B. 71's implementation compels a finding in his favor on standing, irreparable harm, and the merits. By coercing him to venerate, proselytize, and display a specific version of the Ten Commandments, H.B. 71 will cause him not only ordinary Establishment Clause injury, but conscience injury, reputational injury, and professional injury, which cannot be remedied except by the entry of an injunction. This is not a "passive monuments" case involving a single, longstanding display in a park; H.B. 71 coerces and compels Mr. Dier to teach religious doctrine, on a daily basis, to Louisiana's children.

## II. The Court Has Jurisdiction

**1.** Mr. Dier's claims are ripe. The State contends (Opp. at 4-7) that *Staley* forecloses Mr. Dier's challenge. But as the court in *Roake* persuasively explained, this case differs from *Staley*,

and all the necessary prerequisites to a ripe case are present here. *See Roake*, 2024 WL 4746342, at *12-19.

**2.** Contrary to the State's view (Opp. at 7-9 & n.4), Mr. Dier has standing because (1) H.B. 71 conscripts him into implementing H.B. 71 and conveying religious scripture to students, *see supra* I, and (2) places him on the same footing as his students, who face a classic Establishment Clause injury, *see Roake*, 2024 WL 4746342, at *20-26.

**3.** This is an appropriate *Ex parte Young* action, so Defendants lack sovereign immunity. As the court in *Roake* explained, the State Superintendent and the BESE are appropriate defendants. 2024 WL 4746342, at *26-33. And the Governor has authority to implement H.B. 71 because he has the power to appoint (and remove) three members of the BESE, which is charged with implementing the law. *See* La. Rev. Stat. 17:1(B) (granting appointment power to governor); *Wilson v. State ex rel. Off. of Disability Affs.*, 2015-1163 (La. App. 1 Cir. 2/26/16) (discussing Governor's removal power). Finally, for the reasons in Mr. Dier's opposition to the State's motion to dismiss (Dkt. No. 57 ("MTD Opp.") at 11), the Attorney General has the power and intent to enforce H.B. 71, including the power to threaten criminal prosecution. *See* La. Rev. Stat. § 14:134.

### III. Mr. Dier's Establishment Clause Claim Is Likely to Succeed

#### A. H.B. 71 is Unconstitutional Under *Stone v. Graham*

The Supreme Court held in *Stone v. Graham* that a statute "requir[ing] the posting of a copy of the Ten Commandments, purchased with private contributions, on the wall of each public classroom in the State," is unconstitutional. 449 U.S. at 39. That decision is controlling. Defendants are wrong that "*Stone* is not good law" and "is distinguishable." Opp. at 19.

**1.** *Stone* is a Supreme Court decision that has never been overruled. Indeed, Defendants elsewhere have "conceded that *Stone* remains binding." *Roake*, 2024 WL 4746342, at *47. After all, it is the "[Supreme] Court's prerogative alone to overrule one of its precedents," *Bosse v.*

*Oklahoma*, 580 U.S. 1, 3 (2016), and it has never reconsidered *Stone*. And Defendants concede Mr. Dier's point that lower courts continue to follow Supreme Court decisions that applied the *Lemon* test. MTD Opp. at 15-16; *see Jusino v. Fed'n of Cath. Tchrs., Inc.*, 54 F.4th 95, 102 (2d Cir. 2022) (holding that a Supreme Court decision "remains good law notwithstanding its reliance . . . on *Lemon*"), *cert. denied*, 143 S. Ct. 1056 (2023). Finally, in any event, *Stone* stems from the school prayer cases and thus rests on a foundation much deeper than *Lemon*. *See* MTD Opp. at 16.

**2.** Nor can Defendants distinguish *Stone*. As Mr. Dier has explained (MTD Opp. at 16-18), and as the court concluded in *Roake*, "*Stone* is directly on point and controlling." 2024 WL 4746342, at *46. H.B. 71 requires "each classroom," from geography to geometry, to permanently and prominently "display" the Ten Commandments on the wall. That is not "an appropriate study of history, civilization, ethics, comparative religion, or the like." *Stone*, 449 U.S. at 42.

### B. Even Without *Stone*, H.B. 71 Contravenes the Establishment Clause

**1.** Even without *Stone*, H.B. 71 is facially unconstitutional. To start, Mr. Dier need not "allege that there is no set of circumstances" where one of the State's "illustrations" might be constitutional. Opp. at 13 (cleaned up). The test for facial Establishment Clause challenges to laws like H.B. 71 is whether their "mere passage" and terms violate the governing Establishment Clause standard. *Santa Fe Indep. Sch. Dist. v. Doe*, 530 U.S. 290, 314 (2000).[1] In *Santa Fe*, for example, the Court invalidated a policy allowing an invocation at school football games, even though no

---

[1] *See also, e.g.*, *Aguillard*, 482 U.S. at 594; *Bowen v. Kendrick*, 487 U.S. 589, 593, 602 (1988); *id.* at 627 n.1 (Blackmun, J., dissenting) (agreeing with the majority that the Court has rejected the "rigid analysis" of the "no set of circumstances" test in Establishment Clause cases); *Sonnier v. Crain*, 613 F.3d 436, 466 (5th Cir. 2010) (Dennis, J., concurring) ("[T]he Supreme Court and this court have repeatedly disregarded the 'no set of circumstances' test in deciding facial challenges in Establishment Clause cases, because it is inconsistent with the substantive constitutional tests that apply in that area of constitutional law."). Indeed, the Supreme Court has *expressly* rejected the "no set of circumstances" test in First Amendment cases. *See, e.g.*, *Moody v. NetChoice, LLC*, 144 S. Ct. 2383, 2397 (2024).

particular invocation's content had been decided and "there [could] be no certainty that any of the statements or invocations [would] be religious." *Id.* at 313. Likewise, the Court in *Aguillard* held that Louisiana's Creationism Act itself violated the governing test, even though teaching about creationism "might be validly done" in specific instances. 482 U.S. at 594. And in *Stone*, the Court considered the *terms* of the Kentucky law, not whether individual schools and teachers could use *specific displays* "in an appropriate study." 449 U.S. at 42.[2]

    Similarly, H.B. 71 *itself* violates the Establishment Clause. By decreeing that a State-selected translation of the Ten Commandments must permanently and prominently hang on each classroom's wall, H.B. 71 *by its terms* places "the power, prestige and financial support of government . . . behind a particular religious belief," *Engel*, 370 U.S. at 431, and codifies a denominational preference. Mr. Dier's "facial challenge is just that—a challenge to the terms of the statute, not hypothetical applications." *Doe v. City of Albuquerque*, 667 F.3d 1111, 1127 (10th Cir. 2012). The State cannot defend H.B. 71 through "an endless game of whack-a-mole," requiring challengers "to bring new lawsuits to invalidate any conceivable poster that happens to have the Decalogue on it." *Roake*, 2024 WL 4746342 at *37.[3]

    **2.** As discussed, *see supra* I, H.B. 71 is unconstitutionally coercive because it adds religion to the public school curriculum and conscripts teachers as its vehicle. "The State's undoubted right to prescribe the curriculum for its public schools does not carry with it the right to" add religion to that curriculum in "violat[ion] [of] the First Amendment." *Epperson*, 393 U.S. at 107. "It is much

---

[2] In a two-sentence footnote, Defendants make the sweeping claim that the Supreme Court "has abandoned" every single decision that applied *Lemon*, including *Stone*, *Aguillard*, and *Santa Fe*. Opp. at 23 n.6. That blatant misreading of *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 534 (2022), is wrong for the reasons discussed and is irreconcilable with the State's own "conce[ssion] that *Stone* remains binding." *Roake*, 2024 WL 4746342, at *47.

[3] For the reasons explained in Mr. Dier's opposition to the State's motion to dismiss, Defendants' reliance on *Croft v. Perry*, 624 F.3d 157 (5th Cir. 2010), is misplaced. *See* MTD Opp. at 13 n.3.

too late to argue that the State may impose upon the teachers in its schools any conditions that it chooses, however restrictive they may be of constitutional guarantees." *Id.* The State has no plausible argument that requiring the Ten Commandments to permanently and prominently hang in "each classroom" furthers "an *appropriate* study of history, civilization, ethics, comparative religion, or the like." *Stone*, 449 U.S. at 42 (emphasis added). H.B. 71 mandates religious instruction—that schools teach, and "children learn[,] what God says is right and what He says is wrong." *Hearing* at 5:08.

**3.** As the court in *Roake* explained, H.B. 71 also unconstitutionally coerces students. 2024 WL 4746342, at *65-67. Defendants concede that a law requiring acts such as "Bible reading" is unconstitutional. Opp. at 21. H.B. 71 literally requires that "each classroom" "display" a specific passage from the Bible in "in a large, easily readable font." La. Rev. Stat. §§ 17:2l 22(B)(1), (2). H.B. 71 thus prescribes school "Bible reading," even if "the Bible verses involved in this case are merely posted on the wall, rather than read aloud as in *Schempp* and *Engel*." *Stone*, 449 U.S. at 42.

**4.** By requiring every classroom to display a particular translation of the Ten Commandments, H.B. 71 codifies a denominational preference. *See* Dkt. 47-1 at 11-15. Defendants rely (Opp. at 22-23) on a footnote in *Lynch v. Donnelly*—which permitted a creche as part of a seasonal display in a park, 465 U.S. 668, 687 n.13 (1984)—for the claim that religious displays categorically cannot reflect unconstitutional denominational preferences. But even if this case were about a longstanding seasonal display rather than a new law, the *Lynch* footnote announced no such rule. Rather, "whatever benefit" the display in *Lynch* conferred "to one faith or religion or to all religions" was too "indirect, remote and incidental" to raise such concerns. *Id.* at 683. The Court thus has distinguished the creche in *Lynch* from "the government's display of objects with religious significance," including "the display of a copy of the Ten Commandments

9

on the walls of public classrooms." *Cnty. of Allegheny v. Am. C.L. Union Greater Pittsburgh Chapter*, 492 U.S. 573, 594 (1989) (citing *Stone*). A Ten Commandments display *can* violate the Establishment Clause by "demonstrating a preference for one group of religious believers as against another" and "hav[ing] the effect of causing viewers to understand the government is taking sides." *McCreary Cnty., Ky. v. Am. C.L. Union of Ky.*, 545 U.S. 844, 866 n.14 (2005).

**5.** H.B. 71's religious purpose underscores its denominational preference and coercive effect, and belies the State's theory that it "constitutionally' integrate[s] the Ten Commandments into a course of study" because it "lacks a religious purpose." Opp. at 20 (quotation marks omitted).

## IV. The Remaining Preliminary Injunction Factors Favor Mr. Dier

Because Mr. Dier is likely to succeed on the merits, the remaining preliminary injunction factors weigh in his favor as well. *Doe v. Duncanville Indep. Sch. Dist.*, 994 F.2d 160, 166 (5th Cir. 1993). The violation of Mr. Dier's rights under the Establishment clause "constitute[s] irreparable injury." *Ingebretsen v. Jackson Pub. Sch. Dist.*, 88 F.3d 274, 280 (5th Cir. 1996). A preliminary injunction is in the public's interest because it will prevent other teachers, as well as Mr. Dier's students and their families, from likewise suffering Establishment Clause injury.

## CONCLUSION

The Court should issue the requested preliminary injunction, preventing the enforcement of H.B. 71 at Benjamin Franklin High School in New Orleans, where Mr. Dier is a teacher. Alternatively, it should grant summary judgment and permanently enjoin the enforcement of H.B. 71 in Mr. Dier's school.[4]

---

[4] Bizarrely, Defendants assert (Opp. at 1) that Mr. Dier "has abandoned his Free Speech and Free Exercise claims." Mr. Dier maintains those claims, addressed them in opposition to the State's motion to dismiss (MTD Opp. at 22-25), and will prove them at a later stage of the case.

Dated: November 18, 2024

Andrew T. Tutt***
ARNOLD & PORTER
 KAYE SCHOLER LLP
601 Massachusetts Avenue, NW
Washington, DC 20001
(202) 942-5000
andrew.tutt@arnoldporter.com

William T. Sharon***
Sarah Elnahal***
Rachel Carpman***
Alexander J. Potcovaru***
ARNOLD & PORTER
 KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019-9710
(212) 836-8000
william.sharon@arnoldporter.com

Respectfully submitted,

*/s/ Elizabeth A. McGovern*
Alex B. Rothenberg (La. Bar No. 34740), T.A.
Elizabeth A. McGovern (La. Bar No. 41342)
GORDON, ARATA, MONTGOMERY,
 BARNETT, MCCOLLAM, DUPLANTIS
 & EAGAN, LLC
201 St. Charles Avenue, 40th Fl.
New Orleans, LA 70170
(504) 679-9826
arothenberg@gamb.com
emcgovern@gamb.com

Allyson C. Myers***
Cameron Klein*
ARNOLD & PORTER
 KAYE SCHOLER LLP
777 South Figueroa Street | 44th Floor
Los Angeles, CA 90017-5844
(212) 836-8000
ally.myers@arnoldporter.com

*Counsel for Plaintiff Christopher Dier*

*\*\*\* Pro Hac Vice*

*\*\* Application for Pro Hac Vice admission pending*

*\* Application for Pro Hac Vice admission forthcoming*

11