# EXHIBIT C

No. 24-30706

# In the United States Court of Appeals for the Fifth Circuit

DARCY ROAKE, REVEREND, ON BEHALF THEMSELVES AND ON BEHALF OF
THEIR MINOR CHILDREN, REAL PARTY IN INTEREST A.V., REAL PARTY IN
INTEREST S.V.; ADRIAN VAN YOUNG, ON BEHALF OF THEMSELVES AND ON
BEHALF OF THEIR MINOR CHILDREN, REAL PARTY IN INTEREST A.V., REAL
PARTY IN INTEREST S.V.; MAMIE BROADHURST, REVEREND, ON BEHALF OF
THEMSELVES AND ON BEHALF OF THEIR MINOR CHILD, REAL PARTY IN
INTEREST N.W.; RICHARD WILLIAMS, REVEREND, ON BEHALF OF
THEMSELVES AND ON BEHALF OF THEIR MINOR CHILD, REAL PARTY IN
INTEREST N.W.; JEFF SIMS, REVEREND, ON BEHALF OF HIMSELF AND ON
BEHALF OF HIS MINOR CHILDREN, REAL PARTY IN INTEREST A.S., REAL PARTY
IN INTEREST C.S. 1, REAL PARTY IN INTEREST C.S. 2; JENNIFER HARDING, ON
BEHALF OF THEMSELVES AND ON BEHALF OF THEIR MINOR CHILD, REAL PARTY
IN INTEREST A.O.; BENJAMIN OWENS, ON BEHALF OF THEMSELVES AND ON
BEHALF OF THEIR MINOR CHILD, REAL PARTY IN INTEREST A.O.; DAVID
HAWLEY, ON BEHALF OF THEMSELVES AND ON BEHALF OF THEIR MINOR
CHILDREN REAL PARTY IN INTEREST A.H., REAL PARTY IN INTEREST L.H.;
ERIN HAWLEY, ON BEHALF OF THEMSELVES AND ON BEHALF OF THEIR MINOR
CHILDREN, REAL PARTY IN INTEREST A.H, REAL PARTY IN INTEREST L.H.;
DUSTIN MCCRORY, ON BEHALF OF THEMSELVES AND ON BEHALF OF HIS
MINOR CHILDREN, REAL PARTY IN INTEREST E.M.; REAL PARTY IN INTEREST
P.M., REAL PARTY IN INTEREST L.M.; GARY SERNOVITZ, ON BEHALF OF
THEMSELVES AND ON BEHALF OF THEIR MINOR CHILD, REAL PARTY IN
INTEREST T.S.; MOLLY PULDA, ON BEHALF OF THEMSELVES AND ON BEHALF
OF THEIR MINOR CHILD. REAL PARTY IN INTEREST T.S.; CHRISTY ALKIRE, ON
BEHALF OF HERSELF AND ON HEHALF OF HER MINOR CHILD, REAL PARTY IN
INTEREST L.A.; JOSHUA HERLANDS, ON BEHALF OF HIMSELF AND ON BEHALF
OF HIS MINOR CHILDREN, REAL PARTY IN INTEREST E.H., REAL PARTY IN
INTEREST J.H.,

*Plaintiffs-Appellees*

v.

CADE BRUMLEY, IN HIS OFFICIAL CAPACITY AS THE LOUISIANA STATE
SUPERINTENDENT OF EDUCATION; CONRAD APPEL, IN HIS OFFICIAL CAPACITY

AS A MEMBER OF THE LOUISIANA STATE BOARD OF ELEMENTARY AND SECONDARY EDUCATION (LSBESE); JUDY ARMSTRONG, IN HER OFFICIAL CAPACITY AS A MEMBER OF THE LSBESE; KEVIN BERKEN, IN HIS OFFICIAL CAPACITY AS A MEMBER OF THE LSBESE; PRESTON CASTILLE, IN HIS OFFICIAL CAPACITY AS A MEMBER OF LSBESE; SIMONE CHAMPAGNE, IN HER OFFICIAL CAPACITY AS A MEMBER OF THE LSBESE; SHARON LATTEN-CLARK, IN HER OFFICIAL CAPACITY AS A MEMBER OF THE LSBESE; LANCE HARRIS, IN HIS OFFICIAL CAPACITY AS A MEMBER OF LSBESE; PAUL HOLLIS, LOUISIANA STATE BOARD OF ELEMENTARY AND SECONDARY EDUCATION; SANDY HOLLOWAY, IN HER OFFICIAL CAPACITY AS A MEMBER OF THE LSBESE; STACEY MELERINE, IN HER OFFICIAL CAPACITY AS A MEMBER OF THE LSBESE; RONNIE MORRIS, IN HIS OFFICIAL CAPACITY AS A MEMBER OF THE LSBESE; EAST BATON ROUGE PARISH SCHOOL BOARD; LIVINGSTON PARISH SCHOOL BOARD; VERNON PARISH SCHOOL BOARD; ST. TAMMANY PARISH SCHOOL BOARD,

*Defendants-Appellants*

---

On Appeal from the United States District Court
for the Middle District of Louisiana
No. 3:24-cv-517, Hon. John W. deGravelles

---

## MOTION FOR STAY PENDING APPEAL

---

ERIC C. RASSBACH
JOSEPH C. DAVIS
BENJAMIN A. FLESHMAN
AMANDA L. SALZ
KELSEY BAER FLORES
THE BECKET FUND FOR
  RELIGIOUS LIBERTY
1919 Pennsylvania Ave. NW
  Suite 400
Washington, D.C. 20006

*Counsel for Appellants Brumley
and LSBESE Officials*

ELIZABETH B. MURRILL
Attorney General of Louisiana

J. BENJAMIN AGUIÑAGA
Solicitor General

ZACHARY FAIRCLOTH
Principal Deputy Solicitor General

OFFICE OF THE ATTORNEY GENERAL
1885 N. 3rd St.
Baton Rouge, LA 70802
(225) 506-3746
AguinagaB@ag.louisiana.gov

*Counsel for Appellants*

## CERTIFICATE OF INTERESTED PERSONS

A certificate of interested persons is not required here because, under the fourth sentence of Fifth Circuit Rule 28.2.1, Appellants—as "governmental" parties—need not furnish a certificate of interested persons.

*/s/ J. Benjamin Aguiñaga*
J. BENJAMIN AGUIÑAGA

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ iv

INTRODUCTION ...................................................................................... 2

JURISDICTIONAL STATEMENT ............................................................ 3

BACKGROUND ........................................................................................ 3

    A.  H.B. 71 ........................................................................................... 3

    B.  Plaintiffs' Lawsuit ......................................................................... 5

    B.  District Court's Order ................................................................... 5

STANDARD OF REVIEW ......................................................................... 11

ARGUMENT .............................................................................................. 12

  I.  THE STATE IS LIKELY TO SUCCEED ON APPEAL. ................................. 12

    A.  The District Court Lacks Subject Matter Jurisdiction. ............ 12

      1.  Plaintiffs' Claims Are Not Ripe. ............................................. 12

      2.  Plaintiffs Lack Article III Standing. ...................................... 14

      3.  Brumley and BESE Members Are
         Entitled to Sovereign Immunity. ........................................... 16

    B.  Plaintiffs Fail to State an Establishment Clause Claim. ......... 18

      1.  H.B. 71 Does Not Implicate the
         Historical Hallmarks of an Establishment. ........................... 19

      2.  The District Court's Alternative
         Establishment Clause Theories Are Meritless. ..................... 22

C.   Plaintiffs Fail to State a Free Exercise Clause Claim. .............29

D.   At Minimum, the Notice Provision Is Unlawful. .......................30

II. The Remaining Factors Favor a Stay............................................31

CONCLUSION ........................................................................................32

CERTIFICATE OF SERVICE...................................................................34

CERTIFICATE OF COMPLIANCE .........................................................35

# TABLE OF AUTHORITIES

**Cases**

*ACLU of Ky. v. Mercer County,*
   432 F.3d 624 (6th Cir. 2005) ............................................................... 26

*Am. Legion v. Am. Humanist Ass'n,*
   588 U.S. 29 (2019) ...................................................... 2, 3, 22, 28, 29

*Barber v. Bryant,*
   860 F.3d 345 (5th Cir. 2017) ........................................................ 16, 17

*Book People, Inc. v. Wong,*
   91 F.4th 318 (5th Cir. 2024) ......................................................... 18, 19

*Bowen v. Roy,*
   476 U.S. 693 (1986) ............................................................................ 30

*Braidwood Mgmt., Inc. v. EEOC,*
   70 F.4th 914 (5th Cir. 2023) ........................................................ 13, 15

*Briggs v. Mississippi,*
   331 F.3d 499 (5th Cir. 2003) ............................................................. 29

*Campaign for S. Equal. v. Bryant,*
   773 F.3d 55 (5th Cir. 2014) ............................................................... 12

*Choice Inc. of Tex. v. Greenstein*
   691 F.3d 710 (5th Cir. 2012) ............................................................. 15

*Church of Lukumi Babalu Aye, Inc. v. City of Hialeah,*
   508 U.S. 520 (1993) ............................................................................ 31

*City of Austin v. Paxton,*
   943 F.3d 993 (5th Cir. 2019) ........................................................ 17, 18

*Croft v. Perry,*
624 F.3d 157 (5th Cir. 2010) ............................................................ 5, 21

*Dialysis Newco, Inc. v. Cmty. Health Sys. Grp. Health Plan,*
938 F.3d 246 (5th Cir. 2019) ............................................................... 24

*Doe v. Beaumont Indep. Sch. Dist.,*
240 F.3d 462 (5th Cir. 2001) ............................................................... 30

*E.T. v. Paxton,*
19 F.4th 760 (5th Cir. 2021) ............................................................... 32

*Freedom From Religion Found., Inc. v. Mack,*
49 F.4th 941 (5th Cir. 2022) ................................................... 16, 27, 28

*Fulton v. City of Philadelphia,*
593 U.S. 522 (2021) ............................................................................. 30

*Groff v. DeJoy,*
600 U.S. 447 (2023) ............................................................................. 20

*Ingebretsen v. Jackson Public School District,*
88 F.3d 274 (5th Cir. 1996) ................................................................. 16

*K.P. v. LeBlanc,*
627 F.3d 115 (5th Cir. 2010) ............................................................... 17

*Kennedy v. Bremerton Sch. Dist.,*
597 U.S. 507 (2022) ............................................ 20, 23, 26, 27, 28, 29

*Lemon v. Kurtzman*
*403 U.S. 602 (1971)* .................................... *11*, 20, 23, 24, 26

*McCreary County v. ACLU,*
545 U.S. 844 (2005) ....................................................................... 24, 25

*Moody v. NetChoice, LLC,*
144 S. Ct. 2383 (2024) ......................................................................... 22

*Murray v. City of Austin*,
947 F.2d 147 (5th Cir. 1991) ................................................................. 31

*Murthy v. Missouri*,
603 U.S. 43 (2024) ..................................................................... 15, 17

*Nken v. Holder*,
556 U.S. 418 (2009) ........................................................................ 33

*Shurtleff v. City of Boston*,
596 U.S. 243 (2022) .................................................................... 20, 21

*Staley v. Harris County*,
461 F.3d 504 (5th Cir. 2006) ............................................................. 14

*Staley v. Harris County*,
485 F.3d 305 (5th Cir. 2007) ...................................................... 13, 14, 15

*Stone v. Graham*,
449 U.S. 39 (1980) ........................................... 11, 23, 24, 25, 26

*Tex. All. For Retired Ams. v. Scott*,
28 F.4th 669 (5th Cir. 2022) ............................................................ 18

*Town of Greece v. Galloway*,
572 U.S. 565 (2014) .................................................................... 27, 28

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ........................................................................ 17

*Van Orden v. Perry*,
545 U.S. 677 (2005) .................................................................... 4, 29

*Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*,
535 U.S. 635 (2002) ........................................................................ 17

*Vote.org v. Callanen,*
 39 F.4th 297 (5th Cir. 2022) .............................................................. 12

*Whole Woman's Health v. Jackson,*
 595 U.S. 30 (2021) ............................................................................... 19

## Statutes

28 U.S.C. §1292(a)(1) ............................................................................... 3

La. R.S. §17.22(3) .................................................................................... 19

La. R.S. §17:2122 ............................................................... 25, 27, 29, 32

La. R.S. §17:2124 .................................................................... 4, 5, 18, 19

## Other Authorities

*The New England Primer* ...................................................................... *27*

*McGuffey Readers* .................................................................................. *27*

## Rules

Fed. R. Civ. P. 12(b)(1) ........................................................................... 6

Fed. R. Civ. P. 12(b)(6) ........................................................................... 6

## MOTION

Under Federal Rules of Appellate Procedure 8 and 27, Defendants-Appellants, Louisiana officials and school boards (the State or Defendants), respectfully move the Court to stay the district court's preliminary-injunction order entered November 12, 2024, pending appeal. *See* Ex.A (Op.). The underlying statute at issue requires compliance by January 1, 2025. Accordingly, Defendants request that this Court's stay issue as soon as practicable given the statutory deadline.[1]

---

[1]   Counsel for Plaintiffs advised that Plaintiffs oppose the requested relief and will file a response.

## INTRODUCTION

This is not the blockbuster case Plaintiffs hoped it would be. H.B. 71 requires Louisiana schools to post in each classroom a display barely larger than letter-size paper that reflects the Ten Commandments and its historical context. This should not be controversial. After all, the Supreme Court itself has emphasized that the Ten Commandments "have historical significance as one of the foundations of our legal system." *Am. Legion v. Am. Humanist Ass'n*, 588 U.S. 29, 53 (2019). Nonetheless, five days after Governor Landry signed H.B. 71 into law, Plaintiffs rushed to federal court eager to proclaim in press releases and media interviews that they were first in line to attack the Ten Commandments.

The problem? Neither this Court nor the Supreme Court has ever adjudicated an Establishment Clause case based on religious displays that no one has seen. In fact, the *en banc* Court has squarely held that such claims are not ripe. More still, because Plaintiffs concededly assert facial challenges, their burden is to show that *every* possible H.B. 71 display is unconstitutional. But that is an impossible burden for them to carry, not least because they have never seen such a display and there

are quite literally an infinite number of potential H.B. 71 displays that are constitutionally compliant.

Undeterred, the district court issued a 177-page opinion enjoining Defendants from implementing H.B. 71. Respectfully, it is difficult to read that opinion as anything other than a rejection of this Court's and the Supreme Court's precedents no matter the likelihood of reversal on appeal. The State is exceedingly likely to succeed on appeal—and every day that Defendants are unable to comply with H.B. 71 ahead of its January 1, 2025, compliance deadline causes irreparable harm. The Court should stay the injunction pending appeal.

## JURISDICTIONAL STATEMENT

On November 12, the district court issued its preliminary injunction. Ex.A. The State appealed that ruling the same day. Dist.ECF.87. This Court has jurisdiction under 28 U.S.C. §1292(a)(1).

## BACKGROUND

### A. H.B. 71

Ten Commandments displays are part of "the rich American tradition of religious acknowledgements," *Van Orden v. Perry*, 545 U.S. 677, 689-92 (2005) (plurality). They therefore appear on "government

3

property" across the country—and indeed within and outside the Supreme Court's "own Courtroom." *Id.* at 688.

This summer, Louisiana enacted H.B. 71, which requires public schools to display the Ten Commandments in classrooms. La. R.S. §17:2124. H.B. 71 specifies that the Commandments' text must be "identical" to that upheld in *Van Orden*, in "large, easily readable font," on "a poster or framed document that is at least eleven inches by fourteen inches," and "the central focus" of the display. *Id.* §§17:2124(B)(1), (B)(6). Each display must include a three-paragraph "context statement" about the history of the Ten Commandments in American public education. *Id.* §17:2124(B)(3). "[E]ach governing authority" will determine "[t]he nature of the display," including additional and different contextual elements. *Id.* §§17:2124(B)(1), (B)(4). No school is required to pay for the displays but must either accept donations or donated displays. *Id.* §17:2124(B)(5).

By January 1, 2025, (a) schools must comply with H.B. 71, (b) the Louisiana State Board of Elementary and Secondary Education (BESE) must "adopt rules and regulations in accordance with the Administrative Procedure Act" for the law's implementation, and (c) the Department of Education must "identify appropriate [compliance] resources" that are

"free of charge" and list them on the department's website. *Id.* §§17:2124(B)(1), (B)(6)(a), (B)(6)(b).

## B. Plaintiffs' Lawsuit

Five days after Governor Landry signed H.B. 71 into law, Plaintiffs sued the Louisiana State Superintendent of Education, Cade Brumley, the BESE members in their official capacities, and five parish school boards (East Baton Rouge, Vernon, Livingston, St. Tammany, and Orleans). Dist.ECF.1. Plaintiffs claim H.B. 71 violates the First Amendment's Establishment Clause (Count I) and Free Exercise Clause (Count II). Their claims—as they concede, and the district court agreed— are facial challenges, which means that, "under binding Fifth Circuit precedent, they must show that H.B. 71 is 'unconstitutional in every application.'" Op.8 (quoting *Croft v. Perry*, 624 F.3d 157, 164 (5th Cir. 2010)). Plaintiffs then sought to enjoin Defendants (and apparently several others not before the court) from complying with H.B. 71. Dist.ECF.20.

Defendants moved for dismissal under Rules 12(b)(1) and 12(b)(6), pointing out that binding Fifth Circuit precedent not only bars this lawsuit on jurisdictional grounds, but it (and Supreme Court precedent)

also foreclose this lawsuit on the merits. To illustrate these points, Defendants emphasized that no one had seen (and still no one has seen) an H.B. 71 display—and there are quite literally innumerable ways to create an H.B. 71 display in a constitutionally compliant manner. Defendants thus offered several illustrations (reproduced by the district court, Op.63-77), including the following:



# THE HOUSE OF REPRESENTATIVES



## &
# THE LAWGIVERS



Twenty-three marble relief portraits hanging over the gallery doors of the House Chamber in the U.S. Capitol depict historical figures noted for their work in establishing the principles that underlie American law. Those lawgivers include notable figures like Hammurabi, Solon, and Thomas Jefferson. When the Speaker of the House assumes his position on the dais, he looks directly at yet another lawgiver, Moses. In fact, the Architect of the Capitol emphasizes that the 22 other lawgivers lining the Chamber walls are oriented "so that all look towards the full-face relief of Moses in the center of the north wall."

## MOSES
## THE LAWGIVER



### THE TEN COMMANDMENTS

I AM THE LORD THY GOD.
THOU SHALT HAVE NO OTHER GODS BEFORE ME.
THOU SHALT NOT MAKE TO THYSELF ANY GRAVEN IMAGES.
THOU SHALT NOT TAKE THE NAME OF THE LORD THY GOD IN VAIN.
REMEMBER THE SABBATH DAY, TO KEEP IT HOLY.
HONOR THY FATHER AND THY MOTHER, THAT THY DAYS MAY BE LONG UPON THE LAND WHICH THE LORD THY GOD GIVETH THEE.
THOU SHALT NOT KILL.
THOU SHALT NOT COMMIT ADULTERY.
THOU SHALT NOT STEAL.
THOU SHALT NOT BEAR FALSE WITNESS AGAINST THY NEIGHBOR.
THOU SHALT NOT COVET THY NEIGHBOR'S HOUSE.
THOU SHALT NOT COVET THY NEIGHBOR'S WIFE, NOR HIS MANSERVANT, NOR HIS MAIDSERVANT, NOR HIS CATTLE, NOR ANYTHING THAT IS THY NEIGHBOR'S.

## SPEAKER
## MIKE JOHNSON



The History of the Ten Commandments in American Public Education: The Ten Commandments were a prominent part of American public education for almost three centuries. Around the year 1690, The New England Primer became the first published American textbook and was the equivalent of a first grade reader. The New England Primer was used in public schools throughout the United States for more than one hundred fifty years to teach Americans to read and contained more than forty questions about the Ten Commandments. The Ten Commandments were also included in public school textbooks published by educator William McGuffey, a noted university president and professor. A version of his famous McGuffey Readers was written in the early 1800s and became one of the most popular textbooks in the history of American education, selling more than one hundred million copies. Copies of the McGuffey Readers are still available today. The Ten Commandments also appeared in textbooks published by Noah Webster to which were widely used in American public schools along with America's first comprehensive dictionary that Webster also published. His textbook, The American Spelling Book, contained the Ten Commandments and sold more than one hundred million copies for use by public school children all across the nation and was still available for use in American public schools in the year 1975.

7

Case 3:24-cv-00517-JWD-SDJ Document 39-2 06/05/24 Page 19 of 20

# IMPORTANT SUPREME COURT CASES
## *VAN ORDEN V. PERRY*

THIS CASE ASKED WHETHER THE ESTABLISHMENT CLAUSE OF THE FIRST AMENDMENT ALLOWS THE DISPLAY OF A MONUMENT INSCRIBED WITH THE TEN COMMANDMENTS ON THE TEXAS STATE CAPITOL GROUNDS.

THE SUPREME COURT FOUND NO ESTABLISHMENT CLAUSE VIOLATION, WITH THE PLURALITY OPINION EMPHASIZING THAT "ACKNOWLEDGEMENTS OF THE ROLE PLAYED BY THE TEN COMMANDMENTS IN OUR NATION'S HISTORY ARE COMMON THROUGHOUT AMERICA." THE COURT NOTED THAT MOSES AND THE COMMANDMENTS APPEAR IN THE SUPREME COURT COURTROOM ITSELF, THE GATES LINING THE COURTROOM, AND THE DOORS LEADING INTO THE COURTROOM.

THE MAIN DISSENT JOINED BY JUSTICE GINSBURG AND TWO OTHER JUSTICES DISAGREED WITH THE COURT'S JUDGEMENT, BUT ACKNOWLEDGED THAT "A DISPLAY OF THE COMMANDMENTS ACCOMPANIED BY AN EXPOSITION OF HOW THEY HAVE INFLUENCED MODERN LAW WOULD MOST LIKELY BE CONSTITUTIONALLY UNOBJECTIONABLE." THE DISSENT ALSO RECOGNIZED THAT THE COMMANDMENTS COULD "BE INTEGRATED CONSTITUTIONALLY INTO A COURSE OF STUDY IN PUBLIC SCHOOLS."

NOTE. THIS IS THE VERSION OF THE TEN COMMANDMENTS UPHELD IN VAN ORDEN, BUT DIFFERENT FAITH TRADITIONS ADOPT DIFFERENT VERSIONS OF THE TEXT OF THE TEN COMMANDMENTS. FOR EXAMPLE, THE CATHOLIC VERSION GENERALLY DOES NOT REFERENCE "GRAVEN IMAGES," AND THE TORAH USES THE PHRASE "I AM THE LORD YOUR GOD WHO BROUGHT YOU OUT OF THE LAND OF EGYPT, OUT OF THE HOUSE OF BONDAGE."



The History of the Ten Commandments in American Public Education: The Ten Commandments were a prominent part of American public education for almost three centuries. Around the year 1688, The New England Primer became the first published American textbook and was the equivalent of a first grade reader. The New England Primer was used in public schools throughout the United States for more than one hundred fifty years to teach Americans to read and contained more than forty questions about the Ten Commandments. The Ten Commandments were also included in public school textbooks published by educator William McGuffey, a noted university president and professor. A version of his famous McGuffey Readers was written in the early 1800s and became one of the most popular textbooks in the history of American education, selling more than one hundred million copies. Copies of the McGuffey Readers are still available today. The Ten Commandments also appeared in textbooks published by Noah Webster in which were widely used in American public schools along with America's first comprehensive dictionary that Webster also published. His textbook, The American Spelling Book, contained the Ten Commandments and sold more than one hundred million copies for use by public school children all across the nation and was still available for use in American public schools in the year 1975.



To be clear, Defendants themselves do not know how they will carry out their obligations under H.B. 71—nor is there any record evidence how the Defendant school boards here or any other Louisiana school board will go about selecting and posting their own H.B. 71 displays. As these illustrations show, however, the possibilities are endless.

### C. District Court's Order

Notwithstanding all this, on November 12, the district court entered a 177-page opinion holding that H.B. 71 is "FACIALLY

UNCONSTITUTIONAL and UNCONSTITUTIONAL IN ALL APPLICATIONS." Op.176-77. Despite its length, the order offers little by way of analysis, largely consisting of block quotes and summaries of the parties' briefing. Nonetheless, the district court eschewed this Court's precedent, which forecloses jurisdiction in this case on ripeness, standing, and sovereign-immunity grounds. Turning to the merits, the court also found that H.B. 71 violates the Establishment Clause and the Free Exercise Clause. Relying on *Stone v. Graham*, 449 U.S. 39 (1980)— and in fact, applying the now-defunct *Lemon* test—the court concluded "any purported purpose [of H.B. 71] was not sincere but rather a sham," chalking up the real purpose to "fundraising efforts of the Governor." Op.6, 95-97. The court also determined that H.B. 71 would still be unlawful "even if the Court did examine" Plaintiffs' claims "under subsequent caselaw." Op.112, 151-52.

Accordingly, the lower court enjoined Defendants from implementing H.B. 71 and ordered Defendants Brumley and members of BESE to "provid[e] notice of this order and H.B. 71's unconstitutionality to all Louisiana public elementary, secondary, and charter schools, and all public post-secondary education institutions." Op.177 (the Notice

10

Provision). The district court also denied Defendants' motion to stay the injunction. *Id.* at 175.

Defendants immediately appealed and sought an administrative stay of the Notice Provision pending the Court's disposition of this motion. Dkt.12. This Court granted the administrative stay on November 15. Dkt.32.

## STANDARD OF REVIEW

The Court considers four factors when considering whether a stay pending appeal is appropriate: "(1) whether the applicant has made a strong showing of likelihood to succeed on the merits; (2) whether the movant will be irreparably harmed absent a stay; (3) whether issuance of a stay will substantially injure other interested parties; and (4) where the public interest lies." *Vote.org v. Callanen*, 39 F.4th 297, 302-03 (5th Cir. 2022). "[W]hen a serious legal question is involved," movants "need only present a substantial case on the merits … and show that the balance of equities weighs in favor of granting a stay." *Campaign for S. Equal. v. Bryant*, 773 F.3d 55, 57 (5th Cir. 2014).

## ARGUMENT

# I. The State Is Likely to Succeed on Appeal.

## A. The District Court Lacks Subject Matter Jurisdiction.

### 1. Plaintiffs' Claims Are Not Ripe.

The district court's rejection of this Court's ripeness precedent in religious-display cases ends this case. In the ordinary case, a claim is not ripe if (a) it is not "fit for judicial decision" and (b) there would be no "hardship to the parties" if the court withheld its consideration. *Braidwood Mgmt., Inc. v. EEOC*, 70 F.4th 914, 930 (5th Cir. 2023).

The *en banc* decision in *Staley v. Harris County*, 485 F.3d 305 (5th Cir. 2007), is squarely on point. There, because "no decision ha[d] been made regarding any aspect of the future display" of a monument featuring an open Bible, the Court was "unable to conduct the fact-intensive and context-specific analysis required" by the "Supreme Court decisions addressing the constitutionality of Ten Commandments displays." *Id.* at 308-09. The "claim that the Establishment Clause *may* be violated" in the future was "not ripe for review." *Id.* at 309 (emphasis added).

Plaintiffs here likewise challenge only unspecified future H.B. 71 displays that they presume *may* violate their rights. But nobody knows how Plaintiffs' schools (or any school) will select H.B. 71 displays, what size they will be, where they will be located within the classroom, or what additional context may be included. So *Staley* says this case is unripe.

The district court nonetheless tried to side-step *Staley* by reasoning that, while in *Staley* there was no decision regarding "any aspect" of the future display, here, due to statutory language, it is "known when, where, and under what circumstances the Ten Commandments will be displayed in public schools." Op.32. But in *Staley*, the Court had far *more* information about the future display because the plaintiff had *actually seen the display*, *see* 485 F.3d at 309, and the Court—in a panel opinion authored by the same judge—had previously concluded the monument was unconstitutional. The Court knew (a) the monument's dimensions; (b) its engraving; (c) its shape (like a lectern); (d) its central feature (an open Bible in a display case); (e) the Bible's dimensions; (f) a red neon light surrounding the Bible; (g) the yearly cost the government paid to illuminate the monument; and (h) the practice of turning pages of the Bible. *See Staley v. Harris County*, 461 F.3d 504, 506-07 (5th Cir. 2006)

(Jolly, J.). But without the actual display on, well, display, the plaintiff's claims were not ripe. *Staley*, 485 F.3d at 309 (Jolly, J.). Here, because there are no H.B. 71 displays yet, there are by definition fewer details available than there were about the *Staley* monument.

Plaintiffs also cannot establish "hardship" resulting from "withholding court consideration." *Braidwood*, 70 F.4th at 930. Such hardship "inhere[s] in legal harms, such as the harmful creation of legal rights or obligations; practical harms on the interests advanced by the party seeking relief, and the harm of being forced to modify one's behavior in order to avoid future consequences." *Choice Inc.*, 691 F.3d at 715. Here, H.B. 71 creates no legal rights or obligations for Plaintiffs; Plaintiffs are not currently subject to any H.B. 71 display; and there is no practical impediment to Plaintiffs filing suit if they actually encounter a display. Their claims are not ripe—and that ends this case.

### 2. Plaintiffs Lack Article III Standing.

For similar reasons, Plaintiffs also cannot establish standing. Most significantly, Plaintiffs have not established a "concrete, particularized, and actual or imminent" injury-in-fact. *Murthy v. Missouri*, 603 U.S. 43, 57 (2024). "In cases involving religious displays and exercises," this Court

has "required an encounter with the offending item or action to confer standing." *Barber v. Bryant*, 860 F.3d 345, 353 (5th Cir. 2017). Even then, a simple encounter "represent[s] the outer limits of what is constitutionally cognizable." *Freedom From Religion Found., Inc. v. Mack*, 49 F.4th 941, 949 (5th Cir. 2022). Never having seen an H.B. 71 display, therefore, Plaintiffs cannot establish standing under *Barber*.

Nevertheless, relying on *Ingebretsen v. Jackson Public School District*, 88 F.3d 274 (5th Cir. 1996), the district court held that Plaintiffs had standing because H.B. 71 made an encounter with an allegedly unconstitutional display "inevitable." Op.35. But if *past* offense from encountering an actual display represents Article III's "outer limits," surely *future* offense at a not-yet-existent display lies well beyond them.

Regardless, it is not "inevitable" that every H.B. 71 display will cause the Establishment Clause harms Plaintiffs allege. Indeed, as Defendants illustrated, many possible variations of an H.B. 71 display would not even conceivably encourage Plaintiffs to "venerate" or "adopt" the Commandments. *Cf.* Op.37 (citing Plaintiffs' claims). Plaintiffs have no way of knowing which among these myriad options hypothetical private donors might present to their schools. This is exactly why "[t]he

15

religious-display cases do not provide a basis for standing to challenge the endorsement of beliefs that exist only in the text of a statute." *Barber*, 860 F.3d at 354.

Having suffered no injury, and facing no imminent and concrete future injury, Plaintiffs also cannot show causation, *Murthy*, 603 U.S. at 76, or redressability, *TransUnion LLC v. Ramirez*, 594 U.S. 413, 427 (2021).

### 3. Brumley and BESE Members Are Entitled to Sovereign Immunity.

Last, the claims against Brumley and BESE members "are effectively suits against a state" barred by the Eleventh Amendment. *City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019). The district court incorrectly applied *Ex parte Young*'s equitable exception to allow the claims anyway. Op.54.

*Ex parte Young*'s "straightforward inquiry" asks "whether [the] complaint alleges an ongoing violation of federal law." *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002); *accord K.P. v. LeBlanc*, 627 F.3d 115, 124 (5th Cir. 2010) (*Ex parte Young* applies only "where a state actor enforces an unconstitutional law"). There is no ongoing violation here because Defendants have not carried out their

obligations under H.B. 71. Moreover, the district court was wrong to rely (Op.54) on cases where threatened enforcement of a challenged law *against a plaintiff* suffices to meet the ongoing-harm requirement. H.B. 71 does not apply to Plaintiffs and, by definition, can never be enforced against them.

Defendants also lack the requisite enforcement authority. This Court has repeatedly held that the "general duty to see that the laws of the state are implemented" is insufficient to invoke the *Ex parte Young* exception. *Tex. All. For Retired Ams. v. Scott*, 28 F.4th 669, 671 (5th Cir. 2022). Instead, the official must exercise some form of "compulsion or constraint." *Id.*; *see City of Austin*, 943 F.3d at 1001-02 (collecting examples).

These Defendants have no such authority under H.B. 71. For BESE members, the district court relied on their obligation to "adopt rules and regulations … to ensure the proper implementation of" H.B. 71, La. R.S. §17:2124(6)(a). Op.54. That, of course, is not "compulsion and constraint." *Scott*, 28 F.4th at 671. To conclude otherwise, the district court relied on *Book People, Inc. v. Wong*, 91 F.4th 318 (5th Cir. 2024). But there, officials had authority to "compel [plaintiffs] to submit ratings with which they

17

disagree[d]," and "constrain [plaintiffs] from continuing to do business with school districts." *Id.* at 335. No one knows whether any BESE regulation would be comparable, which is independently fatal. *See Whole Woman's Health v. Jackson*, 595 U.S. 30, 44 (2021) (that an agency "might in the future promulgate" a rule is insufficient for *Ex parte Young* purposes).

For Brumley, the district court focused on a general duty to "implement the policies and programs of the board and laws affecting schools under the jurisdiction of the board," La. R.S. §17.22(3); *see* Op.55. But Brumley's only obligation to "implement" H.B. 71 is limited to "identify[ing] appropriate resources to comply" with H.B. 71 and "list[ing]" those resources online. La. R.S. §17:2124(6)(b). That is not compulsion or constraint.

**B. Plaintiffs Fail to State an Establishment Clause Claim.**

If the Court reaches the merits, the district court's Establishment Clause holding is profoundly wrong, not least because the court applied the wrong test.

### 1. H.B. 71 Does Not Implicate the Historical Hallmarks of an Establishment.

For decades, the *Lemon* test haunted Establishment Clause jurisprudence, encouraging courts and plaintiffs to "purge from the public square anything" that "partakes of the religious." *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 535 (2022). In *Kennedy*, the Court "abrogated" the *Lemon* test. *Groff v. DeJoy*, 600 U.S. 447, 460 & n.7 (2023). In its place, *Kennedy* emphasized "that the Establishment Clause must be interpreted by reference to historical practices and understandings." 597 U.S. at 510.

But the Court did not stop there. Rather, *Kennedy* also described what the key practices and understandings *are*—namely, "the hallmarks of religious establishments the framers sought to prohibit when they adopted the First Amendment." *Id.* at 537. The point of identifying these hallmarks, *Kennedy*'s author had previously explained, was to give guidance "localities and lower courts can rely on," ameliorating the "serious" and "challeng[ing]" work of reconstructing the history from scratch in every case. *Shurtleff v. City of Boston*, 596 U.S. 243, 285 (2022) (Gorsuch, J., concurring), *cited in Kennedy*, 597 U.S. at 537 n.5.

There are six hallmarks:

a. "the government exerted control over the doctrine and personnel of the established church";

b. "the government mandated attendance in the established church and punished people for failing to participate";

c. "the government punished dissenting churches and individuals for their religious exercise";

d. "the government restricted political participation by dissenters";

e. "the government provided financial support for the established church, often in a way that preferred the established denomination over other churches"; and

f. "the government used the established church to carry out certain civil functions, often by giving the established church a monopoly over a specific function."

*Id.* at 286 (Gorsuch, J., concurring).

Because this is a "facial challenge," Plaintiffs' burden was to "show that there is no set of circumstances under which [H.B. 71] is constitutional"—*i.e.*, that it is "unconstitutional in every application." *Croft*, 624 F.3d at 164. But neither Plaintiffs nor the district court seriously contend that *any* potential H.B. 71 display implicates these hallmarks, much less that *every conceivable* one does.

Nor could they, as "[n]o one at the time of the founding is recorded as arguing that the use of religious symbols in public contexts was a form of religious establishment." *Shurtleff*, 596 U.S. at 287 (Gorsuch, J.,

concurring) (citation omitted). Indeed, one of Defendants' illustrations merely tracks the Supreme Court's own Ten Commandments display, whose legality "no Member of the Court" has ever questioned. *Am. Legion*, 588 U.S. at 53. That should have been enough to resolve this case—and it is all this Court needs to know to conclude that Louisiana is eminently likely to prevail in this appeal.

Invoking Homer, the district court complained that, by making this argument, the State was "leaving potential challengers like Menelaus trying to seize and hold the ever shape-shifting Proteus until Proteus eventually tires and divulges the hero's way of the island." Op.81. "[P]hrased another way," the district court said, the State "would have aggrieved parents and children play an endless game of whack-a-mole, constantly having to bring new lawsuits to invalidate any conceivable poster that happens to have the Decalogue on it." *Id.*

This complaint lays bare the district court's fundamental misapprehension of facial challenges: They are "hard to win" by design, *Moody v. NetChoice, LLC*, 144 S. Ct. 2383, 2409 (2024), because (as the district court purported to accept, Op.8) Plaintiffs must prove that every possible H.B. 71 display is unconstitutional. That they obviously cannot

do so is not the State's fault—to borrow the district court's vernacular, by bringing a facial challenge, Plaintiffs *themselves* elected to become Menelaus and play a game of whack-a-mole. The obvious solution to the district court's concern is an as-applied challenge to a discrete display if and when Plaintiffs see one. It is *not* to underrule settled facial-claim jurisprudence, as the district court did.

### 2. The District Court's Alternative Establishment Clause Theories Are Meritless.

The district court sought to end-run *Kennedy*'s hallmarks test in two ways, both meritless.

**a.** *First*, the district court held that H.B. 71 "runs afoul of" the Supreme Court's *per curiam* decision in *Stone*, which struck down a Kentucky law requiring Ten Commandments displays in public-school classrooms. Op.6, 89-92. But *Stone* is *Lemon* to its core—*Stone* concluded that Kentucky "had no secular legislative purpose" as required by "the first part of the *Lemon v. Kurtzman* test." 449 U.S. at 41, 43. In *Kennedy*, meanwhile, the Court expressly disapproved of *Lemon*'s "call[] for an examination of a law's purposes." 597 U.S. at 534. And it said the Court has "abandoned" not only *Lemon* itself but also its "progeny" and "offshoot[s]"—a category undoubtedly including *Stone*. *Id.*

In any event, *Stone* at minimum was "built upon" a test the Supreme Court has "walked back from." *Dialysis Newco, Inc. v. Cmty. Health Sys. Grp. Health Plan*, 938 F.3d 246, 259 (5th Cir. 2019). So even if this Court had to follow *Stone* in a case just like it, this Court certainly cannot "extend [that decision's] reasoning" to other facts. *Id.* at 257-59 & n.11. And *Stone* is distinguishable here, for two reasons.

One, in *Stone*, the displays "stood alone" as an "isolated exhibition" "not part of an arguably secular display." *McCreary County v. ACLU*, 545 U.S. 844, 867-68 (2005):



Dist.ECF.57-3 (full-page rendering). Even in the *Lemon* era, the Supreme Court understood this as critical to *Stone*'s scope—discussing *Stone* with

respect to a later *standalone* Commandments display, *McCreary*, 545 U.S. at 867-68, but resolving on different grounds a dispute over another display presenting the Commandments "in the company of other documents," *id.* at 871. Here, meanwhile, no one knows what H.B. 71 displays will look like in practice. But consistent with H.B. 71's text, the illustratives above depict the Ten Commandments surrounded by a variety of other content that indicates a wide array of pedagogical purposes—which is worlds away from the displays in *Stone. Supra* p.6–9.

Two, *Stone* rejected Kentucky's proffered secular purpose as a sham—explaining that it was based solely on a one-sentence "notation" untethered to the educational context (and indeed, which did not even claim that the secular purpose was the legislature's). 449 U.S. at 41-42. Here, meanwhile, H.B. 71 requires that each display include a three-paragraph "context statement" explaining "The History of the Ten Commandments in American Public Education." La. R.S. §17:2122(B)(3). And it explicitly articulates the Legislature's secular historical and educational purposes for displaying the Ten Commandments. *Id.* §17:2122(A)(1)-(9).

These distinctions mattered even *before Lemon*'s overruling. *See ACLU of Ky. v. Mercer County*, 432 F.3d 624, 634 (6th Cir. 2005) ("Whatever is left of *Stone* is limited to circumstances involving public displays of the Ten Commandments in isolation."). But the district court rejected them, instead second-guessing the Legislature's "purported secular purpose" based on extra-textual statements by "H.B. 71's primary sponsor" and a "fundraising email" from "Governor Landry," via judicial notice of as reported in "the local paper." Op.95-96. Not even *Stone* adverted to such dubious sources in its search for Kentucky's true "purpose." So the district court's reasoning is not merely a rote application of *Stone*—it is an aggressive resurrection of *Lemon*, which thumbs a nose at *Kennedy*.

**b.** *Second*, the district court wrongly claimed that H.B. 71 "would be unconstitutional under *Kennedy*." Op.10. This is so, according to the district court, because H.B. 71 does not "fit[] within a broader tradition" of "permanently displaying the Decalogue in public-school classrooms at the time of the Founding or of incorporation." Op.153.

This misunderstands *Kennedy*'s analysis. Of course a practice is constitutional if it is supported by a sufficiently lengthy tradition. *E.g.*,

*Town of Greece v. Galloway*, 572 U.S. 565, 575-76 (2014). But to hold that it *must* be so supported "confuses a sufficient condition for a necessary one." *Mack*, 49 F.4th at 950. Under *Kennedy*, the threshold question is whether the challenged practice implicates the historical "hallmarks of religious establishments." 597 U.S. at 537 & n.5. If not, it does not violate the Establishment Clause—regardless of whether a specific tradition affirmatively *supports* it. *See Kennedy*, 597 U.S. at 534-42 (upholding challenged practice without inquiry into whether it was a longstanding tradition dating back to the Founding).

In addition, even on the district court's (erroneous) view of the *Kennedy* test, H.B. 71 would be constitutional. As H.B. 71 explains, the "Ten Commandments were a prominent part of American public education for almost three centuries," featuring in the most widespread textbooks used in early American education. La. R.S. §17:2122(B)(3). (citing *The New England Primer* and the *McGuffey Readers*). Record excerpts from those textbooks amply bear that out. *See* Dist.ECF 57-10–57-18. Resisting this conclusion, the district court relied on Plaintiffs' "expert" to reason that, tallying up the Ten Commandments lessons against the total number of lessons in these books, "references to the

Decalogue" were too "scattered and infrequent" to count. Op.160. But this reduction of the First Amendment to a law-professor-driven counting exercise bears no resemblance to the analyses employed in *Kennedy*, *Town of Greece*, or *Mack*.[2]

Alternatively, the district court held that "[e]ven if there were a broader tradition," H.B. 71 would not be "consistent with" it because the statute is "discriminatory and coercive." Op.131-134, 161. The court said H.B. 71 was "discriminatory" because it "requires a version of the Ten Commandments that many Protestants use" and therefore "fails to select … versions of the Ten Commandments … 'without regard for belief.'" Op.131 (quoting *Mack*, 49 F.4th at 958).

But the quoted language—ripped from a case about a government official's selection of *outside* prayer-givers to deliver their own prayers— makes no sense in a case about the government's *own speech*. If governmental religious acknowledgments must be limited to imagery all faiths share, then there can be no such acknowledgments at all. *But see*

---

[2] Plaintiffs' expert is Professor Steven Green, former legal director of Plaintiffs' counsel, Americans United for Separation of Church and State. His report opined that "the Ten Commandments are not a foundation of the American government or legal system," Dist.ECF.50-2 at 11, despite the Supreme Court's recognition in *American Legion* that they *are*.

*Am. Legion*, 588 U.S. at 38 (upholding Latin cross, "preeminent Christian symbol"). More importantly, the district court's theory defies precedent: In *Van Orden*, both this Court and the Supreme Court upheld a Ten Commandments display featuring a "version" of the Commandments that is identical to that used here. La. R.S. §17:2122(A)(6); *see* 545 U.S. at 707 (Stevens, J., dissenting). So whatever limits there are on "discriminatory" display designs, H.B. 71 does not transgress them.

As for "coercive," the district court adopted Plaintiffs' allegations that "posting the Ten Commandments" would "unconstitutionally pressure[] students" into "veneration." Op.10-11, 132-134. But it failed to cite a single case holding that purely passive religious imagery was unconstitutionally coercive. This is understandable because—consistent with the hallmarks—precedent prohibits only coercion "to engage in 'a formal religious exercise,'" like prayer or devotional Bible reading. *Kennedy*, 597 U.S. at 536-37. But "the mere display on public property of [a religious symbol] is in no meaningful sense either a religious activity or coercive." *Briggs v. Mississippi*, 331 F.3d 499, 505 (5th Cir. 2003). As this *en banc* Court has put it: "If no religious *activity* is at issue, any speculation as to whether students might feel pressured to participate is

28

irrelevant." *Doe v. Beaumont Indep. Sch. Dist.*, 240 F.3d 462, 470 (5th Cir. 2001).

## C. Plaintiffs Fail to State a Free Exercise Clause Claim.

The district court's Free Exercise holding likewise is demonstrably wrong and unprecedented. Indeed, just as the court failed to cite any case finding a passive religious display coercive in violation of the Establishment Clause, *supra* p.18–28, it also failed to cite any case determining that such a display violates the Free Exercise Clause. There is no good reason for this case to be the first.

The most fundamental problem is that H.B. 71 does not "burden" Plaintiffs' or their children's "religious exercise." *Fulton v. City of Philadelphia*, 593 U.S. 522, 532 (2021). The district court worried that H.B. 71 "is at odds with" Plaintiffs' "views," "tradition," and "teachings." Op.143. But the Free Exercise Clause does not obligate the State to "comport with the religious beliefs of particular citizens," or "demand that the Government join in [their] chosen religious practices." *Bowen v. Roy*, 476 U.S. 693, 699-700 (1986). What it protects is *exercise*—believing, professing, and engaging in "conduct motivated by religious belief." *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 543

(1993). And nonparticipatory exposure to passive religious imagery does not pressure or require Plaintiffs to modify, stifle, or violate their religious exercise in any way.

This Court's decision in *Murray v. City of Austin*, 947 F.2d 147 (5th Cir. 1991), demonstrates the point. In *Murray*, the plaintiff alleged that a cross on a city seal violated the Free Exercise Clause by imposing "subtle coercion" on him to "adhere to the majoritarian faith" and "forc[ing] [him] to support" the cross. *Id.* at 152. This Court "quickly dispose[d] of" his claim—noting the plaintiff had "fail[ed] to articulate a sufficient burden or restriction imposed on the free exercise of his religion." *Id.* That case, like this one, was "a 'far cry from cases dealing with actual interference,' "actual compulsion," or any other free-exercise burden. *Id.*

## D. At Minimum, the Notice Provision Is Unlawful.

Finally, the Court has received full stay briefing on the question whether the Notice Provision is unlawful. *See* Dkt.12. It is. In response, Plaintiffs suggested (Dkt.20-1 at 1-4) that the State did not preserve a challenge to the Notice Provision in the district court. Not so. As Plaintiffs acknowledge (*id.* at 2)—and as the district court

twice recognized (Op.150-51, 163)—the State vigorously opposed Plaintiffs' enticing the district court to enter the Notice Provision. Plaintiffs also suggest that the State did not seek to stay the Notice Provision. Wrong again. The State specifically asked the district court to stay any injunction order, specifically incorporating its arguments on jurisdiction, the merits, *and* Plaintiffs' inappropriate preliminary-injunction request. Dist.ECF.39-1 at 49.

## II. The Remaining Factors Favor a Stay.

Aside from likelihood of success, irreparable injury is "most critical" to the stay inquiry. *E.T. v. Paxton*, 19 F.4th 760, 764 (5th Cir. 2021). For a State, its "interest and harm merge with that of the public." *Veasey v. Abbott*, 870 F.3d 387, 391 (5th Cir. 2017) (per curiam). Absent a stay pending appeal, both the State and the public are irreparably harmed every day that the Defendants in this case cannot carry out their H.B. 71 obligations in advance of the January 1, 2025, compliance deadline. La. R.S. §17:2122(B)(1). "When a statute is enjoined, the State necessarily suffers the irreparable harm of denying the public interest in the enforcement of its laws." *E.T.*, 19 F.4th at 770.

Meanwhile, Plaintiffs will experience no harm if the district court's injunction is stayed pending appeal. Plaintiffs' claimed below that "the loss of First Amendment freedoms, for even minimal period of time, unquestionably constitutes irreparable injury." Dist.ECF.20-1 at 24. But there is no loss of First Amendment freedoms. Without knowing how H.B. 71 will be implemented, Plaintiffs cannot show a stay would "substantially injure" their interests. *Nken v. Holder*, 556 U.S. 418, 426 (2009).

## CONCLUSION

The Court should stay the district court's order pending appeal.

Respectfully submitted,

ERIC C. RASSBACH
JOSEPH C. DAVIS
BENJAMIN A. FLESHMAN
AMANDA L. SALZ
KELSEY BAER FLORES
THE BECKET FUND FOR
 RELIGIOUS LIBERTY
1919 Pennsylvania Ave. NW
 Suite 400
Washington, D.C. 20006

*Counsel for Appellants*
*Brumley and LSBESE Officials*

Dated:   November 15, 2024

ELIZABETH B. MURRILL
Attorney General of Louisiana

*/s/ J. Benjamin Aguiñaga*
J. BENJAMIN AGUIÑAGA
Solicitor General

ZACHARY FAIRCLOTH
Principal Deputy Solicitor General

OFFICE OF THE ATTORNEY GENERAL
1885 N. 3rd St.
Baton Rouge, LA 70802
(225) 506-3746
AguinagaB@ag.louisiana.gov

*Counsel for Appellants*

## CERTIFICATE OF SERVICE

I certify that on November 15, 2024, I filed the foregoing brief with the Court's CM/ECF system, which will automatically send an electronic notice of filing to all counsel of record.

*/s/ J. Benjamin Aguiñaga*
J. BENJAMIN AGUIÑAGA

## CERTIFICATE OF COMPLIANCE

Pursuant to Fifth Circuit Rule 32.3, the undersigned certifies that this motion complies with:

(1) the type-volume limitations of Federal Rule of Appellate Procedure 27 (d)(2) because it contains 5,200 words; and

(2) the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Century Schoolbook) using Microsoft Word 2016 (the same program used to calculate the word count).

*/s/ J. Benjamin Aguiñaga*
J. BENJAMIN AGUIÑAGA

Dated:   November 15, 2024