UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CHRISTOPHER DIER                                      CIVIL ACTION

VERSUS                                               NO: 2:24-cv-2306

JEFFERY MARTIN LANDRY, et al.                        SECTION: T (5)

### ORDER AND REASONS

Before the Court are Defendants' Motion to Dismiss (R. Doc. 41) and Plaintiff's Motion

for Preliminary Injunction or, in the Alternative, Motion for Summary Judgment (R. Doc. 47).

Having reviewed the record, the briefs, and the applicable law, the Court will **GRANT**

Defendants' Motion to Dismiss and **DENY AS MOOT** Plaintiff's Motion for Preliminary

Injunction/Summary Judgment for the following reasons. Additionally, Plaintiff's Motion to

Expedite Consideration (R. Doc. 86) is **DENIED AS MOOT**.

## I. FACTUAL BACKGROUND

This action stems from the passage of La. R.S. § 17:2124 ("H.B. 71" or "the Act"), which

"require[es] the display of the Ten Commandments, subject to minimum requirements and school

boards' discretion, in public school classrooms." R. Doc. 41-1, p. 8. H.B. 71 contains three main

statutory directives, delineating (1) the placement and dimensions of an appropriate H.B. 71

display, (2) the specific Ten Commandments language to be featured on such a display, and (3) an

accompanying context statement. La. R.S. § 17:2124(B)(1)-(3).

First, the Act dictates:

No later than January 1, 2025, each public school governing authority shall display
the Ten Commandments in each classroom in each school under its jurisdiction.
The nature of the display shall be determined by each governing authority with a

1

> minimum requirement that the Ten Commandments shall be displayed on a poster or framed document that is at least eleven inches by fourteen inches. The text of the Ten Commandments shall be the central focus of the poster or framed document and shall be printed in a large, easily readable font.

La. R.S. § 17:2124(B)(1). Next, the Act provides that each H.B. 71 display shall use the following version of the Ten Commandments:[1]

> "The Ten Commandments
> I AM the Lord thy God.
> Thou shalt have no other gods before me.
> Thou shalt not make to thyself any graven images.
> Thou shalt not take the Name of the Lord thy God in vain.
> Remember the Sabbath day, to keep it holy.
> Honor thy father and thy mother, that thy days may be long upon the land which
> the Lord thy God giveth thee.
> Thou shalt not kill.
> Thou shalt not commit adultery.
> Thou shalt not steal.
> Thou shalt not bear false witness against thy neighbor.
> Thou shalt not covet thy neighbor's house.
> Thou shalt not covet thy neighbor's wife, nor his manservant, nor his maidservant,
> nor his cattle, nor anything that is thy neighbor's."

*Id.* at (B)(2). Third, the Act requires that each H.B. 71 display include a prewritten "context statement," which details the history of the Ten Commandments' use in public education. *Id.* at (B)(3).

The remaining provisions permit a school governing authority to display other historical documents, including the Mayflower Compact, the Declaration of Independence, and the Northwest Ordinance, along with the Ten Commandments in an H.B. 71 display, *id.* at (B)(4); clarify that the Act "shall not require a public school governing authority to spend its funds to purchase displays," as they shall either accept donated funds to purchase displays or accept donated displays, *id.* at (B)(5); direct the State Board of Elementary and Secondary Education to adopt

---

[1] The Act notes that "[t]he text of the Ten Commandments set forth in Subsection B of this Section is identical to the text of the Ten Commandments monument that was upheld by the Supreme Court of the United States in *Van Orden v. Perry,* 545 U.S. 677, 688 (2005)." La. R.S. § 17:2124(A)(6).

implementation rules and to identify and post online free resources to assist school boards in complying with the act, *id.* at (B)(6).

## II. PROCEDURAL HISTORY

Plaintiff, Christopher Dier, is a history teacher at Benjamin Franklin High School, a public school in New Orleans, Louisiana. R. Doc. 1, p. 1. On September 23, 2024, Plaintiff filed this suit against Governor of Louisiana Jeffrey Landry, Attorney General of Louisiana Liz Murrill, Louisiana State Superintendent of Education Cade Brumley, and eleven members of the Louisiana State Board of Elementary and Secondary Education ("LSBESE")[2] (collectively, "Defendants"). *Id.* at pp. 4-6. Plaintiff puts forward a pre-enforcement challenge under 42 U.S.C. § 1983 and argues that the Act violates three provisions of the First Amendment: the Establishment Clause (Count I), the Free Exercise Clause (Count II), and the Free Speech Clause (Count III). *Id.* at pp. 16-17.

Plaintiff first asserts that H.B. 71 discriminates against other faiths and people who are not religious. He alleges that the Act "endorses [] a Protestant Version of the Ten Commandments." *See* R. Doc. 1 at pp. 10-14. Plaintiff puts forward statements and sources claiming that Jews, Catholics, and other Christians either do not accept this version or object to promoting the Commandments in a classroom setting. *Id.* at pp. 10-13. He includes "people in Louisiana [who] are not religious," as he claims they do not necessarily adhere to these tenets. *Id.* at pp. 11-12. Plaintiff additionally finds using a particular Protestant Christian translation personally objectionable. R. Doc. 47-2, p. 5; R. Doc. 1, pp. 12-14.

Next, Plaintiff alleges that H.B. 71 imposes a requirement for "teachers . . . to post" and

---

[2] The additional named defendants are Conrad Appel, Judy Armstrong, Kevin Berken, Preston Castille, Simone Champagne, Sharon Latten-Clark, Lance Harris, Paul Hollis, Sandy Holloway, Stacey Melerine, and Ronnie Morris. R. Doc. 1, p. 5.

"display" the Commandments. R. Doc. 1, pp. 3-4, 8-9, 14-15; R. Doc. 47-2, p. 16-18. The remainder of Plaintiff's allegations are best summarized as objections to exposure—the requirement that Plaintiff must see the Ten Commandments in an H.B. 71 display, daily in his classroom. *See* R. Doc. 1, pp. 14-15. He alleges H.B. 71 displays coerce or pressure him and his students to "venerate", "proselytize", "adopt", or otherwise accept religious doctrine. *Id.* at pp. 3, 14. Plaintiff requests declaratory and injunctive relief to enjoin Defendants from "(i) implementing rules and regulations in accordance with the Act, (ii) otherwise seeking to enforce the Act, and (iii) requiring him to display the Ten Commandments in any public-school classroom." *Id.* at p. 3.

On October 8, 2024, Defendants filed a Motion to Dismiss, seeking dismissal of Plaintiff's Complaint both for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and on the merits under Rule 12(b)(6). R. Doc. 41. Specifically, Defendants argue that this Court lacks jurisdiction because Plaintiff's claims are not ripe, Plaintiff lacks Article III standing, and Defendants are entitled to sovereign immunity. R. Doc. 41, pp. 4-11. They also argue that Plaintiff's claims under the Establishment Clause, the Free Exercise Clause, and the Free Speech Clause all fail on the pleadings. *Id.* at pp. 12-25. Plaintiff filed a response in opposition to Defendants' Motion, R. Doc. 57, and Defendants filed a reply in support, R. Doc. 58.

On October 11, 2024, Plaintiff filed a Motion for Preliminary Injunction or, in the Alternative, Summary Judgment. R. Doc. 47. Plaintiff's Motion seeks either (1) a "preliminary injunction preventing the enforcement of" H.B. 71 or "summary judgment and a permanent injunction preventing the enforcement of H.B. 71 at Benjamin Franklin High School." *Id.* at p. 1. Defendants filed a response in opposition to Plaintiff's Motion, R. Doc. 65, and Plaintiff filed a reply in support, R. Doc. 69.

Meanwhile, the Middle District of Louisiana considered a case with similar issues. In

*Roake v. Brumley*, several parents, as individuals and on behalf of their minor children, sued Superintendent Brumley, members of the LSBESE in their official capacities, and five parish school boards, seeking to enjoin enforcement of H.B. 71 and arguing that the statute is facially unconstitutional under both the Establishment Clause and the Free Exercise Clause. 756 F. Supp. 3d 93, 112-14, 119-23 (M.D. La. 2024), *vacated by* No. 24-30706, 2026 WL 482555 (5th Cir. Feb. 20, 2026) (en banc) (per curiam). As here, the district court had before it a motion for a preliminary injunction filed by the plaintiffs and motions to dismiss filed by the defendants. *Id.* at 112-13. After reviewing First Amendment precedent, the Middle District concluded that H.B. 71 is facially unconstitutional, denied the motions to dismiss, and granted the motion for a preliminary injunction. *Id.* at 218-19. The Middle District's injunction prevented defendants and their agents from "(1) enforcing H.B. 71; (2) adopting rules or regulations for the enforcement of H.B. 71; and (3) requiring that the Ten Commandments be posted in every public-school classroom in Louisiana in accordance with H.B. 71." *Id.* at 219.

The *Roake* defendants appealed the Middle District's entry of a preliminary injunction and denial of their motions to dismiss.[3] *Roake v. Brumley (Roake Panel)*, 141 F.4th 614, 629 (5th Cir. 2025), *vacated on reh'g en banc*, 154 F.4th 329 (5th Cir. 2025). A panel of the United States Court of Appeals for the Fifth Circuit affirmed the district court's decision. *Id.* at 626. The Fifth Circuit subsequently voted to rehear the case en banc and vacated the panel opinion. *Roake v. Brumley*, 154 F.4th 329, 332 (5th Cir. 2025). Finding that "the parents' challenge turns on unresolved factual and contextual questions," the en banc court held that "equitable relief was premature" and therefore vacated the preliminary injunction and remanded for further proceedings. *Roake v.*

---

[3] The *Roake* defendants also appealed the Middle District's decision to deny their motion to exclude plaintiffs' expert testimony. *Roake v. Brumley*, 141 F.4th 614, 629 (5th Cir. 2025). Because that issue is beyond the scope of the present motion, it is omitted from the Court's discussion of *Roake*.

5

*Brumley (Roake En Banc)*, 170 F.4th 292, 297 (5th Cir. 2026) (en banc) (per curiam).

On August 19, 2025, the Court stayed the instant matter pending the culmination of appeals in *Roake*. R. Doc. 82. After the Fifth Circuit issued its en banc *Roake* decision, the Court ordered additional briefing from the parties discussing the applicability of that decision to a resolution in the instant case. R. Doc. 83. Defendants submitted their briefing on March 11, 2026, arguing that the en banc Fifth Circuit's decision in *Roake* compels denial of Plaintiff's Motion and dismissal of this suit because, as in *Roake*, Plaintiff's challenge is "premature," and his claims are "nonjusticiable." R. Doc. 84, p. 2 (citing *Roake En Banc*, 170 F.4th at 297, 300). Plaintiff submitted a response on March 18, 2026, arguing that *Roake* does not control the outcome of this case because his "claims are materially different from those of the plaintiffs in *Roake* and arise in a distinct posture." R. Doc. 85, p. 5. Specifically, Plaintiff contends that a different result is warranted because (1) unlike the plaintiffs in *Roake*, who "were parents and students who objected to the religious effects of their anticipated exposure to H.B. 71 displays," he is a teacher who "must comply with [H.B. 71's] mandate or face professional discipline," thus altering the ripeness analysis, and (2) he also brings a compelled speech claim that was not raised by the plaintiffs in *Roake* nor evaluated for ripeness by the Fifth Circuit. R. Doc. 85, pp. 5-13. Plaintiff has also filed an ex parte motion to expedite consideration of his pending motion. R. Doc. 86.

## III. LAW AND ANALYSIS

### a. *Defendants' Motion to Dismiss (R. Doc. 41)*

Defendants seek dismissal under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). R. Doc. 41, p. 1. Rule 12(b)(1) allows a defendant to seek dismissal based on the court's lack of subject matter jurisdiction, Fed. R. Civ. P. 12(b)(1), while the basis for dismissal of a complaint under Rule 12(b)(6) is its "failure to state a claim upon which relief can be granted," Fed. R. Civ.

P. 12(b)(6).

Federal courts are courts of limited jurisdiction; therefore, they have the power to adjudicate claims only when jurisdiction is conferred by statute or the Constitution. *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994); *Stockman v. Federal Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). Under Rule 12(b)(1), "[a] case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." Fed. R. Civ. P. 12(b)(1). "Lack of subject-matter jurisdiction may be found in the complaint alone, the complaint supplemented by the undisputed facts as evidenced in the record, or the complaint supplemented by the undisputed facts plus the court's resolution of disputed facts." *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998). The court should determine whether subject matter jurisdiction is present before addressing any other issues, *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *Hitt v. Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977) (per curiam)), and the plaintiff bears the burden of proving subject matter jurisdiction, *id.* (citing *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980)).

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Court must "take the well-pled factual allegations of the complaint as true and view them in the light most favorable to the plaintiff." *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008) (citing *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)). It resolves any ambiguities

7

in the current controlling substantive law in plaintiff's favor. *Lewis v. Fresne*, 252 F.3d 352, 357 (5th Cir. 2001) (citing *Burchett v. Cargill, Inc.*, 48 F.3d 173, 176 (5th Cir. 1995)). A court however "do[es] not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess Inc*., 407 F.3d 690, 696 (5th Cir. 2005).

Plaintiff's Complaint "is a facial challenge to H.B. 71" and "presents the question whether the requirements of H.B. 71 are consistent with the Establishment Clause, regardless of how it is implemented." R. Doc. 57, p. 13. "Even in the First Amendment context, facial challenges are disfavored." *Moody v. NetChoice, LLC*, 603 U.S. 707, 744 (2024). "To successfully mount a facial challenge, [a] plaintiff[] must show that there is no set of circumstances under which [the challenged policy] is constitutional." *Croft v. Perry*, 624 F.3d 157, 164 (5th Cir. 2010). Only if the plaintiff can establish the policy "to be unconstitutional in every application," will it be "struck down as invalid." *Id.*

The Court will first consider Defendants' arguments for dismissal for lack of subject matter jurisdiction. Article III of the United States Constitution "limits federal courts to resolving 'Cases' and 'Controversies.'" *E.g., Roake En Banc*, 170 F.4th at 297 (citing U.S. Const. art. III, § 2). This limitation gives rise to "justiciability doctrines of standing, mootness, political question, and ripeness." *Choice Inc. of Texas v. Greenstein*, 691 F.3d 710, 715 (5th Cir. 2012) (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006)). "The ripeness doctrine's 'basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Id.* (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967)). As summarized by the Fifth Circuit:

> A court should dismiss a case for lack of ripeness when the case is abstract or hypothetical. The key considerations are the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration. A case is generally ripe if any remaining questions are purely legal ones; conversely, a case

is not ripe if further factual development is required. However, even where an issue presents purely legal questions, the plaintiff must show some hardship in order to establish ripeness.

*Id.* (internal citations and quotation marks omitted). *See also Book People, Inc. v. Wong*, 91 F.4th 318, 333-34 (5th Cir. 2024) (holding claims ripe where "[n]o other factual or legal developments are required for us to decide this case"); *Braidwood Mgmt., Inc. v. Equal Emp. Opportunity Comm'n*, 70 F.4th 914, 931-32 (5th Cir. 2023) (same, where "no more factual detail is required to resolve the claims," despite defendant's argument that "further factual development" would "significantly advance" the court's ability to resolve claims, because defendant failed to offer specific facts that would assist the court); *United Transp. Union v. Foster*, 205 F.3d 851, 857-58 (5th Cir. 2000) (holding pre-enforcement review of Louisiana statute not ripe because "challenge sits atop a mountain of conjecture and speculation"); *Texas v. United States*, 523 U.S. 296, 300 (1998) ("A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all.") (internal citation and quotation marks omitted).

In support of their Motion to Dismiss, Defendants argue that the en banc Fifth Circuit cases of *Staley v. Harris County*, 485 F.3d 305 (5th Cir. 2007) (en banc), and *Roake v. Brumley*, 2026 WL 482555, are analogous and instructive. In *Staley*, the Fifth Circuit considered "whether, in the factual context presented, the display of a Bible in a monument dedicated to a philanthropic citizen and located on the grounds of [a courthouse], violates the Establishment Clause." *Staley*, 485 F.3d at 307. Days before oral argument in the case, the defendant, Harris County, removed the monument and placed it in storage as the Courthouse and its grounds underwent renovation. *Id.* at 307-08. Though the County asserted that it would display the monument again after renovations were complete, it "emphasize[d] that no decision ha[d] been made regarding when, where, or under what circumstances the monument [would] be displayed again in the future." *Id.* Recognizing

9

"[t]he importance of facts and context" in Establishment Clause cases, the Court held that "any dispute over a probable redisplay of the [] monument is not ripe because there are no facts before us to determine whether such a display might violate the Establishment Clause." *Id.* at 308-09 (citing *McCreary Cnty., Ky. v. ACLU of Ky.*, 545 U.S. 944, 844 (2005); *Van Orden v. Perry*, 545 U.S. 677, 700 (2005) (Breyer, J., concurring) ("While the Court's prior tests provide useful guideposts . . . no exact formula can dictate a resolution to such fact-intensive cases.")).

Here, Defendants argue that *Staley* is analogous because Plaintiff "challenges only some unspecified future H.B. 71 display that he *presumes* may violate his rights at some unspecified future point in time." R. Doc. 41-1, p. 12. While Defendants contend that "Plaintiff has no way around *Staley*," R. Doc. 58, p. 6, Plaintiff instead contends that (1) "*Staley* is inapposite" because the location, timing, and circumstances of the H.B. 71 displays are all known and (2) because he brings a facial challenge to H.B. 71, "no additional information about the where, when, or how of H.B. 71 is required," R. Doc. 57, pp. 12-13. Regarding the first argument, Plaintiff contends that because the Act states the minimum requirements of an H.B. 71 display, "[n]o further facts are needed to decide [his] claims." *Id.* at p. 13. Defendants claim that Plaintiff's argument here is unfounded because he "can only claim to know the 'dimensions' and 'central' feature of an H.B. 71 display," whereas the *Staley* court knew much more about the monument in question and still found that it lacked the necessary facts and context surrounding a future redisplay of the monument to adjudicate its constitutionality. R. Doc. 58, pp. 6-7 (citing R. Doc. 57, p. 4; *Staley v. Harris Cnty.*, 461 F.3d 504, 506-07 (5th Cir. 2006); *Staley*, 485 F.3d at 309). Specifically, Defendants note that at the panel stage in *Staley*, the record contained the monuments dimensions, its engraving, its shape, its central feature, the dimensions of the Bible featured, the lighting surrounding the Bible, the yearly cost the government paid to illuminate the monument, and the

10

practice of turning pages of the Bible. *Id.* at p. 6 (citing *Staley*, 461 F.3d at 506-07). On the other hand, "neither [Plaintiff] nor the Court (nor even Defendants) know how any given school will implement H.B. 71." *Id.* at pp. 6-7.

The Court agrees with Defendants and finds Plaintiff's arguments to distinguish *Staley* unavailing. First, Plaintiff's contention that *Staley* is distinguishable because the location, timing, and circumstances of any H.B. 71 display are all known overstates what the Act actually establishes. While H.B. 71 does specify minimum requirements and mandates a particular text, it expressly vests each school governing authority with discretion to determine "the nature of the display." La. R.S. § 17:2124(B)(1). Thus, as in *Staley*, neither this Court nor the parties can determine at this time how any particular school governing authority will implement its H.B. 71 displays. Lacking the facts and context of the implemented displays, the Court cannot, on the present record, determine whether any display would violate the Establishment Clause. Second, Plaintiff's attempt to frame his suit as a facial challenge does not obviate the need for a well-developed factual record. While facial challenges under the First Amendment do not require proof of an unconstitutional application in every instance, the plaintiff still must demonstrate that "a substantial number of [the law's] applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep," *Moody*, 603 U.S. at 723 (quoting *Americans for Prosperity Found. v. Bonta*, 594 U.S. 595, 615 (2021)) (alteration in original), and courts must assess the full scope of a law's applications before adjudicating such a challenge, *id.* at 717-19, 724-25. That assessment requires a thoroughly-developed factual record. *See, e.g.*, *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 450-51 (stressing need for "judicial restraint in a facial challenge" and reasoning that facial challenges are disfavored due to "risk of premature interpretation of statutes on the basis of factually barebones records").

11

Next, the Court finds the Fifth Circuit's recent en banc decision in *Roake v. Brumley*, holding that claims materially similar to Plaintiff's were not yet ripe for adjudication, to be particularly instructive. In *Roake*, the Fifth Circuit noted that the Ten Commandments' "dual character" of having both religious and historical significance "forecloses any categorical rule against their display on public property" and that the constitutionality of such a display "turns on 'the context of the display' and 'how the text is *used*.'" *Roake En Banc*, 170 F.4th at 297-98 (citing and quoting *Van Orden v. Perry*, 545 U.S. 677, 701 (2005) (emphasis in original)). The Court then concluded that at this point, "we do not yet know—and cannot yet know—how the text will be used" in the context of an H.B. 71 display because the Act sets "certain 'minimum requirement[s]' regarding the text, size, and accompanying 'context statement'" but "leaves '[t]he nature of the display' entirely to the discretion of local school boards." *Id.* at 298 (quoting La. R.S. § 17:2124(B)(1)-(3)). Thus, the Fifth Circuit reasoned, "numerous essential questions," including "how prominently the displays will appear, what other materials might accompany them, or how— if at all—teachers will reference them during instruction," remain unanswered. *Id.*

For these reasons, the Court held that this "evidentiary gap" forecloses both the Establishment Clause claims and the Free Exercise Clause claims brought by the *Roake* plaintiffs because it prevents "'the fact-intensive and context-specific analysis required by' the Supreme Court's Ten Commandments cases."[4] *Id.* (quoting *Staley v. Harris Cnty.*, 485 F.3d 305, 309 (5th Cir. 2007) (en banc)). Weighing the lack of fitness of the issues for judicial decision against the hardship to the parties of withholding consideration, the Fifth Circuit found that "the plaintiffs

---

[4] The Fifth Circuit also held that this lack of evidence "forecloses the parents' Free Exercise claims because 'the question whether a law "substantially interfere[es] with the religious development" of a child will always be fact-intensive,' requiring courts to 'consider the specific context in which the instruction or materials at issue are presented." *Roake En Banc*, 170 F.4th at 298 (quoting *Mahmoud v. Taylor*, 606 U.S. 522, 550 (2025) (quoting *Wisconsin v. Yoder*, 406 U.S. 205, 218 (1972))) (alteration in original).

suffer no concrete harm from the challenged policy itself, which does not require them to 'do anything or to refrain from doing anything.'" *Id.* (quoting *Trump v. New York*, 592 U.S. 125, 134 (2020) (quoting *Ohio Forestry Ass'n., Inc. v. Sierra Club*, 523 U.S. 726, 733 (1998))). For these reasons, the Court held that the issues were not ripe for judgment and that rendering a decision on the claims would require forbidden "substitution of speculation for adjudication" and "exceed the judicial function." *Id.* at 299.

The Supreme Court has long articulated that a purported religious display's constitutionality depends heavily on context and facts. *See McCreary County v. ACLU*, 545 U.S. 844, 867-68 (2005) (citing *Cnty. of Allegheny v. ACLU, Greater Pittsburgh Chapter*, 492 U.S. 573, 595, (1989)) ("[T]he question is what viewers may fairly understand to be the purpose of the display. That inquiry, *of necessity,* turns upon the context in which the contested object appears.") (emphasis added); *Van Orden v. Perry*, 545 U.S. 677, 700 (2005) (Breyer, J., concurring)[5] (in religious display cases, courts "must take account of context"). In this case, the Court finds *Roake* to be particularly instructive because, like the plaintiffs in *Roake*, Plaintiff challenges H.B. 71 as "facially unconstitutional under both the Establishment and Free Exercise Clauses of the First Amendment" *before* any H.B. 71 displays have been placed on classroom walls. This holding defeats Plaintiff's argument that "[n]o additional information" about implementation of the H.B. 71 displays is required to decide his claims. *See* R. Doc. 57, p. 13.

Plaintiff attempts to avoid *Roake*'s holding by arguing that, unlike the parent and student plaintiffs in *Roake*, who are not required "to do anything or to refrain from doing anything," he is a public school teacher personally subjected to H.B. 71's mandate to display the Ten Commandments in his classroom. R. Doc. 85, pp. 5, 7-12. He further contends that "because [his]

---

[5] The Fifth Circuit found Justice Breyer's concurrence the controlling opinion in *Van Orden*. *Staley v. Harris Cnty., Tex.*, 485 F.3d 305, 308 n. 1 (5th Cir. 2007).

injury arises from his role in implementing the statute—not merely from observing any particular display—*Roake*'s ripeness analysis does not apply." *Id.* at p. 12. Additionally, Plaintiff argues that *Roake* is distinguishable because he raises a compelled-speech claim that the *Roake* plaintiffs did not assert. *Id.* at 12-13. The Court is not persuaded.

First, *Roake*'s ripeness holding is not, as Plaintiff contends, limited to claims brought by parents and students as "mere bystander[s] or observer[s]." Rather, the Fifth Circuit's reasoning rests on the nature of the constitutional inquiry required by pre-enforcement challenges to H.B. 71. The en banc Court held that H.B. 71's minimum statutory requirements do not supply a sufficient factual record to permit judicial review because the Act's delegation of elements of the displays to local school boards leaves unresolved questions that are critical for adjudication, including "how prominently the displays will appear, what other materials might accompany them, or how—if at all—teachers will reference them during instruction." *Roake En Banc*, 170 F.4th at 298. That same logic applies here with equal force because, like the plaintiffs in *Roake*, Plaintiff asks this Court to declare H.B. 71 unconstitutional before any display has been implemented in his classroom and before development of a full factual record concerning the manner in which Benjamin Franklin High School or its governing authority will comply with the Act.

Second, Plaintiff's effort to distinguish *Roake* on the ground that he is personally required to "display" the Ten Commandments is not supported by the statutory text. Specifically, Plaintiff alleges that H.B. 71 imposes a requirement for "teachers . . . to post" and "display" the Ten Commandments. R. Doc. 1, pp. 3-4, 8-9, 14-15; R. Doc. 47-2, p. 16-18. In support of this claim, he misreads or ignores the Act's text, which plainly mandates that "each *public school governing authority* shall display the Ten Commandments," La. R.S. § 17:2124(B)(1), rather than requiring public school teachers themselves to post or display the H.B. 71 displays, as Plaintiff alleges.

Whether a particular teacher will be required to physically post, display, or otherwise interact with an H.B. 71 display, or whether that task will fall to administrators or other staff, is left fully to the discretion of each governing authority. In this respect, the ripeness of Plaintiff's claims is even weaker than that of the claims in *Roake*, where plaintiffs at least faced the certainty of exposure to a display as students and parents in the classroom. Here, Plaintiff faces no statutory obligation of any kind, and his alleged injury from being personally "required to display" the Ten Commandments rests on a chain of assumptions about how Benjamin Franklin High School's governing authority will choose to implement the Act. Thus, the alleged injury has no basis in the statutory text and no support in the present record.[6]

This also renders Plaintiff's compelled-speech theory especially speculative at this point. Whether H.B. 71 will compel Plaintiff to engage in any expressive act, let alone one that could plausibly be characterized as his own speech, depends entirely on implementation decisions that have not yet been made. These decisions will shape the constitutional question in ways that cannot be anticipated on the bare record presently before the Court. Until those facts are known, any ruling by this Court on any of Plaintiff's claims, including the compelled-speech claim, would rest on

---

[6] The Court also notes that the Fifth Circuit's recent decision in *Nathan v. Alamo Heights Indep. Sch. Dist.*, ___ F.4th ___, No. 25-50695, 2026 WL 1078691 (5th Cir. Apr. 21, 2026), reinforces its decision. In *Nathan*, the en banc Fifth Circuit considered whether a similar yet distinct Texas law, S.B. 10, violated the Establishment Clause and the Free Exercise Clause. *Id.* at *2-3. Before conducting its First Amendment analysis, the Court noted that the plaintiffs' pre-enforcement facial challenge to S.B. 10, unlike those against H.B. 71, was ripe because "[e]verything needed to resolve their claims is in the statutory text." *Id.* at *11. The Court went on to describe why challenges to S.B. 10 are ripe but challenges to H.B. 71 are not:

> Louisiana's statute differs from Texas's in three key ways. First, Louisiana requires the "nature of the display" to "be determined by each governing authority." Texas, by contrast, delegates no local discretion for any of the display's components. Second, Louisiana specifies that local displays may (or may not) incorporate other historical documents, such as "the Mayflower Compact, the Declaration of Independence, and the Northwest Ordinance." Texas, by contrast, mandates that displays "include only" the provided text of the Commandments. Third, Louisiana law does not specify where displays must appear, whereas Texas requires posting them in a "conspicuous place" so they can be easily read. So, while the Louisiana law lets local governing authorities shape the displays' critical contextual details, the Texas law settles those details in the statute.

*Id.* at *12-13 (internal citations omitted).

nothing more than conjecture, which is precisely the "substitution of speculation for adjudication" that *Roake* forbids. *Roake En Banc*, 170 F.4th at 299.

Because all three of Plaintiff's claims, as in *Roake*, turn on unresolved factual and contextual questions regarding the H.B. 71 displays, which are required for a proper First Amendment analysis, the Court finds that the claims are not ripe for adjudication. Therefore, the Court will GRANT Defendants' Motion to Dismiss (R. Doc. 41) and dismiss Plaintiff's claims against all Defendants without prejudice.

### b.  *Plaintiff's Motion for Preliminary Injunction / Summary Judgment (R. Doc. 47)*

The Court next turns to Plaintiff's Motion for Preliminary Injunction or, in the Alternative, Summary Judgment (R. Doc. 47). Granting a preliminary injunction is an "extraordinary and drastic remedy." *SO Apartments, L.L.C. v. City of San Antonio, Texas*, 109 F.4th 343, 348 (5th Cir. 2024). Courts do not grant relief unless there is "(1) a substantial likelihood that plaintiff will prevail on the merits, (2) a substantial threat that plaintiff will suffer irreparable injury if the injunction is not granted, (3) that the threatened injury to plaintiff outweighs the threatened harm the injunction may do to defendant, and (4) that granting the preliminary injunction will not disserve the public interest." *Anibowei v. Morgan*, 70 F.4th 898, 902 (5th Cir. 2023) (citation omitted). Having granted Defendants' motion to dismiss the underlying claims, the Court need not proceed with this analysis and will deny Plaintiff's motion, as well as his motion for expedited consideration, as moot.

Accordingly,

**IT IS ORDERED** that Defendants' Motion to Dismiss (R. Doc. 41) is **GRANTED**, and that Plaintiff's claims against Defendants are dismissed without prejudice.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Preliminary Injunction or

16

Summary Judgment (R. Doc. 47) is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that Plaintiff's *Ex Parte* Motion for Expedited Consideration (R. Doc. 86) is **DENIED AS MOOT**.

New Orleans, Louisiana, this 22nd day of April, 2026.

_____
GREG GERARD GUIDRY
UNITED STATES DISTRICT JUDGE

17